Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Douglas J. Campion (SBN: 75381)
doug@djcampion.com
**Law Offices of Douglas J. Campion**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108

Attorneys for the Plaintiffs and Proposed
Settlement Class

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALBERTO MALTA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**<br><br>                    **PLAINTIFFS,**<br>**V.**<br><br>**THE FEDERAL HOME LOAN MORTGAGE CORPORATION A/K/A FREDDIE MAC AND WELLS FARGO HOME MORTGAGE,**<br><br>                    **DEFENDANTS.** | **Case No.: 10-CV-1290-BEN-NLS**<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>**DATE: JULY 23, 2012**<br>**TIME: 10:30 A.M.**<br>**CRTRM: 3**<br><br>**THE HON. ROGER T. BENITEZ** |

*HYDE & SWIGART*
San Diego, California

TABLE OF CONTENTS

I.    Introduction ...............................................................................................................1

II.   Statement of Facts .....................................................................................................3

      A. Factual Background ..............................................................................................3

      B. Proceedings to Date .............................................................................................3

III.  The Settlement ...........................................................................................................4

      A. The Settlement Class and Subclass .....................................................................4

            1. The Settlement Class.......................................................................................4

            2. Subclass One and Subclass Two Membership Determination.........................5

      B. Settlement Payment .............................................................................................6

      C. Monetary Award to Class Members ....................................................................6

      D. Non-Monetary Award to Class Members ............................................................7

      E. Class Notice .........................................................................................................7

      F. Scope of Release ..................................................................................................9

      G. Opportunity to Opt Out and Object ....................................................................9

      H. Termination of Settlement ...................................................................................9

      I.  Payment of Notice and Administrative Costs ....................................................10

      J.  Class Representatives' Application for Incentive Awards ..................................10

      K. Class Counsel's Application for Attorneys' Fees, Costs, and Expenses ...........10

      L. *Cy Pres* Distribution ........................................................................................11

IV. Argument ..................................................................................................................11

      A. Legal Standards for Preliminary Approval of a Class Action Settlement ...........11

      B. The Proposed Settlement Is Fair, Reasonable and Adequate and Should Be Preliminarily
      Approved..................................................................................................................13

            1. Liability is Highly Contested and Both Sides Face Significant Challenges in
               Litigating this Case ........................................................................................13

            2. Defendant's Agreement to Create a $17,100,000 Settlement Fund Provides a Fair
               and Substantial Benefit to the Class................................................................14

HYDE & SWIGART
San Diego, California

3. The Settlement Was Reached As the Result of Arm's Length Negotiation, Without Collusion, With the Assistance of the Court ............................................................15

4. Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class ................................................................................................................16

C. The Court Should Preliminarily Certify the Class for Purposes of Settlement ..................17

1. The Proposed Class Is Numerous ..................................................................................17

2. The Commonality Requirement Is Satisfied Because Common Questions of Law and Fact Exist................................................................................................................17

3. The Typicality Requirement Is Met ................................................................................18

4. The Adequacy Requirement is Satisfied ........................................................................18

5. Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only ...............................................................................................................19

6. Class Treatment for Settlement Purposes is Superior to Individual Resolutions.....19

D. The Proposed Method of Class Notice Is Appropriate ......................................................20

E. The Court Should Appoint the Class Representatives and Class Counsel..........................24

F. The Court Should Appoint The ILYM Group as the Claims Administrator .......................25

G. A Final Approval Hearing Should Be Scheduled ..............................................................25

V. Conclusion ............................................................................................................................25

HYDE & SWIGART
San Diego, California

## TABLE OF AUTHORITIES

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)....................................13

*Elkins v. Equitable Life Ins. of Iowa,* No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20

(M.D. Fla. Jan. 27, 1998) ............................................................................................20

*Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 460 (E.D. Pa. 2000) ...........14

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)...............................*passim*

*Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909. 913-14 (9th Cir. 1964).......17

*Kirkorian v. Borelli,* 695 F. Supp. 446 (N.D. Cal. 1988) .............................................12

*Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) ................24

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1238 (9th Cir. 1998)........................13

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152,

1162 (9th Cir. 2001) ....................................................................................................19

*Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1178 (9th Cir. 1977) ......................22

*Mego Finl'l Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000) ...............................14

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) ..................21

*National Rural Tele. Coop v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) ...................14

*Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615 (9th Cir. 1982) ...........11, 12

*Omnivision Tech., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ......................14

*Philadelphia Hous. Auth. v. Am Radiator & Standard Sanitary Copr.,* 323 f. Supp. 364, 372 (E.D.

Pa. 1970) ...................................................................................................................12

*Prudential Sec. Inc. Ltd. Partnerships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ...................11

*Strube v. Am. Equity Inv. Life Ins. Col.,* 226 F.R.D. 688, 697 (M.D. Fla. 2005) ........20

*Torrisi v. Tucson Electric Power Co.,* 8 F.3d 1370, 1374-1375 (9th Cir. 1993) ......22, 23

*Utility Reform Project v. Bonneville Power Admin.,* 869 F.2d 437, 443 (9th Cir. 1989) ..............11

*Valentino v. Carter-Wallace,* 97 F.3d 1227, 1235-36 (9th Cir. 1996) ..........................19

*Wehner v. Syntex Corp.,* 117 F.RD. 641, 644 (N.D. Cal. 1987) ..................................18

*West Va. Chas. Pfizer & Co.,* 440 F.2d 1079, 1086 (2d Cir. 1971) ..............................12

*Wireless Facilities, Inc. Sec. Litig. II,* 253 F.R.D. 607, 610 (S.D. Cal. 2008) .........16, 18

HYDE & SWIGART
San Diego, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Zincser v. Accufix Research Institute, Inc.,* 253 F.3d 1188, 1189 (9th Cir. 2001) amended, 273 F.3d 1266 (9th Cir. 2001) ................................................................................................19

**SECONDARY AUTHORITIES**

*Moore's Federal Practice - Civil § 23.165[3] (3d ed.)* ................................................................12

*Manual for Complex litigation § 21.632, at 321 (4th ed. 2004)* ........................................11, 12, 23

**HYDE & SWIGART**
San Diego, California

## I.     INTRODUCTION

Plaintiffs Alberto Malta ("Plaintiff") and Danny Allen, Jr. (collectively, "Plaintiffs"), submit this application for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation"), which is unopposed by Defendants Wells Fargo ("Wells Fargo" or "Defendant") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively referred to as "Defendants").[1]   The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement") filed as Exhibit 1 to the Declaration of Joshua B. Swigart In Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Swigart Decl.").[2]   The Settlement settles both this Action and the later-filed case of *Allen v. Wells Fargo Auto Finance, Inc.*, Case No. 10-CV-02657-W-JMA (the "*Allen* Action") also filed in this Court.   Because Wells Fargo had already reached a settlement in principle in *Malta*, and because Defendant desired a global settlement incorporating the *Allen* Action which included essentially the same allegations on behalf of a putative class during the same time periods, Allen's counsel agreed to  settle the *Allen* Action by including it in the *Malta* settlement.  Agreement, § 1.02.   The members of the Settlement Class are divided into Subclasses for Settlement Purposes, Subclass One, consisting of those residential home mortgage customers in the *Malta* Action and the Subclass Two members are the auto finance customers in the *Allen* Action.   *Id.*, § 2.09.

