# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is effective as of June 15, 2012, and is entered into by Plaintiffs Alberto Malta and Danny Allen, Jr. (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class members, and by Wells Fargo Bank, N.A. and the Federal Home Loan Mortgage Corporation a/k/a "Freddie Mac" ("Freddie Mac"), (collectively, "Defendants").   Plaintiffs and Defendants are referred to collectively in this Agreement as the "Parties."

## RECITALS

1.01.   On June 16, 2010, Alberto Malta filed a Complaint in the United States District Court for the Southern District of California (the "Court") entitled *Alberto Malta, individually and on behalf of himself and all others similarly situated vs. Federal Home Loan Mortgage Corporation a/k/a "Freddie Mac" and Wells Fargo Home Mortgage, Inc.,* Case No. 10 CV 1290 IEG BLM (the "*Malta* Action").   The Complaint in the *Malta* Action alleges that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by using an automatic telephone dialing system or an artificial or prerecorded voice to call cell phones without the prior express consent of Malta and the putative class members.

1.02.   On December 23, 2010, Danny Allen, Jr. filed a Complaint in the United States District Court for the Southern District of California, entitled *Danny Allen, Jr., on behalf of himself and all others similarly situated vs. Wells Fargo Auto Finance, Inc.,* Case No. CV 10 2657 (the "*Allen* Action").   The Complaint in the *Allen* Action alleges that Wells Fargo Auto Finance, Inc. violated the TCPA by using an automatic telephone dialing system or an artificial or prerecorded voice to call cell phones without the prior express consent of Allen and the putative class members.

1.03    Defendants in the *Malta* and *Allen* actions deny all material allegations of the Complaints.   Defendants specifically dispute that they called Plaintiffs or putative class members without their consent, that they violated the TCPA, or that Plaintiffs and putative class members are entitled to any relief from Defendants.   Defendants further contend that the *Malta* and *Allen* actions would not be amenable to class certification if class certification were sought by Plaintiffs and opposed by Defendants.   Nevertheless, given the risks, uncertainties, burden and

07685.0715/2228839.1

expense of continued litigation, Defendants have agreed to settle this litigation on the terms set forth in this Agreement, subject to Court approval.

1.04.   This Agreement resulted from good faith, arm's length settlement negotiations over many months, including two mediation sessions, one before the Hon. Howard B. Wiener, Ret., and another before the Hon. Leo S. Papas, Ret.   Prior to those mediations, Defendants provided Plaintiffs with extensive information concerning their claims, including voluminous data regarding telephone calls placed to putative class members, and such information was analyzed by a third party expert engaged by Plaintiffs.   The Parties also participated in direct discussions about possible resolution of this litigation, including in person discussions and numerous telephonic meetings.   Certain information provided by Defendants is subject to confirmatory discovery by Plaintiffs as a condition of this settlement.

1.05.   Based on their investigation and the negotiations described above, and under the assumption that the information currently known to Plaintiffs is confirmed through the additional confirmatory discovery to be conducted as described in Section 15.01 below, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of this litigation, and the substantial benefits to be received by class members pursuant to this Agreement, that a settlement with Defendants on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class Members.

1.06   Plaintiffs' Motion for Preliminary Approval will include a request for leave from the Court to file a Second Amended Complaint in the *Malta* Action which will designate the Malta Class as a Subclass, Subclass One, and add Allen as an additional named plaintiff and class representative, and designate a separate Allen Subclass, Subclass Two. Subclasses One and Two will mirror the definitions set forth in Section 2.25 below. Assuming the Court grants the Motion for Final Approval of the Agreement, the *Allen* Action will be dismissed with prejudice. Plaintiffs and Class Counsel understand that dismissal with prejudice of the *Allen* Action is a material term of this Agreement.

1.07   Wells Fargo Home Mortgage, a named defendant in the *Malta* Action, is an operating division of Wells Fargo Bank, N.A., having been merged into that bank in 2004. Wells Fargo Auto Finance, Inc., a named defendant in the *Allen* Action, was formerly a subsidiary of Wells Fargo Bank, N.A., but was merged into Wells Fargo Bank, N.A. in March,

2012, and is now a division of that bank.  Accordingly, Wells Fargo Bank, N.A. is entering into this settlement agreement to resolve the claims asserted by Plaintiffs in both the *Malta* and *Allen* Actions.

    1.08.   The parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence against any party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any party to this Agreement.  It is the Parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

    1.09.   The settlement contemplated by this Agreement is subject to preliminary and final approval by the court, as set forth herein.  This Agreement is intended by the parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

## DEFINITIONS

    2.01.   "Action" means the *Malta* Action and/or the *Allen* Action.

    2.02   "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release.

    2.03.   "Approved Claims" means claims that have been timely submitted and approved for payment.

    2.04   "Auto Loan" means an agreement by Wells Fargo Auto Finance to extend credit for the purpose of financing the purchase of a motor vehicle where the motor vehicle serves as security for the extension of credit; auto loans, as used in this Agreement, include both direct loans made to the vehicle purchaser by Wells Fargo Auto Finance, as well as indirect financing agreements, such as retail installment sale contracts which were entered into between the seller and purchaser of the vehicle and subsequently assigned to Wells Fargo Auto Finance.

    2.05.   "CAFA Notice" means the notice required by 28 U.S.C. Section 1715(b).

    2.06.   "Claims Deadline" means ninety (90) days from the Settlement Notice Date.

    2.07.   "Claim Period" means the 90-day period that begins on the Settlement Notice Date.

2.08.   "Claims Administrator" shall mean ILYM Group.

2.09    The "Class" or "Class Members" means the persons in the following Subclass One and Subclass Two:

      a.   Subclass One consists of all subscribers to wireless telephone numbers whose numbers were dialed by Wells Fargo in connection with its servicing of a Residential Mortgage Loan, including borrowers and co-borrowers on such loans, and including third parties called in connection with the servicing of such loans, where such calls were placed through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period June 16, 2006 to November 16, 2011.

      b.   Subclass Two consists of all subscribers to wireless telephone numbers whose numbers were dialed by Wells Fargo in connection with its servicing of Auto Loan accounts, including borrowers and co-borrowers on such accounts, and including third parties called in connection with the servicing of such accounts, where such calls were placed through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period December 23, 2006 to November 16, 2011.

      c.   Excluded from the Class are Defendants; their parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to whom the Action is assigned; and, any member of those judges' staffs and immediate families.

2.10.   The "Class List" means the list of Class Members prepared by Wells Fargo and provided as part of the settlement process to the Claims Administrator and Class Counsel.

2.11.   "Class Counsel" means Joshua B. Swigart of Hyde & Swigart, Douglas J. Campion of The Law Offices of Douglas J. Campion and Abbas Kazerounian of the Kazerouni Law Group, P.C.

