FILED

2013 FEB -5 PM 1:52

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: OTA  DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO MALTA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE FEDERAL HOME LOAN MORTGAGE CORPORATION a/k/a FREDDIE MAC; WELLS FARGO HOME MORTGAGE,<br><br>Defendants. | CASE NO. 10-CV-1290 BEN (NLS)<br><br>ORDER GRANTING UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS<br><br>[Docket No. 38] |

From June 16, 2006 to November 16, 2011, Defendant Wells Fargo provided account servicing, collection, and related services for its home mortgages and auto loans. In addition, Wells Fargo provided account servicing for Freddie Mac relating to certain home mortgages. Plaintiffs[1] allege that Wells Fargo violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq.* by calling the cellular telephones of account-holders without "prior express consent," using an "automatic telephone dialing system," and/or using an "artificial or prerecorded voice" in its collection

---

[1] The proposed settlement settles both the present action and *Allen v. Wells Fargo Auto Finance, Inc.*, Case No. 10-CV-02657-W-JMA (S.D. Cal.), as Danny Allen's counsel agreed to settle the *Allen* action by including it in the *Malta* settlement. (Settl. Agr. § 1.02.) The *Allen* action included essentially the same allegations on behalf of a proposed class during the same time periods as the *Malta* action.

efforts.

Plaintiffs initiated this action on June 16, 2010. The Complaint alleges: (1) negligent violation of the TCPA; and (2) knowing and/or willful violation of the TCPA. Plaintiffs' claims were brought on behalf of a class of individuals who received calls on their cellular telephones from Wells Fargo's division that services home mortgages that utilized automatic telephone dialing systems and/or artificial or prerecorded voice technology during the class period. Plaintiffs sought $500 per negligent violation and $1500 per willful violation, as well as injunctive relief.

Presently before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class. (Docket No. 38.) Defendants do not oppose this Motion. (Docket No. 42.)

## DISCUSSION

Once parties reach a settlement agreement prior to class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The court must (1) assess whether a class exists, and (2) determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Id.* (internal quotation marks omitted). Here, the Court will first examine the propriety of class certification, then the fairness of the settlement agreement, followed by the questions of class counsel and class notice.

### I. CLASS CERTIFICATION

A plaintiff seeking a Rule 23(b)(3) class certification must: (1) satisfy the prerequisites of Rule 23(a); and (2) satisfy the requirements of Rule 23(b)(3). Here, the parties seek provisional certification for settlement purposes only of the following two classes: (1) "Subclass One": "all subscribers to wireless telephone numbers whose numbers were dialed by Wells Fargo in connection with its servicing of a Residential Mortgage Loan, including borrowers and co-borrowers on such loans, and including third parties called in connection with the servicing of such loans, where such calls were placed through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period June 16, 2006 to November 16, 2011"; and (2) "Subclass Two": "all subscribers to wireless telephone numbers whose numbers were dialed by Wells Fargo in connection with its

servicing of Auto Loan accounts, including borrowers and co-borrowers on such accounts, and including third parties called in connection with the servicing of such accounts, where such calls were placed through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period December 23, 2006 to November 16, 2011." (Settl. Agr. § 2.09.)

### A.  Rule 23(a) Requirements

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FED. R. CIV. P. 23(a); *see also Staton*, 327 F.3d at 953. The Court will examine each prerequisite in turn.

#### 1.  Numerosity

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). In the present case, there are 3,110,892 class members in Subclass One and 2,776,614 class members in Subclass Two, for a total of 5,887,508 class members. (Settl. Agr. § 8.02; Swigart Decl. ¶¶ 8, 15; Campion Decl. ¶¶ 11, 18; Hansen Decl. ¶ 10[2].) They are too numerous to be joined as plaintiffs in this action. Accordingly, the numerosity requirement is met.

