Michael D. Luppi
CA Bar Number: 55865
Attorney for Objector Julius Dunmore
11366 Christy Ave
Sylmar, CA 91342
(818)897-3344
girlfriwp@aol.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO MALTA, on behalf of himself and all other similarly situated<br><br>Plaintiff,<br><br>v.<br><br>THE FEDERAL HOME LOAN MORTGAGE CORPORATION a/k/a FREDDIE MAC; WELLS FARGO HOME MORTGAGE,<br><br>Defendants. | Case No.: 3:10-CV-1290 BEN (NLS)<br><br>**OBJECTIONS,**<br>**PROOF OF MEMBERSHIP IN CLASS**<br>**AND NOTICE OF INTENT TO**<br>**APPEAR, BY COUNSEL, AT THE**<br>**JUNE 19, 2013 FAIRNESS HEARING**<br><br>Date: June 19, 2013<br>Time: 9:00 a.m.<br>Place: Courtroom 3<br>Judge: Hon. Roger T. Benitez |

    Objector, Julius Dunmore (hereinafter Objector Dunmore), by and through his undersigned counsel, hereby provides information needed to demonstrate his membership in the settlement class; gives notice of his intent to appear, by counsel, at the fairness hearing before the

Honorable Roger T. Benitez, U.S. District Judge on June 19, 2013, objects to the proposed settlement; and says:

## **PROOF OF MEMBERSHIP IN THE SETTLEMENT CLASS**

Objector Dunmore is a member of the settlement class having received a post card from the Settlement Administrator, ILYM Group, Inc. so stating and assigning him Claim ID: WFM663296. On or about May 20th Objector Dunmore filed a claim on line through the http://www2.wellsfargotcpasettlement.com/ website.

## **NOTICE OF INTENT TO APPEAR**

The Objector Dunmore hereby gives notice of his intent to appear, by and through undersigned counsel, at the Fairness Hearing before the Honorable Roger T. Benitez, United States District Judge at the U.S. District Court for the Southern District of California, 221 West Broadway, San Diego, CA 92101, in Courtroom 3 on June 19, 2013 at 9:00 a.m. Objector Dunmore will cross-examine witnesses and present legal arguments addressing his objections. At this time, Objector Dunmore does not intend to offer documents into evidence or call witnesses.

## **OBJECTIONS**

1. The Long Form Notice on the proposed settlement website is defective because it does not meet minimum constitutional due process requirements with regard to providing class members with notice and an opportunity to be heard.

2. The Notice says at paragraph 2, page, entitled, "What are these lawsuits about?" that "Plaintiffs allege that Defendants violated the TCPA by calling persons on their cell phone numbers with either an autodialer or by a prerecorded voice message, or both, without that person's prior express consent. Plaintiffs sought statutory damages of up to $500 for each call negligently made and up to $1,500 for each call made intentionally. Defendants deny that they violated the TCPA.

3. The Notice fails to inform class members of the size of the class. Therefore, it is impossible for class members to evaluate whether the Proposed $17.1 million Settlement is Fair, Adequate or Reasonable. For example, if a class member knew that there were 4,337,960 people in the class, then they could calculate the class' statutory damages to be $2.168 billion. (4,337,960 x $500 = $2,168,980,000.00) Then by dividing $17.1 million by $2.168 billion they could determine that class counsel was advocating that the class settle for 7/10 of a penny on the dollar or $3.94 per class member; which is slightly more than 3/4 of 1 percent of the statutory damages available.

4. For the Court to evaluate whether the Proposed $17.1 million Settlement is Fair, Adequate or Reasonable, it is necessary to quantify the net expected value of continued litigation to the class, since a settlement for less than that value would not be adequate. Determining that value require estimating the range of possible outcomes and ascribing a probability to each point on the range, *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1132-1133 (7th Cir.1979) Admittedly, a high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes. One methodology for estimating fair settlement value is to estimate the range of possible outcomes and assign values to the range. For settlement purposes the lawyer estimates the chance of winning at 50/50 and assign a 50% chance of a zero verdict. Then the lawyer estimates a high, medium and low outcome, and assigns a percentage (out of the remaining 50%) to each.

5. However, in this matter statutory damages are available. Thus if you win at trial by establishing violation of the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227(b)(3), everyone in the class gets $500.00. So, the question in this matter is, does the class really only have a 1% chance, or less of winning this case? After all if there we a 10% chance of winning the settlement value would be $216,800,000.00.