The proposed Settlement provides for a substantial financial benefit of $17,100,000.00 to the Class Members.  Agreement, §§ 2.20; 5.01.  That Settlement  resulted from an Early Neutral Evaluation conference with Magistrate Judge Barbara Lynn Major, informal discovery, an intricate and involved sampling protocol of Wells Fargo calls made during certain time periods, two separate mediation sessions with Hon. Howard B. Wiener (Ret.) and Hon. Leo S. Papas, and subsequent negotiations between the Parties. The $17,100,000.00  Settlement Fund to be paid by Wells Fargo is an "all-in" settlement, non-reversionary, and will  fund the settlement payments to Class Members.   It would also be used to fund   (1) all Administrative Expenses, including expenses of providing Class Notice and claims administration, (2) all Taxes and tax-related

[1] Plaintiffs and Defendants are collectively referred to as the "Parties."

[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

HYDE & SWIGART
San Diego, California

expenses, (3) any incentive payments that the Court may award to the Class Representatives, and (4) any attorneys' fees, costs or expenses that the Court may award to Class Counsel, (collectively "Settlement Costs")  *Id*., and   § 2.32.   Thus, after the Settlement Costs are deducted from the Settlement Fund, the amounts remaining will be available to pay all approved claims (the "Claims Fund"). *Id*., § 5.01.  Each Class Member who timely submits an approved claim will receive a *pro rata* award from the Claims Fund dependent upon the total number of approved claims*. Id.,* § 5.02.   In return for payment of the Settlement Fund, Plaintiffs, on behalf of the proposed Settlement Class (the "Class"), will dismiss the Litigation and the Settlement Class will unconditionally release and discharge Defendants and other related Released Parties from all claims relating to the Litigation.  *Id*., § 16.01.

While Plaintiffs are confident of a favorable determination on the merits, they have determined that the proposed Settlement provides significant benefits to the Class Members and is in the best interests of the Settlement Class.   *Id*., §§ 3.02, 3.03;   Declaration of Douglas J. Campion in Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Campion Decl."), ¶ 4; Swigart Decl., ¶ 22.   Plaintiffs also believe that the Settlement is appropriate because Plaintiffs recognize the expense and amount of time required to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims. *Id.;*  Campion Decl., ¶ 4.

Similarly, as evidenced by the Agreement, Wells Fargo and Freddie Mac have stated that although they have substantial and meritorious defenses to Plaintiffs' claims, they have determined that it is desirable to settle the Litigation on the terms set forth in the Agreement. Agreement, § 3.01.

Accordingly, the Plaintiffs move the Court for an order preliminarily approving the proposed Settlement, provisionally certifying the Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of class notice, and scheduling a final approval hearing.   The motion is unopposed; Defendants will be filing a Statement of Non-Opposition to this motion at or near the filing date.   A proposed Preliminary Approval Order is filed as Exhibit A to the Agreement (Agreement is Exhibit 1 to the

**HYDE & SWIGART**
San Diego, California

Swigart Decl.). Swigart Decl, ¶ 7. The proposed Settlement satisfies all of the criteria for preliminary approval.

## II.    STATEMENT OF FACTS

### A.    FACTUAL BACKGROUND

In the relevant time period, June 16, 2006 through November 16, 2011, [3]   Wells Fargo provided account servicing, collection and related services for its own home mortgages and auto loans.  Wells Fargo also provides such account servicing for Freddie Mac relating to certain home mortgages.   In both the Action and the *Allen* Action,   Plaintiffs alleged that in its collection efforts, Wells Fargo violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.,* ("TCPA") by calling the cellular telephones of account-holders without "prior express consent," using an "automatic telephone dialing system" and/or using an "artificial or prerecorded voice." Plaintiffs contend they are entitled to statutory damages pursuant to the TCPA.  Wells Fargo and Freddie Mac have denied and continue to deny that they violated the TCPA, and deny all charges of wrongdoing or liability against them in the Action.  Swigart Decl., ¶¶ 2, 3.

### B.    PROCEEDINGS TO DATE

Plaintiff Alberto Malta filed the initial class action complaint in *Malta v. Wells Fargo, N.A., et. al.,* Case No. 10 CV 1290 BEN NLS  on June 16, 2010 asserting claims under the  TCPA. (Dkt. No. 1)  In the Complaint, Plaintiff Malta alleged causes of action for negligent and willful violations [4]  of the TCPA, and based on those allegations, sought $500 per negligent violation, $1500 per willful violation and injunctive relief.  Plaintiff Malta's claims were brought on behalf of a class of individuals who, during the Class Period, received calls on their cellular phones from Wells Fargo's division that services home mortgages that utilized automatic telephone dialing systems and/or artificial or prerecorded voice technology.  Defendants answered and denied all of the allegations and liability.  *Id.*, Dkt. No. 8.

On September 13, 2010, counsel for the Parties attended a telephonic Early Neutral Evaluation Conference presided over by Magistrate Judge Barbara Lynn Major.   With Judge

---

[3] The Class Period for Class Members of Subclass One (customers of Wells Fargo Home Mortgage in the *Malta* action) is June 16, 2006 to November 16, 2011.  The Class Period for Class Members of Subclass Two (customers of Wells Fargo Auto Finance in the *Allen* Action) is December 23, 2006 to November 16, 2011.  Agreement, §2.08.  The TCPA's statute of limitations period runs for four years preceding the filing of the original Complaint.

[4] Under the TCPA, a violation consists of a single call made that is prohibited under the statute.