2.12.   "Class Period" means June 16, 2006 to November 16, 2011 for Subclass One, and December 23, 2006 to November 16, 2011 for Subclass Two.

2.13   "Class Representatives" means Plaintiffs Alberto Malta and Danny Allen Jr.

2.14.   "Court" shall mean the United States District Court for the Southern District of California, and the U.S. District Judge to which the *Malta* Action is assigned.

2.15.   "Effective Date" means the date when the Judgment has become final as provided in Section 14.01.

2.16.   "Final Approval Hearing" means the hearing held by the Court to determine whether to finally approve the Settlement set forth in this Agreement as fair, reasonable and adequate, sometimes referred to herein as the "Fairness Hearing".

2.17.   "Final Approval Order" means the Court's Order entered in connection with the Final Approval Hearing, substantially in the form attached hereto as Exhibit F.

2.18.   "Final Distribution Date" means the date set forth in Section 8.05 (f).

2.19.   "Funding Date" means the date which is no later than ten (10) business days after the Effective Date, on which Wells Fargo shall cause a payment to be made into the Settlement Fund Account pursuant to Section 8.04..

2.20.   "Maximum Payment" means an all-inclusive payment of Seventeen Million One Hundred Thousand Dollars ($17,100,000.00) which shall be made by Wells Fargo to resolve this litigation.  As set forth in this Agreement, this amount shall be used for Settlement Costs, including administration expenses, taxes and tax-related expenses incurred by or in connection with the creation of the Settlement Fund, any incentive awards ordered by the Court to be paid to the Class Representatives, any attorneys' fees, costs or expenses ordered by the Court to be paid to Class Counsel,  and all amounts to be paid to Settlement Class Members under this Agreement.  Under no circumstances shall Defendants be required to pay any amount in excess of the $17,100,000 Maximum Payment in order to resolve the Action.

2.21.   "Notice" means the notices to be provided to Class Members as set forth in Section 9, including, without limitation, the Direct Mail Notice, the Publication Notice, the Q & A Form Notice to be posted on the website, the Press Release and the Internet Notice process described in Sections 9.01 through 9.08.  The forms of the Direct Mail Notice,  the Q and A Notice Form, the Publication Notice and the Press Release are attached hereto as Exhibits B, C, D and E, respectively.

2.22.   "Notice Database" means the database containing Class Members' information to be provided by Wells Fargo pursuant to Section 8.02.

2.23.   "Objection Deadline" means ten (10) days after the end of the Claims Period.

2.24.   "Opt-Out Deadline" means ten (10) days after the end of the Claims Period.

2.25.   "Preliminary Approval Order" means the Court's Order entered in connection with the Preliminary Approval Hearing, substantially in the form attached as Exhibit A.

2.26.   "Q&A Form" means the long-form Question & Answer Form Notice containing questions and answers relating to the terms of the settlement, which will be made available on the Settlement Website as described in Section 8.4.2, the form of which is attached hereto as Exhibit C.

2.27   "Qualified Class Member" means a Settlement Class Member who submits a claim for monetary relief which is approved pursuant to Section 10.03.

2.28.   "Released Claims" means those claims released in Section 16.

2.29.   "Released Parties" means Wells Fargo, the Federal Home Loan Mortgage Corporation a/k/a "Freddie Mac;" and each of their respective past, present and future parents, subsidiaries, affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each of their respective executors, successors, assigns, and legal representatives.

2.30   "Residential Mortgage Loan" means an agreement to extend credit for the purpose of financing the purchase of a residential property that was serviced, at any time during the class period, and to any extent, by Wells Fargo Bank, N.A. or Wells Fargo Home Mortgage, and include both direct loans made to the property purchaser by Wells Fargo Bank, N.A. or Wells Fargo Home Mortgage, as well as indirect financing or servicing agreements, such as lending which was obtained by the purchaser of property and subsequently assigned to Wells Fargo Bank, N.A. or Wells Fargo Home Mortgage for servicing, in its own or a tradename. The definition includes any kind of secured financing arrangement for the purchase of real property including, but not limited to, those secured by mortgages and deeds of trust, with or without power of sale, and whether considered a lien or transfer of title.

2.31.   The "Settlement Class" or "Settlement Class Members" means those persons who are members of Subclass One or Subclass Two, as set forth in the Class definition in Section 2.09 above, and who do not timely and validly request exclusion from the Settlement Class.

2.32.   "Settlement Costs" means all costs incurred in the litigation by the Class and their attorneys, including but not limited to Plaintiffs' attorneys' fees, their costs of suit, Plaintiffs' expert or consultant fees, any incentive payments paid to Malta and Allen, notice costs, costs of claims administration and all other costs of administering the settlement.

2.33.   "Settlement Fund" shall mean the funds to be paid by Wells Fargo pursuant to Sections 5.01 and 5.02 below.

2.34.   "Settlement Notice" means the notice of settlement on the form attached hereto as Exhibit 1, or as otherwise approved by this Court.

2.35.   "Settlement Notice Date" shall mean the date the Settlement Notices are required by the Court to be mailed to all Settlement Class Members.

2.36.   "Settlement Website" means the Internet website operated by the Claims Administrator as described in Section 8.4.2.

2.37.   "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, and any regulations or rulings promulgated under it.

2.38   "Wells Fargo" means Wells Fargo Bank, N.A., including its division known as Wells Fargo Home Mortgage, its predecessor Wells Fargo Home Mortgage, Inc., its mortgage servicing operations conducted under the dba "America's Servicing Company," its division known as Wells Fargo Auto Finance and its predecessor Wells Fargo Auto Finance, Inc.

2.39   "Wells Fargo Auto Finance" means Wells Fargo Auto Finance, a division of Wells Fargo Bank, N.A. which engages in the retail financing of automobile purchases, and its predecessor Wells Fargo Auto Finance, Inc.

**BOTH SIDES RECOMMEND APPROVAL OF THE SETTLEMENT**

3.01.   <u>Defendants' Position on the Conditional Certification of Settlement Class</u>. Defendants dispute that a class would be manageable or that common issues predominate over individual ones, and deny that a litigation class properly could be certified on the claims asserted in the Malta Action and Allen Action.  However, solely for purposes of avoiding the expense and inconvenience of further litigation, Defendants do not oppose and agree to certification of the Class defined in Section 2.09, for *settlement purposes only*, pursuant to Fed. R. Civ. P. 23(b)(3). Preliminary certification of the Class for settlement purposes shall not be deemed a concession

that certification of a litigation class is appropriate, nor would Defendants be precluded from challenging class certification in further proceedings in the *Malta* Action or the *Allen* Action or in any other action if the Settlement is not finalized or finally approved.  If the Settlement is not finally approved by the Court for any reason whatsoever, the certification of the Class will be void, and no doctrine of waiver, estoppel or preclusion will be asserted in any proceedings involving Defendants.  No agreements made by or entered into by Defendants in connection with the Settlement may be used by Plaintiffs, any person in the Class or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the *Malta* Action, the *Allen* Action or any other judicial proceeding.