#### 2.  Commonality

The commonality requirement is met if "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement is construed "permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Not all questions of law and fact need to be common, but rather "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* In addition, commonality requires that class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Here, the proposed class members' claims stem from the same factual circumstances, in that the calls were made by Wells Fargo to class members between June 16, 2006 and November 16, 2011 for Subclass One members and between December 23, 2006 and November 16, 2011 for Subclass Two

---

[2] Hansen found 2,842,867 in Subclass One and 2,451,060 in Subclass Two in lists he was provided in confirmatory discovery. (Hansen Decl. ¶ 10.)

members using auto-dialing equipment or with a prerecorded voice message. There are also several common questions of law, including: (1) whether Wells Fargo negligently violated the TCPA; (2) whether Wells Fargo willfully or knowingly violated the TCPA; and (3) whether Wells Fargo had "prior express consent" for the calls. Accordingly, the commonality requirement is met.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The Ninth Circuit interprets typicality permissively. *Hanlon*, 150 F.3d at 1020. The representative claims are "typical" if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Id.*; *see also Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). The named plaintiffs must be members of the class they seek to represent and they must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks omitted). It is sufficient for the plaintiff's claims to "arise from the same remedial and legal theories" as the class claims. *Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994).

Here, Plaintiffs' claims arise from the same factual basis as that of the class: calls made to Plaintiffs using auto-dialing equipment. Both of the class representatives claim that they were contacted by Wells Fargo on their cellular telephone via an automatic telephone dialing system that used an artificial or prerecorded voice. In addition, plaintiffs' claims are based on the same legal theory as that applicable to the class: that the calls violated the TCPA. *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Accordingly, the typicality requirement is met.

### 4. Adequacy of Representation

Representative parties must be able to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Representation is adequate if the plaintiffs: (1) "do not have conflicts of interest with the proposed class" and (2) are "represented by qualified and competent counsel." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007). At the heart of this requirement is the "concern over settlement allocation decisions." *Hanlon*, 150 F.3d at 1020.

Plaintiffs and class counsel have no conflicts of interest with other class members. For the purposes of settlement, Plaintiffs' claims are typical of those of other class members. (*See* Malta Decl. ¶¶ 6-7; Allen Decl. ¶¶ 6-7; Campion Decl. ¶¶ 32-33; Swigart Decl. ¶¶ 35-37; Kazerounian Decl. ¶¶ 37-38.) Plaintiffs and the class members share the common goal of protecting and improving consumer and privacy rights. Plaintiffs and class counsel have been prosecuting this action vigorously on behalf of the class. (Swigart Decl. ¶¶ 4-7.)

In addition, class counsel have experience prosecuting class actions relating to privacy and consumer rights, including TCPA actions. Joshua B. Swigart was admitted to the State Bar of California in 2003 and is a founding partner at Hyde & Swigart. (Swigart Decl. ¶ 27.) Swigart practices exclusively in the area of consumer rights litigation, primarily in the area of fair debt collections, defense of debt collection lawsuits, and class action litigation under the TCPA. (*Id.* ¶ 28.) Douglas J. Campion was admitted to the State Bar of California in 1977. (Campion Decl. ¶ 26.) He has experience in business litigation as well as class and derivative litigation. (*Id.*) Campion is currently a principal in the Law Offices of Douglas J. Campion, and handles many class actions and Business & Professions Code representative actions, most of which are consumer-related cases. (*Id.* ¶ 27.) Abbas S. Kazerounian was admitted to the State Bar of California in 2007. (Kazerounian Decl. ¶ 27.) He is a founding partner of Kazerounian Law Group, APC. (*Id.*) Kazerounian has been appointed class counsel in several class actions brought under the TCPA. (*Id.* ¶ 28.) In addition, he has experience in commercial litigation and large-scale products liability litigation. (*Id.* ¶ 29.) Class counsel are qualified to conduct this litigation.

For the reasons stated above, Plaintiffs have satisfied the prerequisites of Rule 23(a).

**B.     Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" ("predominance"); and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority").

///

///

### 1. Predominance

The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted). This analysis requires that common questions of law and fact "present a significant aspect of the case and [that] they can be resolved for all members of the class in a single adjudication." *Id.* (internal quotation marks omitted). The relevant inquiry is whether issues "subject to generalized proof predominate over those issues that are subject only to individualized proof." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 634 (S.D. Cal. 2010) (internal quotation marks and alteration omitted).