6. The Proposed $17.1 million Settlement is not Fair, Adequate or Reasonable because it is release driven, not damages driven. i.e., the value of the purposed settlement in this matter is that for $17.1 million dollars, attorney fees and costs included, Wells Fargo gets fully released from a $2.168 billion cause of action and class members who have filed claims each walk away wit $90.00. "Based upon the 114,713 number of existing valid claims, and assuming

the requested fees and costs are awarded in an approximate amount of $6,796,410.3,

that would allow for each claimant to receive approximately $90.00 from the $10,303,589.63

balance of the $17,100,000 settlement payment to be paid by Defendants." (Doc 60-1, Plaintiffs'

Memorandum of Points and Authorities in Support Of Motion for Final Approval of Class

Action Settlement)

    7.    Ordinarily, "a defendant is interested only in disposing of the total claim asserted against it . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense . . . ." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, at 819-20 (3d Cir. 1995)

    8.    Because the Notice fails to inform class members of the size of the class, it was impossible for class members to estimate their *pro rata* share of the purposed $17.1 million settlement fund. If a class member knew there were 4,337,960 people in the class, then they could calculate the "claim-filing rates[1]" at 2% to 20% and estimate that if 2% of class members, 86, 759 people, filed claims then each claimant's *pro rata* share would be $197.10 before attorney fees and costs; and if 20% of class members, 867,592 people, filed claims then each claimant's *pro rata* share would be $19.71 before attorney fees and costs.

    9.    As Judge Posner stated in *Reynolds, V. Beneficial Natl. Bank* 288 F.3d 277 (7th Cir. 2002) in discussing the judicial duty to protect the members of a class in class action

---

[1] By examining historical claims-filing rates organized by case type, certain trends can be identified and used to help predict response rates for settlements of similar type and scope. While other factors (some of which are addressed within this paper) specific to any particular settlement may have more impact than case type, leaving a sometimes broad range of response rates even within otherwise similar cases, even these ranges provide useful information.

A typical securities settlement may conclude with between 20 and 35 percent of class members having filed claims. For labor and employment settlements, the number tends to be from 20 to as high as 85 percent.

With their broad range of subject matter, benefit types and amounts, and class member demographics, as well as the "hit-or-miss" availability of mailing lists, consumer settlements can draw a filing rate between two and 20 percent. An equally wide variety of claims-filing rates occurs across property-related settlements, due in large part to the supporting documents required to file claims.
http://www.rustconsulting.com/Legal_Sector_Knowledge_Sharing/Articles_and_Publications/articleType/ArticleView/articleId/124/Anticipating_Claims_Filing_Rates_in_Class_Action_Settlements.aspx

1 litigation from lawyers for the class who may, in derogation of their professional and fiduciary
2 obligations, place their pecuniary self-interest ahead of that of the class. "This problem,
3 repeatedly remarked by judges and scholars, see, e.g., *Culver v. City of Milwaukee*, 277 F.3d 908,
4 910 (7th Cir. 2002); Greisz v. Household Bank (Illinois), N.A., 176 F.3d 1012, 1013 (7th Cir.
5 1999); *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991); *Duhaime v. John Hancock*
6 *Mutual Life Ins*. Co., 183 F.3d 1, 7 (1st Cir. 1999); John C. Coffee, Jr., "Class Action
7 Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation," 100 Colum.
8 L.Rev. 370, -385-93 (2000); David L. Shapiro, "Class Actions: The Class as Party and Client,"
9 73 Notre Dame L.Rev. 913, 958-60 and n. 132 (1998), requires district judges to exercise the
10 highest degree of vigilance in scrutinizing proposed settlements of class actions. We and other
11 courts have gone so far as to term the district judge in the settlement phase of a class action suit a
12 fiduciary of the class, who is subject therefore to the high duty of care that the law requires of
13 fiduciaries. *Culver v. City of Milwaukee*, *supra*, 277 F.3d at 915; *Stewart v. General Motors*
14 *Corp.*, 756 F.2d 1285, 1293 (7th Cir. 1985); In re Cendant Corp. Litigation, 264 F.3d 201, 231
15 (3d Cir. 2001); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987)"

16  10.  In this matter, based on the forgoing analysis, the requested attorney's fees are
17 excessive and unreasonable.

18  11.  Objector Dunmore hereby adopts all other meritorious and timely filed objections
19 that are not inconsistent with these objections.

21  **WHEREFORE**, Objector Dunmore respectfully requests that this Court to
22 sustain these Objections and enter such Orders as are necessary and just to adjudicate
23 these Objections including but not limited to an order :
24 A)  disapproving the proposed settlement because it is not Fair, Adequate or
25 Reasonable;
26 B)  disapproving the proposed settlement because of the improper and
27 constitutionally defective notice to the class;
28 C)  requiring class counsel and the settling defendants to craft a new settlement and
  notice and then to re-notice the class; and,

    D)    granting such other relief that this court deems necessary or proper so as to alleviate the inherent unfairness, inadequacy and unreasonableness of the proposed Settlement.

DATED this 5th day of June 2013.

                                      Respectfully submitted,

                                      /s/ Michael D. Luppi
                                    Michael D. Luppi
                                    CA Bar Number: 55865
                                    Attorney for Objector Julius Dunmore
                                    11366 Christy Ave
                                    Sylmar, CA 91342
                                    (818)897-3344
                                    girlfriwp@aol.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 5th of June, 2013, the foregoing was filed with the Clerk of the Court and that all parties will be electronically served by the CM/ECF system.

                                    /s/ Michael D. Luppi
                                    Michael D. Luppi