Major's guidance, progress was made toward informally determining the parameters of the Class, the number of calls made to persons on cellular phones during the proposed Class period (i.e., the four year period prior to the filing of the Complaint on June 16, 2010), and consequently the range of potential damages.   After many months of negotiations, the Parties agreed upon a sampling protocol that would permit a sampling of the outbound dial list and of the persons that provided prior express consent to be called.   Defendant Wells Fargo agreed to assemble the information and databases as agreed upon and to produce that information to Plaintiff's counsel. Swigart Decl., ¶ 5.   Once that sampling was completed and the results shared with all Parties, they attended an all-day mediation session with Hon. Howard B. Wiener.   That session was productive, and resulted in refinement of the data previously obtained to allow more specific computations of damages and other items.   Due to scheduling problems with Justice Wiener, the Parties then met with Hon. Leo S. Papas for a second all-day mediation session.      Swigart Decl., ¶ 6.  The Parties were able to reach an agreement on the amount of Settlement after that mediation session.   The Parties then continued negotiations about the many details of the Settlement   in good faith for several months and were eventually able to agree on the terms of  a settlement agreement.   Campion Decl., ¶ 5.  Plaintiffs then conducted confirmatory discovery, confirming the total number of cell phones called and also confirming the efficacy of the processes and methodology used by Wells Fargo to assemble the data.   Campion Decl., ¶¶  20-22; Declaration of Jeff Hansen in Support of Joint Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Hansen Decl."), ¶¶ 6, 9 (Plaintiff's Information Technology consultant).  Shortly thereafter, the Parties filed this motion.

### III.   THE SETTLEMENT

#### A.   THE SETTLEMENT CLASS AND SUBCLASS

##### 1.   THE SETTLEMENT CLASS.

The "Class" or "Class Members" means the persons in the following definitions of Subclass One and Subclass Two in the Agreement:

> a. Subclass One consists of all subscribers to wireless telephone numbers whose numbers were dialed by Wells Fargo in connection with its servicing of a Residential Mortgage Loan, including borrowers and co-borrowers on such loans, and including third parties called in connection with the servicing of such loans, where such calls were

placed through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period June 16, 2006 to November 16, 2011.

b. Subclass Two consists of all subscribers to wireless telephone numbers whose numbers were dialed by Wells Fargo in connection with its servicing of Auto Loan accounts, including borrowers and co-borrowers on such accounts, and including third parties called in connection with the servicing of such accounts, where such calls were placed through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period December 23, 2006 to November 16, 2011.

c. Excluded from the Class are Defendants; their parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to whom the Action is assigned; and, any member of those judges' staffs and immediate families.

Agreement § 2.09.

## 2.  SUBCLASS ONE AND SUBCLASS TWO MEMBERSHIP DETERMINATION

The Settlement Class is made up of the two Subclasses.   Based on the two Subclass definitions in the Class definition above, Subclass One includes the residential mortgage customers called by Wells Fargo.   Subclass Two includes the auto finance customers called by Wells Fargo. Based upon the Notice Database  prepared by Wells Fargo using the information in its   records, the total number of Class Members in the Settlement Class that will be mailed personal direct mail Notice is estimated to be 5,887,508 persons. Agreement, § 8.02. That breaks down to 3,110,892 in Subclass One and 2,776,614 in Subclass Two. *Id*.   Swigart Decl. ¶ 8; Hansen Decl., ¶ 10 (Mr. Hansen found 2,842,867 in Subclass One and  2,451,060 in Subclass Two in lists he was provided in confirmatory discovery).[5]   The processes and methodology used to arrive at the number of Class Members were verified by confirmatory discovery through analysis and review by Class Counsel's information technology consultant Hansen & Levey Forensics, Inc.   Hansen Decl. ¶¶ 4, 5; Campion Decl., ¶¶ 20-22.   Thus, Wells Fargo has determined from its records the numbers called by their residential home mortgage division (Subclass One) and their auto finance division (Subclass Two). Swigart Decl. ¶ 8.  If a person was

[5]  It appears that the actual numbers of the Class Members listed in the Settlement Agreement and later reviewed by Jeff Hansen and others vary somewhat but that variation will be resolved prior to providing the Notice Database to the Claims Administrator.

HYDE & SWIGART
San Diego, California

called on their cell phone and they are identified on Wells Fargo's Notice Database, that is all that is needed for membership in the Settlement Class. Agreement, §5.03. And all that is needed for a Class Member to file a claim is to make a call to an 800 telephone number, submit a claim online or mail in a claim form stating the person's Claim Identification Number. [6]  Agreement, §§ 10.01-10.03.  The Approved Claim will be paid a *pro rata* portion of the Settlement Fund after deducting the Settlement Costs. *Id*., § 5.02.

Furthermore, all Settlement Class Members will benefit because of new procedures prompted by this Action and implemented by Wells Fargo to ensure future compliance with the TCPA. Wells Fargo has "developed significant enhancements to its servicing systems" to prevent calling cell phones unless the recipient of the call has provided prior express consent.  Agreement, § 5.04.

### B.   SETTLEMENT PAYMENT

Under the Settlement, Wells Fargo agrees to establish a Settlement Fund in an amount   of $17,100,000.00. Agreement, § 5.01.   That is the maximum amount payable by Defendants in Settlement of this Action.   *Id.*   This Settlement Fund will include funds to pay the Settlement Costs. Agreement, §§ 2.205, 5.01.    That maximum payment is not subject to the number of claims made and approved ("Approved Claims") and is not a reversionary fund.

### C.   MONETARY AWARD TO CLASS MEMBERS

All of the approximately 5,887,508 persons associated with both Subclasses are Settlement Class members, and all are entitled to a *pro rata* award for their claims, the amount of which depends only upon the amount of Approved Claims, the Settlement Costs and the resulting Claims Fund. All approved claims will be awarded an equal share of the Claims Fund. Agreement, § 5.02. And the Class Members have a long time period in which to file claims, 90 days from the date the direct mail Notice postcards are mailed. Agreement, §§ 2.06, 2.07.

The Claims process is as simple as Class Counsel can make it. All a Class Member has to do in order to make a claim is to provide their Claim Identification Number that is on their direct mail Notice postcard and their claim will be filed and a settlement check mailed.  Agreement, §

---

[6]  Wells Fargo represents there is a small number of persons in both Subclasses (less than 1%) for whom there are no names and addresses, and are only identified by the cell phone number called.  For that group of persons, to make a claim, they must provide their name, address, and the cell phone number they believe may have been called by Wells Fargo.  If that number matches a cell phone number on file on the Notice Database, that claim will be approved.