    3.02.    <u>Plaintiffs' Belief in the Merits of Case</u>.  Plaintiffs believe that the claims asserted in the Action have merit and that the evidence developed to date supports those claims.  This Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Plaintiffs that there is any infirmity in the claims asserted by Plaintiffs, or that there is any merit whatsoever to any of the contentions and defenses that Defendants have asserted.

    3.03.   <u>Plaintiffs Recognize the Benefits of Settlement</u>. Plaintiffs recognize and acknowledge, however, the expense and amount of time which would be required to continue to pursue the Action against Defendants, as well as the uncertainty, risk and difficulties of proof inherent in prosecuting such claims on behalf of the Class.  Plaintiffs have concluded that it is desirable that the Action and any Released Claims be fully and finally settled and released as set forth in this Settlement.  Plaintiffs and Class Counsel believe that the agreement set forth in this Settlement confers substantial benefits upon the Class and is in the best interests of individual Class Members.

<u>**CLASS COUNSEL AND CLASS REPRESENTATIVES**</u>

    4.01.    <u>Class Representative And Class Counsel Appointment</u>.  For settlement purposes, and subject to Court approval, Alberto Malta and Danny Allen, Jr. are appointed as the Class Representatives for the Class, as representatives of Subclass One and Subclass Two, respectively. The law firms are appointed Class Counsel for the Settlement Class as follows: Hyde & Swigart, the Law Offices of Douglas J. Campion, and The Kazerouni Law Group, APC.

## SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS

5.01.   <u>Total Payment</u>.  Wells Fargo Bank, N.A. shall pay $17,100,000 to settle the Action and obtain a release of all Released Claims in favor of all Defendants as set forth herein. The Maximum Payment will be used to pay Approved Claims and any Settlement Costs. Settlement Class Members will be eligible for a cash payment, the amount of which is dependent upon the number of Approved Claims.

5.02.   <u>Amount Paid per Claim</u>. The amount paid per Approved Claim shall be divided among the approved claimants on a *pro rata* basis from the amount remaining in the Settlement Fund after deducting the Settlement Costs from the $17,100,000 Maximum Payment.

5.03.   <u>Qualifying for Payment</u>. Settlement Class members shall be entitled to submit a claim for a monetary payment if their name is on the Notice Database or Class List as a person whose cell phone was called by Wells Fargo by an autodialer and / or a prerecorded voice message during the Class Period.

5.04.   <u>Account Changes to Systemically Code Borrower's Consent</u>.  As an additional benefit to all Settlement Class Members, Wells Fargo has developed significant enhancements to its servicing systems which are designed to prevent the calling of a cell phone unless a loan servicing record is systematically coded to reflect the borrower's prior express consent to call his/her cell phone.  These procedures were developed and implemented during the Class Period.

## ATTORNEYS' FEES, COSTS AND PAYMENT TO CLASS REPRESENTATIVES

6.01.   <u>Attorneys' Fees and Costs</u>.  Class Counsel shall move the Court for an award of attorneys' fees and expenses to be paid from the Settlement Fund.  Defendants will not object to any request by Class Counsel for attorneys' fees in an amount not exceeding 25% (twenty-five percent) of the Settlement Fund, nor object to any amounts sought for the costs incurred by Class Counsel in litigating the *Malta* Action and *Allen* Action.  The amount of attorneys' fees and costs approved by the Court shall be paid from the Settlement Fund, and not in addition thereto. Within five (5) days of the Effective Date and after receipt of payees completed W-9 forms, the Claims Administrator shall pay to Class Counsel the amount of attorneys' fees, costs, and expenses awarded to Class Counsel by the Court, as directed by written instructions from Class Counsel.

6.02.    Payment to Class Representatives.  Plaintiffs/Class Representatives will also ask the Court to award them incentive payments for the time and effort they have personally invested in this Action.  Defendants shall not object to such incentive payments to be paid to Malta and Danny Allen, Jr.  from the Settlement Fund provided they do not exceed $10,000 in the aggregate, $5,000 for each Plaintiff, subject to Court approval.  Within five (5) days of the Effective Date and after receipt of payees' completed W-9 forms, the Claims Administrator shall pay to Plaintiffs' counsel the amount of incentive payments awarded by the Court, and Plaintiffs' counsel shall disburse such funds.

6.03    Settlement Independent of Award of Fees, Costs and Incentive Payments.  The payments of attorneys' fees, costs and incentive payments set forth in Sections 6.01 and 6.02 are subject to and dependent upon the Court's approval as fair, reasonable, adequate and in the best interests of Settlement Class Members.  However, this Settlement is not dependent upon the Court's approving Plaintiffs' requests for such payments or awarding the particular amounts sought by Plaintiffs.  In the event the Court declines Plaintiffs' requests or awards less than the amounts sought, this Settlement shall continue to be effective and enforceable by the Parties.

## PRELIMINARY APPROVAL

7.01.    Order Of Preliminary Approval.  As soon as practicable after the execution of this Agreement, Plaintiffs shall move the Court for entry of the Preliminary Approval Order in substantially the form attached as Exhibit A.  Pursuant to the motion for preliminary approval, the Plaintiffs will request that:

A.    the Court conditionally certify the Class for settlement purposes only and appoint Class Counsel as counsel for the Class for settlement purposes only;

B.    the Court preliminarily approve the settlement and this Agreement as fair, adequate and reasonable, and within the reasonable range of possible final approval;

C.    the Court approve the form of Notice and find that the notice program set forth herein constitutes the best notice practicable under the circumstances, and satisfies due process and Rule 23 of the Federal Rules of Civil Procedure;

D.    the Court set the date and time for the Final Approval Hearing, which may be continued by the Court from time to time without the necessity of further notice; and,

E.      the Court set the Claims Deadline, the Objection Deadline and the Opt-Out Deadline.

## ADMINISTRATION AND NOTIFICATION PROCESS

8.01.   <u>Third-Party Claims Administrator</u>.  The Claims Administrator, The ILYM Group, shall be responsible for all matters relating to the administration of this settlement, as set forth herein.   Those responsibilities include, but are not limited to, giving notice, obtaining new addresses for returned mail, setting up and maintaining the settlement website and toll-free telephone number, fielding inquiries about the settlement, processing claims, acting as a liaison between Class Members and the Parties regarding claims information, approving claims, rejecting any claim form where there is evidence of fraud, directing the mailing of settlement payments to Settlement Class Members, and any other tasks reasonably required to effectuate the foregoing.   The Claims Administrator will provide monthly updates on the claims status to counsel for all Parties.