Here, Plaintiffs' claims present common questions of law and fact, as explained above. The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met.

### 2. Superiority

The superiority requirement focuses on the determination of "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. The class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Here, considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits. In addition, because of the small individual claims of class members, it is unlikely that individual actions will be filed. If each of the potential 5,887,508 eligible claimants filed claims, they would receive approximately $2 each. (Pl. Suppl. Br. at 5.) If 1 to 5% of the eligible claimants filed claims,[3] they would receive between $42.76 and $213.80 each. (*Id.* at 6.) Accordingly, the superiority requirement is met.

For the foregoing reasons, Plaintiffs have satisfied the requirements of Rule 23(b)(3). The Court **GRANTS** preliminary certification of both classes for the purposes of the proposed settlement. The Court, however, may review this finding at the Final Approval Hearing.

---

[3] According to Plaintiff, "based upon historical data and experience, it is unlikely more than 10% of the potential claimants will file claims, and it is more likely that 5% or less will participate, based upon TCPA / consumer class actions claims experience." (Pl. Suppl. Br. at 5-6.)

## II. THE SETTLEMENT

Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 959 (internal quotation marks omitted). In making this determination, a court may consider: (1) the strength of the plaintiff's case; (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed, and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members to the proposed settlement." *See id.* (internal quotation marks omitted). Moreover, the settlement may not be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Because some of these factors cannot be fully assessed until the Court conducts the Final Approval Hearing, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks omitted). At the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. *Id.* at 666.

### A. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Throughout the Trial

Both sides recognize that there are risks to continuing litigation of this action. Class counsel understand that there are uncertainties associated with complex class action litigation. There is a risk that a contested certification motion would not be granted. Wells Fargo contends that the requirement of "generalized proof" of the absence of consent cannot be met because "consent" cannot be ascertained without an individual inquiry into each class member's account and the circumstances surrounding each call or contact. *See Gene & Gene LLC v. Biopay, LLC*, 541 F.3d 318, 327-29 (5th Cir. 2008). In addition, Wells Fargo has a strong express consent defense because a random sampling of class member account records shows that express consent was given in a large number of instances.

Moreover, the law interpreting the TCPA and its consent requirement has been under flux, making it difficult for class members to prove lack of consent on a class-wide basis.

On the other hand, Wells Fargo also understands the risks of litigation. Even if only a small percentage of class members recovers damages, a large damage award would result. Further litigation would be very expensive. Wells Fargo has expended over 1,000 man-hours in its effort to conduct a sampling of accounts in connection with the mediation, as well as almost 1,000 hours in attempting to ascertain the names and addresses of class members. (Troutman Decl. ¶ 4.)

Taken together, the costs, risks to both sides, and delays of continued litigation weigh in favor of preliminary approval of the proposed settlement.

### B. The Extent of Discovery and the Stage of the Proceedings

In regards to class action settlements, "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal quotation marks omitted).

Here, the parties appear to have engaged in substantial discovery. In addition to participating in formal discovery (including exchanging requests for admissions, interrogatories, and document requests), the parties engaged in the exchange of informal discovery between class counsels' consultants and Wells Fargo's IT professionals. (Troutman Decl. ¶ 7.)

As part of mediating this case, the parties sampled Wells Fargo's records in order to gauge the potential exposure and strength of Wells Fargo's consent defenses. (*Id.* ¶ 8.) A random group of class members was selected by class counsel and submitted to Wells Fargo. (*Id.*) Wells Fargo accessed the records for the selected sample to determine whether and to what extent consent to dial the number could be established from the available written records. (*Id.*) Class counsel then verified the records demonstrating consent. (*Id.*)

In addition, class counsel engaged in confirmatory discovery to ensure that the method Wells Fargo used to ascertain class members was appropriate and effective. Wells Fargo's system managers prepared a declaration explaining "how the data was restored, transferred into a useable format, de-duped to create unique number sets, compared to the known cell phone lists (including ported number

lists), then run against each of Wells Fargo's systems of record by information managers in reverse-chronological order to ascertain the most recent address information for all class members." (*Id.* ¶ 10.) Class counsel's consultant then vetted the information to determine whether he agreed with Wells Fargo's methodology for identifying calls placed to cell phone numbers. (*Id.*)

Moreover, the class representatives' consultant was given direct access to Wells Fargo's IT professionals and information managers who had the most knowledge about the efforts to identify class members and compile the class lists. (*Id.* ¶ 11.)