HYDE & SWIGART
San Diego, California

5.03.  That will be done by contacting the Claims Administrator by either (a) calling their toll-free number; (b) contacting them online at the Settlement website; or (c) submitting by mail a completed Claim Form downloaded from the Settlement website.  *Id.*, §10.02.  Swigart Decl., ¶¶ 16-18; Campion Decl., ¶¶ 17-19.  However, a Class Member can only file one claim, regardless of the number of calls received, but if a person happens to be in both Subclass One and Two, they may file a claim for payment as a member of both Subclasses. Agreement, § 10.01.  In addition, for what is represented by Wells Fargo to be a small group (less than 1%) of Class Members for whom there are no names and addresses in Wells Fargo's records, and are only identified in their records by the cell phone number(s) called, in order to make a claim, those persons must provide their name, address, and the cell phone number they believe may have been called by Wells Fargo.  If that number they provide to the Claims Administrator matches a cell phone number on file on the Notice Database, that claim will be approved. *Id.*, § 10.03. Swigart Decl., ¶ 18; Campion Decl., ¶ 19.  Thus, even if Wells Fargo did not happen to maintain the name and address record for that person, they can still file a claim by providing only their cell phone number.

### D.   NON-MONETARY AWARD TO CLASS MEMBERS

In addition, all Class Members will also  benefit from new procedures implemented by Wells Fargo to ensure future compliance with the TCPA (i.e., eliminate calls made to cellular phones unless the account-holder's servicing record is systematically coded to reflect the borrower's prior express consent to receive calls on his or her cell phone).  These procedures were largely developed and implemented after the *Malta* complaint was filed in June 2010.  *See* Agreement, § 5.04.

### E.   CLASS NOTICE

Even though the expense of such notice is considerable, the Agreement provides that notice of the proposed Settlement will be mailed by the proposed Claims Administrator, The ILYM Group, Inc. ("ILYM") to Class Members by direct mail postcard notice ("Direct Mail Notice") to all 5,887,508 persons in both Subclasses.  Agreement, §§9.01, 9.02; see Agreement, Ex. B for that proposed Direct Mail Notice postcard.   That Direct Mail Notice postcard summarizes the Settlement, instructs how to make a claim, opt out or object, and directs the

//

recipient to a toll-free telephone number and the Settlement Website www._____.com to learn the details of the Settlement.

Wells Fargo will provide to the Claims Administrator their records listing the last known addresses for the 5,887,508 Class Members ("Notice Database") in order to mail the Direct Mail Notice. Agreement, §8.02. Because these accounts are related to both home mortgages and auto loans where the bank is to be kept informed of the location of the auto used for collateral, these addresses are believed to have a high percentage of accuracy. Campion Decl., ¶ 11; Swigart Decl. ¶ 10. However, the Claims Administrator may check each address against the U. S. Post Office's National Change of Address Database to confirm the address prior to the initial mailing and use best efforts to update any address for whom the mail is returned as undeliverable and remail the Notice. Agreement, §§9.01, 9.02. Campion Decl., ¶11; Swigart Decl. ¶ 14.

In addition, to provide further notice to the Class Members, including those few for whom there are no names and addresses, the Parties intend to publish notice of the Settlement in the national publication USA Today. That notice will summarize the settlement, advise the Class Members how to file claims and how to find out more information about the Settlement by going to the Settlement Website. Agreement, §9.03, Exhibit D; Campion Decl. ¶ 13; Swigart Decl. ¶ 12.

The Parties will also post on the Settlement Website a long-form Question & Answer Notice form ("Q & A Notice") answering what is hoped to be all questions Class Members may have about the Settlement. Agreement §9.04, Exhibit C; Campion Decl. ¶ 15; Swigart Decl. ¶ 14.

Also a press release will be issued upon Preliminary Approval announcing that a Settlement has been reached, that the Court has given Preliminary Approval to the Settlement and directing interested persons to the Settlement Website. Agreement § 9.05 , Exhibit E; Campion Decl. ¶ 14; Swigart Decl. ¶ 13. That press release will allow search engines to more easily locate the Settlement information for persons searching the internet about the Settlement.

Lastly, a Settlement Website will be established to answer questions about the Settlement, to allow the filing of claims and to allow anyone to review the important documents relating to the Settlement, including but not limited to the Settlement Agreement and Exhibits, and when

filed, the Court's Orders, briefs requesting attorneys' fees and costs, and the motion for Final Approval of the Settlement.      In addition, the Settlement Website and Toll-Free Number will permit Class Members to obtain information and a copy of the Agreement.   Agreement §§ 9.06, 9.07; Campion Decl. ¶ 13; Swigart Decl. ¶ 13.

### F.   SCOPE OF RELEASE

The scope of the release by all Class Members (other than those who exclude themselves from the Settlement) tracks the scope of Plaintiffs' allegations in the original complaint relating to the prohibition against "the use of an 'automatic dialing system' or an 'artificial or prerecorded voice'" as used in the TCPA.[7]   The release also covers known and unknown claims, including California Civil Code Section 1542 claims.  Agreement, §§ 16.01 through 16.03.

### G.   OPPORTUNITY TO OPT OUT AND OBJECT

Under the terms of the proposed Settlement, Class members will have the right to opt out of the Settlement or to object to its terms.   Agreement §§ 12.01, 12.02.   The deadline for doing both is ten days after the end of the Claims Period.   Id., §§2.23, 2.24. Class members will be informed of these rights through the Direct Mail Notice, the Q & A Notice on the Settlement Website, the Publication Notice, and information available by calling the Toll-Free Number. Agreement, Exhibits B, C, D.

### H.   TERMINATION OF SETTLEMENT

If more than 4,000 of the Class members submit valid Requests for Exclusion, then Defendants shall have, in their sole discretion, the right to terminate the Settlement.   Agreement §§17.01; 17.02.  If the Settlement is not finally approved by the Court or is materially modified in the course of approval proceedings, it will be void.  *Id.* at §§ 17.01 through 17.03.