8.02.   <u>Notice Database.</u>  To facilitate the notice and claims administration process, Wells Fargo will provide to the Claims Administrator and to Class Counsel, in an electronically searchable and readable format, a Notice Database which includes the names, last known mailing addresses, account numbers and cellular telephone numbers called for all known Class Members, as such information is contained in the reasonably available computerized account records Wells Fargo maintains for the Residential Mortgage Loans and Auto Accounts it services.  Wells Fargo will provide the Notice Database to the Claims Administrator and to Class Counsel no later than five (5) days after the date of the Preliminary Approval Order.  Defendants represent for settlement purposes that the estimated size of the class is as follows:  Subclass One includes approximately 3,110,892 cellular telephone numbers dialed, which corresponds to approximately 2,955,347 Residential Mortgage Loan accounts.  Subclass Two includes approximately 2,776,614 cellular telephone numbers dialed, which corresponds to approximately 1,744,870 Auto Accounts.  If any of the terms of this Settlement relating to the Claims Administrator's services would unreasonably hinder or delay such processes or make them more costly, the Claims Administrator shall so advise the Parties, and the Parties will accommodate the Claims Administrator to the extent necessary to carry out the intent of this Settlement Agreement.  Any

personal information relating to Class Members provided to the Claims Administrator or Class Counsel pursuant to this Settlement shall be provided solely for the purpose of providing notice to Class Members and allowing them to recover under this Settlement; shall be kept in strict confidence; shall not be disclosed to any third party; and, shall not be used for any other purpose.

8.03.   Payment of Notice and Claims Administration Costs.  Wells Fargo shall pay the reasonable costs of notice and settlement administration which are incurred prior to the creation of the Settlement Fund, and Wells Fargo will be given credit for any such payments in funding the Settlement Fund.  The Claims Administrator shall provide an estimate of the amount of costs required to mail notice, establish the settlement website and establish a toll-free telephone number, as well as any other initial administration costs to the Parties.  Wells Fargo shall pay the estimated amount to the Claims Administrator within 10 days after the entry of the Preliminary Approval Order.  After that upfront payment of administration costs by Wells Fargo, the Claims Administrator shall bill Wells Fargo monthly for the reasonable additional costs of settlement administration, until such time as the Settlement Fund is established.  Any amounts paid by Wells Fargo for the estimated costs of administration which are not incurred by the Claims Administrator shall be used for other administration costs, or shall be deducted from future billings by the Claims Administrator.  The Claims Administrator shall maintain detailed records of the amounts spent on the administration of the settlement and shall provide those to the Parties monthly.  At such time that Wells Fargo funds the Settlement Fund, all amounts previously paid to the Claims Administrator by Wells Fargo shall be deducted from the Maximum Payment which Wells Fargo is required to pay to create the Settlement Fund.  After Wells Fargo has created the Settlement Fund and paid out the Maximum Payment required under this Settlement, Wells Fargo shall have no further obligation to pay any amount under this Settlement, and any additional Settlement Costs shall be paid out of the Settlement Fund.

8.04.   Payment for Approved Claims and Remaining Settlement Costs.  Within five (5) business days after the Effective Date (the "Funding Date"), Wells Fargo shall provide funds to the Claims Administrator in an amount equal to the difference between what has been paid to that date and the full amount of the $17,100,000 Maximum Payment, subject to the terms of this Agreement.  The Settlement Fund shall be maintained in an interest bearing account at Wells Fargo Bank, N.A..

     8.05   <u>Distribution of the Settlement Fund.</u>   The Claims Administrator shall distribute the funds in the Settlement Fund in the following order and within the time period set forth with respect to each such payment:

      (a)    first, no later than five (5) business days after the Funding Date, the Claims Administrator shall pay taxes and tax-related expenses, if any, or, at the Claims Administrator's discretion, it shall reserve an amount of the Settlement Fund sufficient to pay taxes and tax-related expenses as described in Section 20;

      (b)    next, no later than five (5) business Days after the Funding Date, the Claims Administrator shall pay to the Class Representatives any incentive award ordered by the Court, as described in Section 6.02.;

      (c)    next, no later than five (5) Business Days after the Funding Date, the Claims Administrator shall pay to Class Counsel any award of attorneys' fees, costs, or expenses ordered by the Court, as described in Section 6.01.;

      (d)    next, no later than twenty (20) days after the Funding Date, the Claims Administrator shall be paid for any unreimbursed costs of administration;

      (e)    next, no later than thirty (30) days after the Funding Date, the Claims Administrator shall pay the Settlement Awards to Qualified Class Members pursuant to Section 10.;

      (f)    finally, on the Final Distribution Date, which is the earlier of (i) the date as of which all the checks for Settlement Awards have been cashed or (ii) 210 days after the date on which the last check for a Settlement Award was issued, the Claims Administrator shall pay any amount remaining in the Settlement Fund Account from uncashed settlement checks to one or more *cy pres* recipients which are agreed upon by the Parties and approved by the Court.

<u>**NOTICES**</u>

9.01.    <u>Mailing of Settlement Notice</u>.    The Claims Administrator shall send the Settlement Notice to each Class Member via first class mail within thirty (30) days after entry of the Preliminary Approval Order, or as soon as practicable thereafter.  The Claims Administrator shall use the Notice Database to obtain each Class Member's last known address.  If and to the extent deemed necessary by Class Counsel, the last known address of Class Members may be subject to confirmation or updating as follows:  (a) the Claims Administrator may check each address against the United States Post Office National Change of Address Database before the initial mailing; (b) the Claims Administrator may conduct a reasonable search to locate an updated address for any Class Member whose Settlement Notice is returned as undeliverable; (c) the Claims Administrator shall update addresses based on any forwarding information received from the United States Post Office; and, (d) the Claims Administrator shall update addresses based on any requests received from Class Members.

9.02.    <u>Re-Mailing of Returned Settlement Notices</u>.  Any Notices that are returned as non-deliverable with a forwarding address shall promptly be re-mailed by the Claims Administrator to such forwarding address.

9.03.    <u>Publication Notice</u>.  No later than thirty (30) days after entry of the Preliminary Approval Order, or as soon as practicable thereafter, the Claims Administrator shall cause a Publication Notice, substantially in the form attached hereto as Exhibit D, to be published once on a nationwide basis, in a national edition of USA Today on any day from Monday through Thursday, and to be published on the Settlement Website on the same date, and retained on the website thereafter.

9.04.    <u>Question and Answer Formal Notice</u>.  The Claims Administrator shall also post on the website a formal Question and Answer Notice ("Q & A Notice") which shall set forth in a question and answer format the details of the settlement, and the rights of Class Members to participate in the Settlement, exclude themselves or object to the settlement.