The parties appear to have thoroughly investigated and evaluated the factual strengths and weaknesses of this case and engaged in sufficient discovery to support the settlement. Accordingly, the extent of discovery and stage of the proceedings weigh in favor of preliminary approval.

### C.   Experience of Class Counsel

Class counsel have experience prosecuting class actions relating to privacy and consumer rights, including TCPA actions, as explained above. Counsel on both sides believe that this is a fair and reasonable settlement in light of the uncertainties of certification and litigation. Accordingly, this factor weighs in favor of preliminary approval. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." (internal quotation marks omitted)).

### D.   The Amount Offered in Settlement

A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable. *Linney*, 151 F.3d at 1242. There is a "range of reasonableness" in determining whether to approve settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The adequacy of the amount recovered must be judged as "a yielding of absolutes . . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they

proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotation marks omitted). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Id.* at 628.

Here, the Complaint alleges: (1) negligent violation of the TCPA; and (2) knowing and/or willful violation of the TCPA. The TCPA provides for statutory damages of $500 for each negligent violation and $1,500 for each willful violation. The maximum exposure for Defendants, based on 5,887,506 automated calls to cellular telephones at a negligent statutory violation of $500 per telephone call, is approximately $2.9 billion.

Wells Fargo has agreed to establish a settlement fund in the amount of $17,100,000. (Settl. Agr. § 5.01.) Class counsel intends to apply to the Court for an award of attorneys' fees, costs, and expenses to be paid from the settlement fund, including: (1) attorneys' fees in the amount of $4,275,000 (*id.* § 6.01); (2) services incurred by Hansen & Levey Forensics, Inc. for information technology consulting, including payment of any costs of notice and claims administration, estimated by The ILYM Group to be at least $2,927,291 (*id.* § 8.03; Mullins Decl.); (3) costs of litigation not to exceed $45,000 (Campion Decl. ¶ 23; Swigart Decl. ¶ 22).

The class members in both Subclass One and Subclass Two will be paid a pro rata amount for their approved claims, with the amount paid for each claim dependent upon the total dollar amount of all approved claims as well as the amount of settlement costs deducted from the Settlement Fund. (Settl. Agr. §§ 5.01-5.03.) All approved claims will be awarded an equal share of the class fund. (*Id.* § 5.02.) A class member may file only one claim regardless of the number of calls received; however, if the individual belongs to both Subclass One and Two, that individual may file a claim for payment as a member of both subclasses. (*Id.* § 10.01.) As explained above, if each of the potential 5,887,508 eligible claimants filed claims, they would receive approximately $2 each. However, if only 1 to 5% of the eligible claimants filed claims, they would receive between $42.76 and $213.80 each. In addition, the class members will benefit from Wells Fargo's new procedures to ensure future compliance with the TCPA by eliminating calls made to cellular telephones unless the account-holder's servicing record is systematically coded to reflect the borrower's prior express consent to

1  receive calls on his or her cell phone. These procedures were largely developed and implemented after
2  the Malta complaint was filed in June 2010. (*See id.* § 5.04.)