---

[7] " 'Released Claims' means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order that arise out of or relate in any way to the Released Parties' use of an "automatic telephone dialing system" or an "artificial or prerecorded voice" to contact or attempt to contact Settlement Class Members in connection with Wells Fargo's servicing of any Residential Mortgage Loans and Auto Accounts, including the claims of Wells Fargo account holders and non-account holders who are members of the Settlement Class, to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, relevant regulatory or administrative promulgations and case law, including, but not limited to, claims under of for a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,*   and any other statutory or common law claim arising from the use of automatic telephone dialing systems and / or an artificial or prerecorded coice to call cellular telephones or pagers." Agreement § 16.01.  Unknown claims related to the Released Claim are also released under California Civil Code Section 1542.  *Id.*

HYDE & SWIGART
San Diego, California

### I.   PAYMENT OF NOTICE AND ADMINISTRATIVE COSTS

The Agreement provides that the estimated costs of Direct Mail Notice and establishing the claims administration procedures are to be deposited by Wells Fargo into the Settlement Fund Account administered by the Claims Administrator, The ILYM Group, within ten (10) days after entry of the Preliminary Approval order.   Agreement § 8.03.   The funds necessary to fund the Settlement, including the Approved Claims and Settlement Costs, will be paid within five days of the Effective Date and the amounts not paid for in advance will be billed   by itemized invoices and shall be billed and paid monthly.   Agreement §§ 8.03 through 8.04.

### J.   CLASS REPRESENTATIVES' APPLICATION FOR INCENTIVE AWARDS

The proposed Settlement contemplates that Class Counsel will request incentive awards in the aggregate amount of $10,000.00 to be distributed evenly among the two Class Representatives, Alberto Malta and Danny Allen, Jr., subject to Court approval.   Agreement § 6.02.   Wells Fargo has agreed not to oppose a request for such incentive awards in the agreed-upon aggregate amount. *Id.*

### K.   CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees, costs, and expenses to be paid from the Settlement Fund. Agreement § 6.01.   Wells Fargo has agreed not to oppose an application by Class Counsel for an award of attorneys' fees at the 9th Circuit benchmark of 25% of the Settlement Fund Maximum Payment, or $4,275,000.00.   *Id*.   Class Counsel also intends to request that other costs and expenses be paid from the Settlement Fund.   Those include the costs of litigation incurred by Class Counsel, including for the services incurred by Hansen & Levey Forensics, Inc., for information technology consulting.   That costs request will also include  payment of any costs of Notice and Claims administration (presently estimated by The ILYM Group to be at least $2,927,291 because Direct Mail Notice is required for approximately 5,887,508 individuals), but the final cost will vary depending on a number of factors, including   the number of claims submitted.   Agreement, § 8.03; Declaration of Lisa Mullins of ILYM Group, Inc. in Support of Preliminary Approval ("Mullins Decl.") filed herewith.   Class Counsel intends to also ask for costs of litigation not to exceed $45,000.00.   Campion Decl. ¶  23, Swigart Decl. ¶ 22.

HYDE & SWIGART
San Diego, California

### L. CY PRES DISTRIBUTION

In the event there are uncashed settlement checks 210 days after the Effective Date of the Final Approval Order, those amounts remaining in the settlement account for those checks shall be provided to a *cy pres* recipient, agreed upon the Parties and approved by the Court. Agreement, § 8.05(f).

## IV. ARGUMENT

### A. LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e). Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, including preliminary approval, dissemination of notice to class members, and a fairness hearing.

*Manual*, §§ 21.632, 21.633, 21.634. The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*"). The Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further

litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ."  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id.* at 1027.

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate.   Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.).  Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,* 688 F.2d at 625.   Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection."  *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys."  *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004). This proposed settlement satisfies those standards.

Furthermore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *See., e.g.,  Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the court's determination of the

reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]"  *See Hanlon*, 150 F.3d at 1026.  This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

Based on these standards, Plaintiffs' counsel respectfully submit that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.  This request is not opposed by Defendants' counsel, as shown by their Statement of Non-Opposition to the motion.

**B.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED**

**1.   LIABILITY IS HIGHLY CONTESTED AND BOTH SIDES FACE SIGNIFICANT CHALLENGES IN LITIGATING THIS CASE**

Defendant Wells Fargo has vigorously contested the claims asserted by Plaintiffs in this Action.  While both sides strongly believe in the merits of their respective cases, there are risks to both sides in continuing the Action.  Class Counsel understand there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case.  Nevertheless, Class Counsel are confident that a class would be certified here, should the case proceed.  If the Action were to continue, challenges would likely be made to any class certification motion made by Plaintiffs, thereby placing in doubt whether a class could be certified in the Action, and additional substantive challenges to the claims might be raised.  In considering the Settlement, Plaintiffs and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant Settlement Fund and the deterrent effects it would have.  Campion Decl., ¶ 4;  Swigart Decl. ¶ 22.  Similarly, Wells Fargo has to recognize that if a class is certified, the potential amount of damages could be substantially higher than the Settlement agreed upon here.  The Settlement avoids that risk.  Therefore, Defendants' counsel also seek to have the Court approve this Settlement.  Because of the costs, risks to both sides, and delays of continued litigation, the

HYDE & SWIGART
San Diego, California

Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation as a class action for alleged violations of the TCPA.

### 2. DEFENDANT'S AGREEMENT TO CREATE A $17,100,000.00 SETTLEMENT FUND PROVIDES A FAIR AND SUBSTANTIAL BENEFIT TO THE CLASS

As set forth above in III. B. and C., Wells Fargo has agreed to pay $17,100,00.00 to settle this lawsuit.  After the Settlement Costs are deducted, the Class Members, which consist of the Subclass One and Subclass Two  Class Members, will be paid a *pro rata* amount for their Approved Claims, with the amount paid for each claim dependent upon the total dollar amount of all Approved Claims and the amount of Settlement Costs deducted from the Settlement Fund. Agreement §§ 5.01 through 5.03.

The settlement award that each Class Member will receive is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued litigation.  The purpose of the TCPA is to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls. S. REP. NO. 102-178, at 6 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1973.  Although the TCPA provides for statutory damages of $500 for each negligent violation and $1500 for each willful violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial.  *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).