9.05    <u>Press Release.</u>  Plaintiff will issue a neutrally worded press release, the contents of which have been agreed to in advance by all Parties.  The purpose of the press release is to facilitate Class Members learning about the settlement through internet searches, and to provide

instructions on how they may obtain additional information about the settlement.  The press release will announce that the Action has been settled, and will include the URL for the dedicated settlement website through which Class Members can obtain relevant information.

9.06.  <u>Website Notice</u>.  By the Settlement Notice Date, the Claims Administrator shall maintain and administer a dedicated settlement website (www._____.com) containing class information and related documents, along with information necessary to file a claim, and an electronic version of the Claim Form members can download, complete and submit electronically.  At a minimum, such documents shall include the Settlement Agreement and Exhibits, the Notice, the Q & A Form Notice, the Preliminary Approval Order, a downloadable Claim Form for anyone wanting to print a hard copy and mail in the Claim Form, the operative complaint, and when filed, the Final Approval Order.

9.07.  <u>Toll Free Telephone Number</u>.  By the Settlement Notice date, the Claims Administrator shall set up a toll-free telephone number for receiving toll-free calls related to the settlement.  That telephone number shall be maintained until thirty (30) days after the Claims Deadline.  After that time, and for a period of 90 days thereafter, either a person or a recording will advise any caller to the toll-free telephone number that the Claims Deadline has passed and the details regarding the settlement may be reviewed on the related settlement website.

9.08.  <u>CAFA Notice</u>.  Wells Fargo shall be responsible for serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 within 10 days of the filing of the Preliminary Approval Motion.

## <u>CLAIMS PROCESS</u>

10.01.  <u>Potential Claimants</u>.  Each Class Member who does not timely and validly request exclusion from the Settlement as required in this Agreement shall be a Settlement Class Member and entitled to make a claim.  Each Settlement Class Member shall be entitled to make only one claim for each subclass of which he or she is a member, regardless of the number of loans or accounts that Settlement Class Member had or has with Wells Fargo, or the number of calls made to that Settlement Class member's cell phone number(s).

10.02.  <u>How to Make a Claim</u>.  In order to make a claim, a Settlement Class Member must either:  (a) submit a claim by calling the toll-free number; (b) submit a claim online at the

Settlement website; or (c) submit the completed Claim Form downloaded from the Settlement website to the Claims Administrator, by mail or otherwise. All claims must be submitted by the Claims Deadline as set forth in the Settlement Notice. Any Claim Form postmarked after the Claims Deadline shall be deemed untimely and an invalid claim.

      10.03.  <u>How a Claim is Approved</u>.  The claims process shall require only that the Settlement Class member provide his or her name, a Claim Identification number assigned to each postcard notice, if available, and, if the notice address is incorrect, a current address to which the cash payment may be sent.  If the claimant's name matches the name on the Notice Database or Class List generated from Wells Fargo's records, that claim will be approved, subject to the limitation that only one claim will be paid to each Settlement Class Member, or a maximum of two claims if the Settlement Class Member is a member of both Subclass One and Subclass Two.  However, a small number of Class Members are identified in the Notice Database and Class List only by the cell phone number called by Wells Fargo ("Unidentified Class Members"), and not by their name and / or address, and therefore likely learned of the Settlement by publication and / or internet notice.  If a claimant cannot be identified as a Class Member by their Claim Identification number, or by their name and / or address, that claimant can then be asked for the cell phone number(s) upon which they believe they may have been called during the Class Period.  If their cell phone number is on the Notice Database or Class List, even without a name and / or address, they are an Unidentified Class Member and are qualified to file a claim. If a Settlement Class Member submits a claim and qualifies for a monetary payment, her or she is a "Qualified Class Member".  Except as necessary to resolve issues related to denied settlement claims pursuant to Section 9.5, or to evaluate requests for exclusion and/or respond to objections, the Claims Administrator shall not provide to Defendants, their counsel or any of their agents any identifying information obtained from the Class Members for purposes of facilitating the Class Notice, Settlement Awards or claims administration, other than the names of persons submitting Settlement Claims.

<b><u>CLAIM REVIEW PROCESS</u></b>

      11.01.  <u>Review of Approved or Denied Claims</u>.  Each Settlement Class member who does not exclude himself or herself from the class and who makes a timely claim shall have their

claim reviewed by the Claims Administrator.  The Claims Administrator shall review the claims and advise the Parties, at a minimum, on a monthly basis of the claims that are approved and denied.  Class Counsel shall be entitled to contest the denial of any claims, first through meeting with the Claims Administrator, and if they are unable to resolve such issues, they may seek assistance of the Court to resolve the issues at the earliest possible date, and to attempt to have a resolution before any fairness hearing.  However, if those issues are unresolved at the time of the fairness hearing, that will not prevent the fairness hearing from going forward, with the issues to be resolved at a later date but within sixty (60) days of the entry of any order regarding the fairness hearing, including any order for final approval of the settlement.

11.02.  <u>Mailing of Settlement Check</u>.  Settlement checks shall be sent to Qualified Class Members by the Claims Administrator via U.S. mail no later than thirty (30) days after the Effective Date.  If any settlement checks are returned, the Claims Administrator shall attempt to obtain a new mailing address for that Settlement Class Member by taking the steps described in Sections 9.01.  If, after a second mailing, the settlement check is again returned, no further efforts need be taken by the Claims Administrator to resend the check.  The Claims Administrator shall advise Class Counsel and counsel for Defendants of the names of the claimants whose checks are returned by the postal service as soon as practicable.  Each settlement check will be negotiable for one hundred eighty (180) days after it is issued.  Any funds not paid out as the result of uncashed settlement checks shall be paid out as a *cy pres* award, to a recipient agreed to by the Parties and approved by the Court, as set forth in Section 8.05 (f).

## <u>OPT-OUTS AND OBJECTIONS</u>

12.01.  <u>Opting Out of the Settlement</u>.  Any Class Members who wish to exclude themselves from the Settlement Class ("opt out") must advise the Claims Administrator in writing of that intent, and their opt out request must be postmarked no later than the Opt-Out Deadline. The Claims Administrator shall provide the Parties with copies of all opt-out requests it receives, and shall provide a list of all Class Member who timely and validly opted out of the settlement in their declaration filed with the Court, as required by Section 13.01.  Settlement Class Members who do not properly and timely submit an opt-out request will be bound by this Agreement and the judgment, including the releases in Section 16 below.  If more than 4,000

Class Members opt-out, Defendants have the option of voiding this Settlement and proceeding with the litigation, as provided in Sections 17.02 and 17.03 below.

        A.     In the written request for exclusion, the Class Member must state his or her full name, address, and telephone number.  Further, the Class Member must include a statement in the written request for exclusion that he or she wishes to be excluded from the settlement.

        B.     Any Class Member who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement.

    12.02.  <u>Objections</u>.  Any Settlement Class Member who intends to object to the fairness of this settlement must file a written objection with the Court and provide a copy to Class Counsel and counsel for Defendants by the Objection Deadline.