3  In addition, the Settlement provides that in the event that there are uncashed settlement checks 210 days after the effective date of the Final Approval Order, those amounts remaining in the settlement account for those checks shall be provided to a cy pres recipient, to be agreed upon by the parties and approved by the Court. (*Id.* § 8.05(f).) In *Dennis v. Kellogg Co.*, __ F.3d __, 2012 WL 3800230, at *5 (9th Cir. 2012), the Ninth Circuit held that "[t]o avoid the many nascent dangers to the fairness of the distribution process, we require that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* at *5 (internal quotation marks omitted). This "'driving nexus' between the class and the *cy pres* beneficiaries . . . is more than a simple alignment of interest. 'Nexus' implies that there be an actual connection, not just between the class and the *cy pres* beneficiary, but between the *claims alleged in the case* and the *cy pres* beneficiary." *In re Groupon, Inc. Mktg. & Sales Practices Litig.*, Case No. 11-MD-2238 DMS (RBB), Docket No. 97, at 15 (S.D. Cal. Sept. 28, 2012); *see also Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). The parties are cautioned that there must be a driving nexus between the class and the *cy pres* beneficiary.

The settlement award that each class member will receive is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued litigation, as discussed above. In addition, the proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to class members at trial. *See Nat'l Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Accordingly, the Court finds the amounts offered in settlement to be adequate, at least at this stage of the proceedings. *See, e.g., Arthur v. Sallie Mae, Inc.*, No. 10-CV-00198, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) (approving a TCPA settlement of $24.15 million where 7,880,040 text messages were sent); *Gutierrez v. Barclays Grp.*, No. 10-CV-1012, Docket No. 58 (S.D. Cal. Mar. 12, 2012) (approving a TCPA settlement of $8.2 million where 66,000 text messages were sent); *Kramer v. Autobytel, Inc.*, No. 10-CV-2722, Docket No. 148 (N.D. Cal. Jan. 27, 2012) (approving a TCPA settlement of $12.2 million where over 47,000,000 text messages were sent).

### E. Collusion Between the Parties

The collusion inquiry concerns the possibility that the agreement is the result of either the negotiators' overt misconduct or improper incentives for certain class members at the expense of other members of the class. *Staton*, 327 F.3d at 960. Here, there is no evidence of overt misconduct. The Court will focus only on the aspects of the settlement that lend themselves to self-interested action.

Here, class counsel will request incentive awards in the aggregate amount of $10,000 to be distributed evenly among Malta and Allen. (Settl. Agr. § 6.02.) Malta and Allen understand the obligations of serving as class representatives, have adequately represented the interests of the putative class, and have retained experienced class counsel. (Swigart Decl. ¶¶ 27-35; Campion Decl. ¶¶ 24-31; Kazerounian Decl. ¶¶ 25-36.) The proposed class representative enhancements do not appear to be the result of collusion.

In addition, the attorneys' fees do not appear to be the result of collusion. It is permissible for plaintiffs to simultaneously negotiate the merits of the action and attorneys' fees. *Staton*, 327 F.3d at 971. Here, the settlement provides that class counsel may apply for an award of attorneys' fees equal to 25% of the Settlement Fund Maximum Payment, or $4,275,000. (Settl. Agr. § 6.01.) In addition, class counsel intends to request that their costs and expenses be paid from the Settlement Fund, which will include: (1) services incurred by Hansen & Levey Forensics, Inc. for information technology consulting, including payment of any costs of notice and claims administration estimated by The ILYM Group to be at least $2,927,291 (Settl. Agr. § 8.03; Mullins Decl.); and (2) costs of litigation not to exceed $45,000 (Campion Decl. § 23; Swigart Decl. § 22).

"[T]he choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). In addition, the "benchmark" for recovery of attorneys' fees is 25%. *Id.* at 1256-57. The Court has reservations about the substantial recovery of attorneys' fees sought by Plaintiffs' counsel. However, the Court need not decide this issue at this time. At this point, the Court merely notes that 25% recovery does not appear to be the result of collusion.

For the above reasons, the Court **GRANTS** preliminary approval of the proposed settlement.

///

### III. APPOINTING CLASS COUNSEL

The choice of counsel has traditionally been left to the parties, "whether they sue in their individual capacities or as class representatives." *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) (internal quotation marks omitted). Here, class counsel have experience prosecuting class actions relating to privacy and consumer rights, including TCPA actions, as discussed above. Accordingly, because Plaintiffs' counsel appears to be competent to represent the classes, the Court **GRANTS** Plaintiffs' motion to appoint Hyde & Swigart, the Law Offices of Douglas J. Campion, and the Kazerouni Law Group, APC as class counsel.