The Parties also agree that this Action resulted in a non-monetary benefit to the Class Members and to the general public. Agreement, § 5.04.  The Settlement Class will also benefit from Wells Fargo's newly implemented procedures designed to prohibit the calling of a cell phone

HYDE & SWIGART
San Diego, California

unless the Settlement Class Member's loan servicing record is systematically coded to reflect the borrower's prior express consent to receive calls on his or her cell phone.  Wells Fargo agrees that these procedures were largely developed and implemented during the Class Period.  *Id.*  These new procedures apply to both the Class Members and the general public, and all current and future calls will be subject to the new Wells Fargo procedures designed to prevent calls to cell phones without prior express consent. Both of these groups will now enjoy greater protection from such calls in the future.  *Id.*  Thus, this Action has provided substantial benefit to the Settlement Class Members, both monetarily and through the cessation of potentially illegal conduct directed toward the Settlement Class.

### 3.   THE SETTLEMENT WAS REACHED AS THE RESULT OF ARM'S LENGTH NEGOTIATION, WITHOUT COLLUSION, WITH THE ASSISTANCE OF THE COURT.

The proposed Settlement is the result of a series of spirited arm's length negotiations, including an Early Neutral Evaluation conference held before Magistrate Judge Barbara Lynn Major, followed by two separate all-day mediation sessions with Hon. Howard B. Wiener (Ret.) and Hon. Leo S. Papas (Ret.) and further negotiations between the Parties.  With the guidance of those retired judges, and Magistrate Judge Major, who assisted in the informal discovery procedures that permitted the Parties to facilitate this Settlement, and working independently of the Court, the Parties were able to reach a Settlement.  See Agreement, §§ 1.04-1.05; Swigart Decl., ¶¶ 4-7; Campion Decl., ¶ 5;  Declaration of Abbas Kazerounian in Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Kazerounian Decl."), ¶¶ 4-7.  A complicated and intricate sampling process was negotiated and completed prior to the first mediation session, and both sides participated in that process that permitted the Parties to determine the parameters of the Class. Campion Decl., ¶ 5. Informal discovery was provided to Class Counsel and later, after settlement, confirmatory discovery was reviewed by the experienced information technology consultant retained by the Plaintiffs.  Campion Decl., ¶¶ 20-21; Hansen Decl. ¶ ¶ 4-9.  Confirmatory discovery verified the parameters of the broader Class and the number of cell phones called making up the number of  Class Members.  Hansen Decl., ¶¶ 6, 9; Campion Decl., ¶¶ 20-22;  Swigart Decl, ¶11.  With counsel for both sides also participating, there were several   conference calls between the information technology advisors for both sides arranged to go over methodology, databases used, technical details of database

HYDE & SWIGART
San Diego, California

searches and other questions related to the parameters of the Settlement Class and how the number of cell phones called was determined.   Hansen Decl. ¶¶ 4, 5; Campion Decl., ¶ 20. Plaintiff's counsel and their consultant are satisfied the information provided about the number of persons in the Settlement Class and the number of cell phones called is correct.  Campion Decl., ¶¶ 20-22; Swigart Decl., ¶11; Hansen Decl., ¶¶ 6, 9.  Furthermore, after reaching an agreement in principle at mediation to settle the case, the Parties' counsel engaged in extensive discussions for several more months.   These discussions were necessary to work out the many details of the Settlement including: data production, total number of Class Members, the claims process and notice procedures. Campion Decl., ¶ 5;   Swigart Decl., ¶ 6.   The time and effort spent on settlement negotiations, as well the time spent with the retired judges in mediation, and in developing the discovery protocol for the sampling of data  in the settlement process, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no collusion.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

### 1. EXPERIENCED COUNSEL HAVE DETERMINED THAT THE SETTLEMENT IS APPROPRIATE AND FAIR TO THE CLASS

The Parties are represented by counsel experienced in complex class action litigation. Class Counsel have extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the TCPA.   Campion Decl., ¶¶ 24-31; Swigart Decl., ¶¶ 27-35; Kazerounian Decl, ¶¶ 25-31.   Similarly, Counsel for Wells Fargo has extensive experience based upon a long track record in complex class actions.   They have vigorously defended Wells Fargo throughout the course of this Action.  Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members. Campion Decl., ¶ 10; Swigart Decl., ¶ 7;  Kazerounian Decl. ¶¶ 18-19.   Wells Fargo's counsel has filed a Statement of Non-Opposition to this motion, so they also support this request for Preliminary Approval.

### B. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement.  *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class

action before class certification and stipulate that a defined class be conditionally certified for settlement purposes").   Like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23 are met.  *Id.*   As explained below, class certification is appropriate here because the Litigation meets the requirements of Rule 23(a) and Rule 23(b)(3).

### 1.   THE PROPOSED CLASS IS NUMEROUS

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable.    "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).   Here, the Notice Database that will be used to provide notice to the Class contains information relating to approximately 5,887,508, approximately 3,110,892 individuals in Subclass One and approximately 2,776,614   individuals in Subclass Two.   Campion Decl., ¶¶ 11, 18; Swigart Decl., ¶¶ 8, 15.   Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class.

### 2.   THE COMMONALITY REQUIREMENT IS SATISFIED BECAUSE COMMON QUESTIONS OF LAW AND FACT EXIST

The commonality requirement is met if there are questions of law and fact common to the class.    *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").   Here, for purposes of settlement, the proposed Class Members' claims all stem from the same factual circumstances, specifically that calls were made or would be made by Wells Fargo to Class Members between June 16, 2006 and November 16, 2011 for Subclass One members and between December 23, 2006 and November 16, 2011 for members of Subclass Two using autodialing equipment or with a prerecorded voice message.   Plaintiffs' claims also present a number of questions of law that are common to all members of the Class for settlement purposes, including: (1) whether Wells Fargo negligently violated the TCPA; (2) whether Wells Fargo willfully or knowingly violated the TCPA; and (3) whether Wells Fargo had "prior express consent" for the calls.   The Class Members all seek the same remedies, including statutory damages and injunctive relief.     Under these circumstances, the commonality

HYDE & SWIGART
San Diego, California

requirement is satisfied for purposes of certifying a settlement class.  *See Hanlon,* 150 F. 3d at 1019-20.

### 3.   THE TYPICALITY REQUIREMENT IS MET

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020. For purposes of settlement, Plaintiffs' claims are typical of the claims of the whole class because they arise from the same factual basis – calls made to Plaintiffs using autodialing equipment – and are based on the same legal theory as applies to the Class as a whole – that the calls violated the TCPA.  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Both of the Class Representatives claim that they were contacted by Wells Fargo on their cellular telephones via an automatic telephone dialing system that used an artificial or prerecorded voice.  Complaint, Dkt. No. 1. Accordingly, the Class Representatives' claims are typical of those of the Class Members. Thus, the typicality requirement is satisfied for certifying a settlement class.