        A.     In the written objection, the Settlement Class Member must state his or her full name, address, and telephone number, the reasons for his or her objection, and whether he or she intends to appear at the fairness hearing on his or her own behalf or through counsel.  Any documents supporting the objection must also be attached to the Objection.

        B.     Any Settlement Class Member who objects may appear at the Fairness Hearing, either in person or through an attorney hired at the Settlement Class Member's own expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the Settlement.  A Settlement Class Member or his or her attorney intending to make an appearance at the Fairness Hearing must:  (a) file a notice of appearance with the Court no later than ten (10) days prior to the Fairness Hearing, or as the Court may otherwise direct; and (b) serve a copy of such notice of appearance on all counsel for all Parties.  Any Settlement Class Member who fails to comply with the provisions of this Section 12.02 shall waive and forfeit any and all rights to appear separately and/or to object, and shall be bound by all the terms of this Settlement, and by all proceedings, orders, and judgments in the litigation.

## <u>FINAL APPROVAL AND JUDGMENT ORDER</u>

    13.01.  No later than fourteen (14) calendar days prior to the Final Approval Hearing, the Claims Administrator shall file with the Court and serve on counsel for all Parties a declaration

stating that the Notice required by the Agreement has been completed in accordance with the terms of the Preliminary Approval Order.

13.02.  If the Settlement is approved preliminarily by the Court, and all other conditions precedent to the settlement have been satisfied, no later than fourteen (14) calendar days prior to Final Approval Hearing:

A.      The Parties shall both request, individually or collectively, that the Court enter the Final Approval Order in substantially the form attached as Exhibit F, with Class Counsel filing a memorandum of points and authorities in support of the motion; and,

B.      Counsel for the Class and Defendants may file a memorandum addressing any objections submitted to the Settlement.

13.03.  At the Final Approval Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable and adequate, whether any objections to the Settlement should be overruled, whether the fee award and incentive payments to the Class Representatives should be approved, and whether a judgment finally approving the Settlement should be entered.

13.04.  This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order which grants final approval of this Agreement and:

A.      finds that the Notice provided satisfies the requirements of due process and Fed. R. Civ. P. 23(e)(1);

B.      finds that Settlement Class Members have been adequately represented by the Class Representatives and Class Counsel;

C.      finds that the Settlement Agreement is fair, reasonable and adequate to the Settlement Class, that each Settlement Class Member shall be bound by this Agreement, including the releases in 16.01 and 16.04, and the covenant not to sue in Section 16.02, and that this Settlement Agreement should be and is approved;

D.      dismisses on the merits and with prejudice all claims of the Settlement Class Members asserted against Defendants in the *Malta* Action and *Allen* Action;

E.      permanently enjoins each and every Settlement Class Member from bringing, joining, or continuing to prosecute any Released Claims against Defendants or the Released Parties; and,

F.      retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Settlement.

## FINAL JUDGMENT

14.01      The Judgment entered at the Final Approval Hearing shall be deemed final:

A.      Thirty (30) days after entry of the Final Judgment approving the Settlement if no document is filed within that time seeking appeal, review or rehearing of the judgment; or

B.      If any such document is filed, then five (5) days after the date upon which all appellate and/or other proceedings resulting from such document have been finally terminated in such a manner as to permit the judgment to take effect in substantially the form described in Section 13.04.

## CONFIRMATORY DISCOVERY

15.01. Class Counsel shall be entitled to conduct limited discovery to confirm the accuracy of the information provided to them during the course of the litigation and the Parties' settlement negotiations.  The purpose of that discovery shall be to confirm a) the total number of Class Members, *i.e.*, those persons who were actually called by Defendants or their agents on cellular telephone numbers during the Class Period in connection with Wells Fargo's servicing of Residential Mortgage Loans and Auto Accounts, and the process used to determine that number; and, b) discovery regarding changes to Wells Fargo's servicing functions implemented during the Class Period for the purpose of memorializing borrowers' express consent to be called on their cellular phones, as described in Section 5.04. This discovery is to be used solely for purposes of finalizing this Settlement and, consistent with Section 17.03 below, may not be used for any purpose in the event this Agreement is terminated or is otherwise not fully and finally approved by the Court.

## RELEASE OF CLAIMS

16.01.  Released Claims.  Plaintiffs and each Settlement Class Member, as well as their respective assigns, heirs, executors, administrators, successors and agents, hereby release,

resolve, relinquish and discharge each and all of the Released Parties from each of the Released Claims (as defined below).  The Settlement Class Members further agree that they will not institute any action or cause of action (in law, in equity or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal or local government agency or with any administrative or advisory body, arising from or reasonably related to the Released Claims.  The release does not apply to Class Members who timely opt-out of the Settlement.

      A.    "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that arise out of or relate in any way to the Released Parties' use of an "automatic telephone dialing system" or an "artificial or prerecorded voice" to contact or attempt to contact Settlement Class Members in connection with Wells Fargo's servicing of any Residential Mortgage Loans and Auto Accounts, including the claims of Wells Fargo account holders and non-account holders who are members of the Settlement Class, to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, relevant regulatory or administrative promulgations and case law, including, but not limited to, claims under or for a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, and any other statutory or common law claim arising from the use of automatic telephone dialing systems and/or an artificial or prerecorded voice to call cellular telephones, or pagers.

      B.    <u>Waiver of Unknown Claims</u>.  Without limiting the foregoing, the Released Claims specifically extend to claims that Plaintiffs and Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement and the releases contained therein become effective.  This Section constitutes a waiver, without limitation as to any other applicable law, of Section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs and Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and similar federal and state statutes, case law, rules or regulations relating to limitations on releases.  In connection with such waivers and relinquishment, Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts that they now know or believe to be true with respect to the subject matter of the Settlement, but that it is their intention to release fully, finally and forever all Released Claims with respect to the Released Parties, and in furtherance of such intention, the releases of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

16.03.  <u>Covenant Not To Sue</u>.  Plaintiffs agree and covenant, and each Settlement Class member will be deemed to have agreed and covenanted, not to sue any Released Party with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.

## <u>TERMINATION OF AGREEMENT</u>

17.01.  <u>Either Side May Terminate the Agreement</u>.  Plaintiffs and Defendants shall each have the right to unilaterally terminate this Agreement by providing written notice of his, their or its election to do so ("Termination Notice") to all other Parties hereto within ten (10) calendar days of any of the following occurrences:

a.    the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement Agreement;

b.    an appellate court reverses the Final Approval Order, and the Settlement Agreement is not reinstated without material change by the Court on remand;

c.    any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement

Agreement in a way that Plaintiffs or Defendants reasonably consider material, unless such modification or amendment is accepted in writing by all Parties;

        d.      the Effective Date does not occur; or

        e.      any other ground for termination provided for elsewhere in this Agreement occurs.