### IV. APPOINTING THE CLAIMS ADMINISTRATOR

The parties propose that the Court appoint The ILYM Group as the Claims Administrator. (Settl. Agr. § 8.01.) The ILYM Group specializes in providing administrative services to class action litigation and has experience in administering consumer protection and privacy class action settlements. (Mullins Decl. ¶ 1.2.) Accordingly, the Court **GRANTS** Plaintiffs' motion to appoint the ILYM Group as the claims administrator.

### V. APPROVING CLASS NOTICE

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Moreover, the class notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the proposed notice provides: (1) information on the meaning and nature of the two classes; (2) the terms and provisions of the proposed settlement; (3) the costs and fees to be paid out of the MSA; (4) the procedures and deadlines for submitting claim forms, objections, and/or requests for exclusion; and (5) the date, time, and place of the Final Approval Hearing. (*See* Swigart Decl.,

Exhs. B, C, D, E.) In addition, the method of notice, more fully set forth below, is reasonable.

## CONCLUSION

**THEREFORE IT IS HEREBY ORDERED:**

1. <u>JURISDICTION</u>: The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties hereto. All capitalized terms used herein have the meanings defined herein and/or in the Agreement.

2. <u>PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT</u>: The Court preliminarily finds that the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement and the Exhibits thereto, is in all respects fundamentally fair, reasonable, adequate and in the best interests of the Settlement Class members, taking into consideration the benefits to Settlement Class members; the strength and weaknesses of Plaintiffs' case; the complexity, expense and probable duration of further litigation; and the risk and delay inherent in possible appeals. The Court finds that notice of the Settlement should be given to persons in the Settlement Class and a full hearing should be held on approval of the Settlement.

3. <u>CAFA NOTICE</u>: In compliance with the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, and as set forth in the Agreement, Wells Fargo shall serve written notice of the proposed settlement on the U.S. Attorney General and the Attorney General of each state.

4. <u>CLASS MEMBERS</u>: Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), the Lawsuit is hereby preliminarily certified, for settlement purposes only, as a class action on behalf of the following class members:

    a. Subclass One consists of all subscribers to wireless telephone numbers whose numbers were dialed by Wells Fargo in connection with its servicing of a Residential Mortgage Loan, including borrowers and co-borrowers on such loans, and including third parties called in connection with the servicing of such loans, where such calls were placed through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period June 16, 2006 to November 16, 2011.

b. Subclass Two consists of all subscribers to wireless telephone numbers whose numbers were dialed by Wells Fargo in connection with its servicing of Auto Loan accounts, including borrowers and co-borrowers on such accounts, and including third parties called in connection with the servicing of such accounts, where such calls were placed through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period December 23, 2006 to November 16, 2011.

c. Excluded from the Class are Defendants; their parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to whom the Action is assigned; and, any member of those judges' staffs and immediate families.

5. <u>CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT</u>: For purposes of the Court considering preliminary approval, the Court appoints Plaintiffs Alberto Malta and Danny Allen, Jr. as the Class Representatives and Hyde & Swigart, The Kazerouni Law Group, APC and the Law Offices of Douglas J. Campion as Class Counsel.

6. <u>NOTICE AND CLAIMS PROCESS</u>: The Court approves the form and method of notice set forth in the Agreement. Wells Fargo shall provide the Notice Database and Class List for those Settlement Class members who can be identified from its databases to the Claims Administrator, The ILYM Group, and Class Counsel. The ILYM Group shall mail a postcard-type Notice to each known Class Member at their last known address as provided by Wells Fargo, and update those addresses for which a postcard is returned, then send a follow-up postcard to those addresses for which a more current address was obtained. The postcard and the published notice shall reference a website established for this Settlement, and that website shall contain the full details of the Settlement and permit the filing of claims on the website. The mailed and published notices shall also contain the Claims Administrator's toll free telephone number so that the Class Members can inquire about the Settlement and also make a claim over the telephone. At least ten (10) days prior to the Final Approval Hearing, the Claims Administrator shall file a declaration of compliance with the notice procedures set forth in the Agreement. The Court finds that the form and method of notice set forth

in the Agreement satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, and constitutes the best practicable procedure under the circumstances.