### 4.   THE ADEQUACY REQUIREMENT IS SATISFIED

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiffs and Class Counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiffs' claims are typical of those of other Class Members.  *See* Declaration of Alberto Malta in Support of Preliminary Approval ("Malta Decl.") ¶¶ 6-7; Declaration of Danny Allen, Jr. in Support of Preliminary Approval ("Allen Decl.") ¶ 6-7; Campion Decl., ¶¶ 32-33; Swigart Decl., ¶¶ 35-37; Kazerounian Decl., ¶ 37-38. In addition, Plaintiff Malta and Class Counsel have been prosecuting this Litigation vigorously on behalf of the Class.  Swigart Decl., ¶¶ 4-7.  Plaintiffs and Class Members share the common goal of protecting and improving consumer and privacy rights throughout the nation, and there is no conflict among them.  Class Counsel have extensive experience in litigation, including the

HYDE & SWIGART
San Diego, California

prosecution of class actions seeking to protect privacy and consumer rights, including TCPA actions. Swigart Decl., ¶¶ 27-35; Campion Decl., ¶¶ 24-31; Kazerounian Decl., ¶¶ 25-36. Class Counsel are qualified and able to conduct this Litigation. Campion Decl., ¶¶24-31; Swigart Decl., ¶¶ 27-35; Kazerounian Decl., ¶¶ 25-36. Plaintiffs' counsel have vigorously represented Plaintiffs and the Class in negotiating the proposed Settlement. Swigart Decl., ¶¶ 4-7, 38. Rule 23(a)(4) is therefore satisfied.

### 1. COMMON QUESTIONS PREDOMINATE, SUFFICIENT TO CERTIFY A CLASS FOR SETTLEMENT PURPOSES ONLY

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *amended*, 273 F. 3d 1266 (9th Cir. 2001).

Here, the central inquiry is whether Wells Fargo violated the TCPA with calls made to Settlement Class Members. Considerations of judicial economy favor litigating a predominant common issue once in a class action instead of thousands of times in separate lawsuits. Thus, class certification in this Litigation would be appropriate. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

### 2. CLASS TREATMENT FOR SETTLEMENT PURPOSES IS SUPERIOR TO INDIVIDUAL RESOLUTIONS

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims.

Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/ Bartenders Trust Fund*, 244 F.3d at 1163. *See also, Valentino v. Carter-Wallace*, 97 F.3d 1227,

**HYDE & SWIGART**
San Diego, California

1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate.  Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems."  *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997).   "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious . . . ."  *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998);  *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted). Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any class member who wishes to pursue a separate action can opt out of the Settlement.
- The Parties are unaware of any competing litigation regarding the claims at issue, as no one has filed a Notice of Related Case as often occurs with national class actions, and the *Allen* Action is incorporated into this Action for purposes of Settlement.
- The Parties agree that it would be desirable to resolve Plaintiffs' claims in this forum.

Swigart Decl., ¶¶ 21-23; Agreement, §§ 1.01 – 1.03.

**B.   THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."  *Silber v. Mabon*, 18 F.3d

HYDE & SWIGART
San Diego, California

1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.[8]

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal".  Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice.  The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Direct Mail Notice, the Q & A Notice to be posted on the Settlement Website, the publication notice and the press release meet all the requirements.  *See* Agreement, Exhibits B, C, D and E.  The Claims Administrator will mail individual Direct Mail Notices via first-class mail in postcard-style form with a unique Claim Identification Number to the 5,887,508 Settlement Class Members, 3,110,892 in Subclass One and 2,776,614  in Subclass Two (Exhibit B to the Agreement). Over 99% of those addresses are contained in the Notice Database. Campion Decl., ¶ 19.  This initial mailing of the Direct Mail Notice shall occur within 30 days after entry of the Preliminary Approval Order.   Agreement § 9.01.   The notice procedure also permits searches of the U.S. Post Office National Change of Address Database by the Claims Administrator to obtain current addresses before mailing and for any notices returned by the postal service. Agreement § 9.02.  If the Direct Mail Notice sent to any person is returned as undeliverable, and if a new address is obtained for such a person, a second Direct Mail Notice shall be mailed to the new address promptly.  Id.

In addition, the Parties have agreed to provide notice through the detailed Q & A Notice

---

[8] Defendant has agreed to provide the requisite Class Action Fairness Act ("CAFA") Notices pursuant to 28 U.S.C. Section 1715(b) within 10 days of filing this motion and to pay for the costs of that Notice.  Agreement § 9.08.

HYDE & SWIGART
San Diego, California

that will be posted on the Settlement Website maintained by the Claims Administrator.   The Settlement Website will allow visitors to access (and print) a complete copy of the Direct Mail Notice, the Settlement Agreement, and the Q & A Notice.   The website will also allow them to file claims online if they   provide the necessary identifying information as set forth in the Notice, i.e., their Claim Identification Number.  Agreement § 9.06.

The Parties have also agreed to provide a publication notice, published in the national edition of The USA Today, and posted on the Settlement Website that same date of publication. Agreement § 9.03, Exhibit D.

A neutrally worded press release will be issued announcing the Settlement and directing persons to the Settlement Website for more information. Agreement § 9.05, Exhibit E.

Also, anyone can obtain information about the Settlement through the Toll-Free Telephone Number.   Agreement § 9.07.   The Claims Administrator shall maintain a Toll-Free Number throughout the ninety (90) day Claims Period and beyond, which will allow callers to request copies of the Direct Mail Notice and the Settlement Agreement. Class Members may also file claims by calling that toll – free number by providing the necessary information.   It is contemplated that all that will be necessary for the 99%+ Class Members that receive Direct Mail Notice is to provide the Claims Administrator with their unique Claim Identification Number and the claim will be filed.   Agreement § 9.07.

Furthermore, the notices will be disseminated and also posted on the website sufficiently prior to the Final Approval hearing to give Class members the opportunity to comment on the settlement, or to opt out and preserve their rights.  *See Torrisi v. Tucson Electric Power Co.*, 8 F. 3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) citing *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of a notice which was mailed 26 days before the deadline for opting out of a settlement).  Here, there will be more than ninety (90) days to opt out or object, as the last day to do either is ten days beyond the 90 day deadline for filing claims. Agreement, §§ 2.06, 2.07.  Accordingly, the Direct Mail Notice, the longer Q & A Notice posted on the Settlement Website, the publication notice

//

HYDE & SWIGART
San Diego, California

and the press release fulfills all requirements of adequate notice and should be duly approved. *Torrisi, supra*; Fed. R. Civ. P. 23(c)(2); *Manual, 3d*, 30.21.