17.02.  <u>Termination if Large Number of Opt–Outs</u>.  If, at the conclusion of Opt-Out Deadline, more than 4,000 Settlement Class Members have opted-out of the Settlement, the Defendants shall have, in their sole and absolute discretion, the option to terminate this Agreement within ten (10) calendar days after the Opt-Out Deadline.

17.03.  <u>Revert to Status Quo</u>. If either Plaintiffs or Defendants terminate this Agreement as provided herein, the Agreement shall be of no force and effect and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if this Agreement had never been executed, and any orders entered by the Court in connection with this Agreement shall be vacated.  However, any payments made to the Claims Administrator for services rendered to the date of termination shall not be refunded to Wells Fargo.

## <u>NO ADMISSION OF LIABILITY</u>

18.01.  Wells Fargo and Freddie Mac deny any liability or wrongdoing of any kind associated with the alleged claims in the operative complaints.  Defendants have denied and continue to deny each and every material factual allegation and all claims asserted against them in the *Malta* Action and the *Allen* Action.  Nothing herein shall constitute an admission by Wells Fargo or Freddie Mac of wrongdoing or liability, or of the truth of any allegations in the *Malta* Action or *Allen* Action.  Nothing herein shall constitute an admission by Defendants that either the *Malta* Action or the *Allen* Action are properly brought on a class or representative basis, or that classes may be certified in those actions, other than for settlement purposes.  To this end, the settlement of the Action, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement:  (i) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Wells Fargo or Freddie Mac or of the truth of any of the allegations in the *Malta* Action or *Allen* Action ; (ii) are not and shall not be deemed to be, and may not be used as,

an admission or evidence of any fault or omission on the part of Wells Fargo or Freddie Mac in any civil, criminal or administrative proceeding in any court, arbitration forum, administrative agency or other tribunal; and, (iii) are not and shall not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims for class certification.

18.02.  Pursuant to Federal Rules of Evidence Rule 408 and California Evidence Code Sections 1119 and 1152, and any similar provisions under the laws of other states, neither this Agreement nor any related documents filed or created in connection with this Agreement shall be admissible in evidence in any proceeding, except as necessary to approve, interpret or enforce this Agreement.

## TAXES

19.01.  <u>Qualified Settlement Fund</u>. The Parties agree that the account into which the Settlement Fund is deposited is intended to be and will at all times constitute a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B 1.  The Claims Administrator shall timely make such elections as necessary or advisable to carry out the provisions of Section 13, including, if necessary, the "relation back election" (as defined in Treas. Reg. §1.468B 1(j)(2)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under §1.468B of the Internal Revenue Code of 1986, as amended (the "Code").  It shall be the responsibility of the Claims Administrator to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

19.02.  <u>Claims Administrator is "Administrator"</u>. For the purpose of §1.468B of the Code and the Treasury regulations thereunder, the Claims Administrator shall be designated as the "administrator" of the Settlement Fund.  The Claims Administrator shall cause to be timely and properly filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B 2(k)). Such returns (as well as the election described in Section 13.1) shall be consistent with Section 13.3 and in all events shall reflect that all Taxes (including any estimated taxes, interest

or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Section 13.3

19.03.   Taxes Paid by Administrator. All taxes arising in connection with income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Wells Fargo or any of the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes shall be paid by the Claims Administrator from the Settlement Fund in accordance with Section 8.7.1(b).

19.04.   Expenses Paid from Fund. Any expenses reasonably incurred by the Claims Administrator in carrying out the duties described in Section 20, including fees of tax attorneys and/or accountants, shall be paid by the Claims Administrator from the Settlement Fund in accordance with Section 8.7.1(b).

19.05.   Responsibility for Taxes on Distribution. Any person or entity that receives a distribution from the Settlement Fund pursuant to Section 8.7.1 (except for a distribution of taxes pursuant to Sections 8.7.1(b) or 13.3) shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution.  Such taxes and tax-related expenses shall not be paid from the Settlement Fund.

19.06.   Defendants Are Not Responsible. In no event shall Wells Fargo, Freddie Mac or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund to Plaintiffs, Class Members, Class Counsel or any other person or entity, and the Settlement Fund shall indemnify and hold Wells Fargo and the other Released Parties harmless for all such taxes and tax-related expenses (including, without limitation, taxes and tax-related expenses payable by reason of any such indemnification).

## MISCELLANEOUS

20.01.  Entire Agreement.  This Agreement and the exhibits hereto constitute the entire agreement between the Parties.  No representations, warranties or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Agreement.

20.02.  <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of California.

20.03.  <u>Non-Waiver Of Debts/Obligations Owing By Class Members</u>.  The Parties understand and agree that this Settlement Agreement and any terms herein shall not affect in any regard any debt or obligation owed by any Plaintiff or Settlement Class Member to Defendants and/or their clients, principals and their related or affiliated entities.  This Settlement Agreement does not operate to waive, extinguish, terminate, reduce or affect any debt or obligation owed by Plaintiffs or Class Members, and shall not impair or limit any right or cause of action or right to enforce or otherwise collect any underlying debt or amount owed to Defendants and their clients, principals and their related or affiliated entities.

20.03.  <u>Jurisdiction</u>.  The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including the Plaintiff and all Settlement Class members, for purposes of the administration and enforcement of this Agreement.

20.04.  <u>No Construction Against Drafter</u>.  This Agreement was drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any Party based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by that Party.

20.05.  <u>Resolution of Disputes</u>.  The Parties shall cooperate in good faith in the administration of this Settlement.  Any unresolved dispute regarding the administration of this Agreement shall be decided by the Court, or by a mediator upon agreement of the Parties.

20.06.  <u>Counterparts</u>.  This Agreement may be signed in counterparts and the separate signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

20.07.  <u>Time Periods</u>.  The time periods and dates described herein are subject to Court approval and may be modified upon order of the Court or written stipulation of the Parties.

20.08.  <u>Authority</u>.  Each person executing this Settlement Agreement on behalf of any of the Parties hereto represents that such person has the authority to so execute this Agreement.

20.09.  <u>No Oral Modifications</u>.  This Agreement may not be amended, modified, altered or otherwise changed in any manner, except by a writing signed by a duly authorized agent of Defendants and Plaintiffs, and approved by the Court.

20.10.  <u>Press Releases</u>.  The Parties and their counsel agree they will not issue any press releases concerning this Settlement Agreement or the resolution of the *Malta* Action or the *Allen* Action.