7. SETTLEMENT AND CLAIMS PROCESS: The Court preliminarily approves the $17,100,000.00 settlement as fair, reasonable and adequate for members of the class. The Court preliminarily approves the process set forth in the Agreement for reviewing, approving and paying claims from the Settlement Fund on a pro rata basis, after deducting Settlement Costs.

8. CLASS CERTIFICATION: The Court preliminarily finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Federal Rule of Civil Procedure 23, for purposes of settlement only.

9. EXCLUSIONS: Any Class Member who desires to be excluded from the class must send a written request for exclusion to the Claims Administrator, with a postmark date no later than ten (10) days after the last date to file claims. The Claims Administrator's address shall be provided in the notice mailed to the Class Members and also shall be posted on the website. The Claims Administrator shall provide a list of those persons requesting exclusion to Class Counsel and to Defendants' counsel after the deadline for exclusions passes, but no later than ten (10) days prior to the Final Approval Hearing. A copy of that list will be filed with the Motion for Final Approval of the Class Action Settlement.

10. To be effective, a written request for exclusion must contain the Class Member's full name and address and be signed by the Class Member. The request must also state generally that the person wishes to be excluded from the settlement.

11. Any Class Member who submits a valid and timely request for exclusion shall not be a member of the Settlement Class, and shall not be bound by the Agreement or settlement.

12. OBJECTIONS: Any Settlement Class Member who intends to object to the fairness of the Settlement must file a written objection with the Court, at United States District Court, Southern District of California, Office of the Clerk, 333 West Broadway, Suite 420, San Diego, CA 92101, no later than ten (10) days after the last date to file claims. Further, any such Settlement Class Member must, within the same time period, provide a copy of the written objection to Class Counsel

and Defense Counsel, whose addresses shall be set forth in the website's notice advising the Settlement Class Members about objections.

13. To be considered, the written objection must be signed by the Settlement Class Member and state: the Settlement Class Member's full name, address and telephone number, the reasons for the objection, and whether the objector intends to appear at the Final Approval Hearing on their own behalf or through counsel. Further, the Settlement Class Member must attach to the written objection any documents supporting the objection.

14. Any Settlement Class Member who does not file a valid and timely objection to the Settlement shall be barred from seeking review of the Settlement by appeal or otherwise.

15. <u>FINAL APPROVAL HEARING</u>: The Court shall conduct a hearing (hereinafter the "Final Approval Hearing") on June 19, 2013, at 9:00 a.m., at 221 West Broadway, Courtroom 3, San Diego, CA 92101. The Final Approval Hearing may be rescheduled or continued by the Court without further notice to the Class Members. At the hearing, the Court will consider the following issues:

    a. Whether this action satisfies the applicable prerequisites for class action treatment for settlement purposes under Federal Rule of Civil Procedure 23;

    b. Whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Settlement Class Members and should be approved by the Court;

    c. Whether the Final Judgment and Order of Dismissal With Prejudice, as provided under the Agreement, should be entered, dismissing the Lawsuit with prejudice and releasing the Released Claims against the Released Parties; and

    d. Such other issues as the Court deems appropriate.

16. Attendance at the Final Approval Hearing is not necessary. Settlement Class Members need not appear at the hearing or take any other action to indicate their approval of the proposed class action settlement. However, Settlement Class Members wishing to be heard are required to indicate in their written objection whether they intend to appear at the Final Approval Hearing.

17. If the Agreement is not finally approved for any reason, then this order shall be vacated, the Agreement shall have no force and effect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if the Agreement had never been executed and this order never entered.

18. The Court retains continuing and exclusive jurisdiction over the action to consider all further matters arising out of or connected with the settlement, including the administration and enforcement of the Agreement.

**IT IS SO ORDERED.**

Dated: 2/04/2013

THE HONORABLE ROGER T. BENITEZ
UNITED STATES DISTRICT COURT JUDGE