Pursuant to the proposed Settlement, Wells Fargo has agreed to provide a Notice Database to the Claims Administrator and to Class Counsel.   Agreement §§ 2.17, 8.02.   The Notice Database is a database containing the names, current or last known mailing addresses, account numbers and cell phone numbers called that are contained in Wells Fargo's records pertaining to approximately 5,887,508 Settlement Class Members.  Campion Decl., ¶¶ 11-13; Swigart Decl., ¶¶ 10-12.

To create the Notice Database, according to representations made throughout the Action and in more detail in confirmatory discovery, Wells Fargo reviewed its records of calls made to all persons in the two groups, residential home mortgage servicing and auto finance loan servicing, then compared those lists to known cell block identifiers.   By narrowing the time periods to the respective Class Periods, Wells Fargo identified the cell phones called and used those numbers to produce the Notice Database.   Hansen Decl., ¶¶ 4-6; Campion Decl., ¶¶ 20-21.   As part of the confirmatory discovery, Wells Fargo prepared declarations by three persons working on its behalf in assembling the Notice Database setting forth in detail the manner and methodology used to determine the persons in the Class.   [9]  Mr. Hansen reviewed the Wells Fargo declarations and interviewed two of the declarants in analyzing the efficacy of the processes described. Hansen Decl., ¶¶ 4-6.  Mr. Hansen is satisfied with the methodology used and believes the numbers are accurate that are represented by Wells Fargo to be the total numbers of Class Members in Subclass One and Subclass Two.  *Id.* at ¶¶ 6, 9.   That Notice Database will be utilized by the Claims Administrator to provide notice to the Class Members.   Campion Decl., ¶ 11;  Swigart Decl., ¶ 12.   Not less than fourteen (14) days prior to the Fairness Hearing, the Claims Administrator shall file a declaration certifying that Notice has been properly given, and list the number of persons that request exclusion form the Settlement.  Agreement §§ 12.01,13.01.

This notice program was designed to meaningfully reach the largest possible number of Class Members, despite its expense.   Courts have approved settlements in which notice was

---

[9]  Those declarations have been designated "Confidential" because of their content and are only generally summarized herein.

HYDE & SWIGART
San Diego, California

calculated to reach 75-83% of the class[10] and 70% of the class,[11] respectively.  Here, the Direct Mail Notice is calculated to reach every member of the Settlement Class members identified in the Notice Database by Direct Mail Notice.  It will almost certainly reach more than the 70% to 80% threshold found to be sufficient in the aforementioned cases.  The mailing of the Direct Mail Notice, combined with the posting of the Q & A Notice on the website, the publication Notice and the Press Release satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes due and sufficient notice.

### A.   THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVES AND CLASS COUNSEL

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class."  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978).   The adequacy of representation requirement is met here. For settlement purposes, the Parties jointly request that the two Plaintiffs, Alberto Malta and Danny Allen, Jr., be appointed as the Class Representatives.   The Parties have agreed that Hyde & Swigart, the Law Offices of Douglas J. Campion and the Kazerouni Law Group, APC, should be appointed as Class Counsel for Plaintiffs Malta and Allen and for all other purposes of the Settlement.  Agreement § 4.01.  Plaintiffs' counsel all have extensive experience sufficient to be appointed as Class Counsel here.     Swigart Decl., ¶¶ 27-35; Campion Decl., ¶¶ 24-31; Kazerounian Decl., ¶¶ 25-36.  Plaintiffs Malta and Allen understand the obligations of serving as class representatives, have adequately represented the interests of the putative class, and have retained experienced counsel. Swigart Decl., ¶ 38; Campion Decl., ¶ 34. Malta Decl., ¶ 5-8; Allen Decl., ¶ 5-8.   Plaintiffs have no antagonistic or conflicting interests with the Class Members. Swigart Decl., ¶ 36; Campion Decl., ¶32; Malta Decl., ¶ 6-7; Allen Decl. ¶ 6-7. Plaintiffs and the Class Members seek the same relief, which includes statutory damages for Defendants' alleged

//

---

[10] *Hartless v. Clorox Co.*, 2011 U.S. Dist. LEXIS 5427, at *25 (S.D. Cal. Jan. 20, 2011) (court granted final approval of settlement where notice was estimated to reach 75-83% of the class).

[11] *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, at *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

unlawful actions as well as injunctive relief.   Considering the overwhelming similarity of the claims, there is no potential for conflicting interests in this action.

### B.   THE COURT SHOULD APPOINT THE ILYM GROUP AS THE CLAIMS ADMINISTRATOR

The Parties have agreed upon and propose that the Court appoint The ILYM Group, Inc. to serve as the Claims Administrator.   Agreement, § 8.01.   The ILYM Group specializes in providing administrative services in class action litigation and has extensive experience in administering consumer protection and privacy class action settlements.  Mullins Decl., ¶¶ 1.2.

### C.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal Final Approval Hearing or Fairness Hearing, at which time the Court may hear all evidence and argument, both for and against, the Settlement in order to evaluate its merits and determine whether it should be approved.  The Parties request that the hearing be held not before 144 days after the date of entry of the Preliminary Approval Order to allow sufficient time for providing CAFA Notice, direct mail notice and the 90 day claims period.

### II.   CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court enter an order preliminarily approving the proposed Settlement.


**LAW OFFICES OF DOUGLAS J. CAMPION**

Dated: June 18, 2012             /s/ Douglas J. Campion_____
                                 Douglas J. Campion
                                 409 Camino Del Rio South, Suite 303
                                 San Diego, CA  92108


**HYDE & SWIGART**

Dated: June 18, 2012             /s/ Joshua B. Swigart_____
                                 Joshua B. Swigart
                                 411 Camino Del Rio South, Suite 301
                                 San Diego, CA  92108

**HYDE & SWIGART**
San Diego, California

THE  KAZEROUNI LAW GROUP, APC

Dated: June 18, 2012

/s/ Abbas Kazerounian
Abbas Kazerounian
2700 North Main Street, Ste. 1000
Santa Ana, CA 92705

Attorneys for Plaintiff and the Settlement Class

**HYDE & SWIGART**
San Diego, California