20.11.  <u>Notices</u>.   Unless otherwise stated herein, any notice required or provided for under this Agreement shall be in writing and may be sent by electronic mail, fax or hand delivery, postage prepaid, as follows:

<u>If to Class Counsel</u>:

        Joshua B. Swigart, Esq.
        Hyde & Swigart
        411 Camino Del Rio South, Suite 301
        San Diego, CA  92108
        Telephone:  (619) 233-7770
        josh@westcoastlitigation.com

        Douglas J. Campion, Esq.
        Law Offices of Douglas J. Campion
        409 Camino Del Rio South, Suite 303
        San Diego, CA 92108
        Telephone:  (619) 299-2091
        doug@djcampion.com

        Abbas Kazerounian, Esq.
        The Kazerouni Law Group, APC
        2700 North Main Street, Ste. 1050
        Santa Ana, CA 92866
        Telephone:  (800) 400-6808
        ak@kazlg.com

<u>If to counsel for Settling Defendants</u>:

        Mark D. Lonergan, Esq.
        Severson & Werson, P.C.
        One Embarcadero Center
        Suite 2600
        San Francisco, CA 94111
        Telephone: 415-398-3344

        Eric J. Troutman, Esq.
        Severson & Werson, P.C.

19100 Von Karman Ave.
Suite 700
Irvine, CA 92612
Telephone: 949-442-7110


IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed this _____ day of June, 2012.

Defendant Wells Fargo Bank, N.A.

_____  
Alberto Malta, Plaintiff and Class Representative

By: _____  
    Its Authorized Representative

[Name] _____


Defendant Federal Home Loan Mortgage Corporation a/k/a "Freddie Mac"

By: _____  
    Its Authorized Representative

_____  
Danny Allen, Jr., Plaintiff and Class Representative

[Name] _____

19100 Von Karman Ave.
Suite 700
Irvine, CA 92612
Telephone: 949-442-7110

IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have
caused this Agreement to be executed this _12_ day of June, 2012.

Defendant Wells Fargo Bank, N.A.

_____
Alberto Malta, Plaintiff and Class
Representative

By: _____
    Its Authorized Representative

[Name] _____

Defendant Federal Home Loan Mortgage
Corporation a/k/a "Freddie Mac"

By: _____
    Its Authorized Representative

_____
Danny Allen, Jr., Plaintiff and Class
Representative

[Name] _____

19100 Von Karman Ave.
Suite 700
Irvine, CA 92612
Telephone: 949-442-7110

IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have
caused this Agreement to be executed this _____ day of June, 2012.

Defendant Wells Fargo Bank, N.A.

_____          By: _____
Alberto Malta, Plaintiff and Class          Its Authorized Representative
Representative

[Name] _____

Defendant Federal Home Loan Mortgage
Corporation a/k/a "Freddie Mac"

By: _____
_____              Its Authorized Representative
Danny Allen, Jr., Plaintiff and Class
Representative                            [Name] _____

19100 Von Karman Ave.
Suite 700
Irvine, CA 92612
Telephone: 949-442-7110


IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed this _____ day of June, 2012.

Defendant Wells Fargo Bank, N.A.

_____
Alberto Malta, Plaintiff and Class Representative

By: _____
   Its Authorized Representative

[Name] _____

Defendant Federal Home Loan Mortgage Corporation a/k/a "Freddie Mac"

By _____
   Its Authorized Representative

_____
Danny Allen, Jr., Plaintiff and Class Representative

[Name] _____
   Tiffany C. Joseph
   Associate General Counsel

07685.0715/2228839.1                    28

19100 Von Karman Ave.
Suite 700
Irvine, CA 92612
Telephone: 949-442-7110


IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed this 14ᵗʰ day of June, 2012.

Defendant Wells Fargo Bank, N.A.

By: _____

_____
Alberto Malta, Plaintiff and Class
Representative

Its Authorized Representative

[Name] _Shannon Grausman_


Defendant Federal Home Loan Mortgage
Corporation a/k/a "Freddie Mac"

By: _____

_____
Danny Allen, Jr., Plaintiff and Class
Representative

Its Authorized Representative

[Name] _____


07685.0715/2228839.1                      28

APPROVED AS TO FORM:


_____
Douglas J. Campion, Esq.
Law Offices of Douglas J. Campion
409 Camino Del Rio South, Suite 303
San Diego, CA  92108
Telephone:     (619) 299-2091


_____
Joshua B. Swigart, Esq.
Hyde & Swigart
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone:     (619) 233-7770


_____
Abbas Kazerounian, Esq.
The Kazerouni Law Group, APC
2700 North Main Street, Ste. 1050
Santa Ana, CA 92866
Telephone: (800) 400-6808

Class Counsel

Attorneys for Plaintiffs Alberto Malta and
Danny Allen, Jr. and the Settlement Class

_____
Eric J. Troutman
Severson & Werson
One Embarcadero Center
Suite 2600
San Francisco, CA 94111


For Wells Fargo Bank, N.A., sued herein as
Wells Fargo Home Mortgage, Inc. and
Wells Fargo Auto Finance, Inc., and Federal
Home Loan Mortgage Association

APPROVED AS TO FORM:

Douglas J. Campion, Esq.
Law Offices of Douglas J. Campion
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone:    (619) 299-2091


Joshua B. Swigart, Esq.
Hyde & Swigart
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone:    (619) 233-7770


Abbas Kazerounian, Esq.
The Kazerouni Law Group, APC
2700 North Main Street, Ste. 1050
Santa Ana, CA 92866
Telephone: (800) 400-6808

Class Counsel

Attorneys for Plaintiffs Alberto Malta and
Danny Allen, Jr. and the Settlement Class

Eric J. Troutman
Severson & Werson
One Embarcadero Center
Suite 2600
San Francisco, CA 94111

For Wells Fargo Bank, N.A., sued herein as
Wells Fargo Home Mortgage, Inc. and
Wells Fargo Auto Finance, Inc., and Federal
Home Loan Mortgage Association

07685.0715/2228839.1

29

APPROVED AS TO FORM:


_____
Douglas J. Campion, Esq.
Law Offices of Douglas J. Campion
409 Camino Del Rio South, Suite 303
San Diego, CA  92108
Telephone:     (619) 299-2091


_____
Joshua B. Swigart, Esq.
Hyde & Swigart
411 Camino Del Rio South, Suite 301
San Diego, CA  92108
Telephone:     (619) 233-7770



_____
Abbas Kazerounian, Esq.
The Kazerouni Law Group, APC
2700 North Main Street, Ste. 1050
Santa Ana, CA 92866
Telephone: (800) 400-6808

Class Counsel

Attorneys for Plaintiffs Alberto Malta and
Danny Allen, Jr. and the Settlement Class

_____
Eric J. Troutman
Severson & Werson
One Embarcadero  Center
Suite 2600
San Francisco, CA 94111

For Wells Fargo Bank, N.A., sued herein as
Wells  Fargo  Home  Mortgage,  Inc.  and
Wells Fargo Auto Finance, Inc., and Federal
Home Loan Mortgage Association

07685.0715/2228839.1                                    29