Abbas Kazerounian Esq, (SBN: 249203)
ak@kazlg.com
**Kazerouni Law Group, APC**
2700 N. Main Street, Suite 1000
Santa Ana, CA 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Additional Attorney on Signature Page]

Attorneys for Plaintiffs
and Proposed Settlement Class

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALBERTO MALTA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | **Case No: 10-CV-1290-BEN (NLS)** |
| | **CLASS ACTION** |
| **PLAINTIFFS,** | |
| **V.** | **PLAINTIFFS' OPPOSITION TO OBJECTIONS TO CLASS ACTION SETTLEMENT** |
| **THE FEDERAL HOME LOAN MORTGAGE CORPORATION A/K/A FREDDIE MAC, AND WELLS FARGO HOME MORTGAGE, INC.,** | DATE:  JUNE 19, 2013 <br> TIME:  9:00 A.M. <br> CTRM: 5A |
| **DEFENDANTS.** | THE HON. ROGER T. BENITEZ |

*Kazerouni Law Group, APC*
*Santa Ana, California*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................iii

I.  INTRODUCTION ...........................................................................1

II.  RESPONSE OF THE SETTLEMENT CLASS .......................................1

III.  THE SEVEN OBJECTIONS ARE MERITLESS AND THEREFORE
SHOULD BE OVERRULED................................................................2

    A.  Gordon B. Morgan and Julius Dunmore Are Serial Objectors
Whose Meritless Objections Should Be Overruled And Viewed
As An Attempt To Extract Payment To Withdraw Their
Objections ................................................................................4

        1.  Gordon B. Morgan Is A Serial Objector and His
Objection Should Be Overruled ........................................6

        2.  Julius Dunmore Is A Serial Objector and His Objection
Should Be Overruled ........................................................8

    B.  The Objections By Tonya Barron Should Be Treated As A
Request For Exclusion Rather Than An Actual Objection ...........8

    C.  The Objections Regarding Notice To Class Members Should Be
Overruled................................................................................9

    D.  The Objections Regarding Attorneys' Fees Should Be
Overruled...............................................................................14

    E.  The Objections Regarding Monetary and Non-Monetary
Compensation Should Be Overruled .......................................17

        1.  Monetary Compensation...............................................17

        2.  Non-Monetary Compensation .......................................24

    F.  The Objections Regarding The Requirements of Fed. R. Civ. P.
23(a) Should Be Overruled .....................................................25

    G.  The Objections Regarding *Cy Pres* Should Be Overruled ...........25

**H.    The Objections Regarding Conflict of Interest Should Be Overruled** ..........................................................................28

**I.    The Objections Regarding The Claims Filing Procedure Should Be Overruled** ..................................................................29

**IV.    CONCLUSION** ..........................................................................30

Kazerouni Law Group, APC
Santa Ana, California

# TABLE OF AUTHORITIES

## Cases

*Adams v. AllianceOne*,
No. 08-CV-0248-JAH (WVH) (S.D. Cal. 2012) ..........................6, 15, 16, 24

*Arthur, et al. v. Sallie Mae, Inc.*,
No. 10-CV-0198-JLR (W.D. Wash). ......................................................14, 20

*Arthur v. Sallie Mae, Inc.*,
2012 U.S. Dist. LEXIS 132413 (W.D. Wash. 2012) ......................17, 18, 22

*Barnes v. FleetBoston Fin. Corp.*,
2006 U.S. Dist. LEXIS 71072 (D. Mass. 2006) ...............................................4

*Bateman v. American Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) ...........................................................................22

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993) ................................................................................9

*Bryan v. Pittsburgh Plate Glass Co.*,
494 F.2d 799 (3d Cir. 1975)...............................................................................2

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ...........................................................................13

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) .........................................................................22

*Connor v. JPMorgan Chase Bank*,
Case No. 10-CV-1284-DMS (BGS)...................................................................14

*Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...........................................................................14

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ...........................................................................2

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..........................................................15

**Kazerouni Law Group, APC**
Santa Ana, California

**Kazerouni Law Group, APC**
Santa Ana, California

*Dennings v. Clearwire Corp.*,
    2013 U.S. Dist. LEXIS 34274 (W.D. Wash. 2013) ..........................6

*Florin v. Nationsbank of Ga.*,
    60 F.3d 1245 (7th Cir. 1995)..................................................... 14

*Fulford v. Logitech, Inc.*,
    2010 U.S. Dist. LEXIS 29042 ...................................................21

*Glass v. UBS Fin. Servs*,
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. 2007) ...............................9

*Graham et al. v. Overland Solutions, Inc.*,
    No. 10-CV-00672-BEN-BLM (S.D. Cal.  2013) ...........................16

*Gutierrez v. Barclays Group*,
    No. 10-CV-01012-DMS-BGS (S.D. Cal 2012) ...........................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................3

*In re Baby Products Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013)......................................................26

*In re Bluetooth Headset Prods. Liab. Litig.)*,
    654 F.3d 935 (9th Cir. Cal. 2011) ...............................................7

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005)..................................................... 14

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993)............................................... 14

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ...............................3, 16, 17

*In re Heritage Bond Litigation*,
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal 2005)...........................21

*In re Hydroxycut Marketing and Sales Practices Litig.*,
    No. 09-MD-2087-BTM (S.D. Cal. April 23, 2013) ........................5

**Kazerouni Law Group, APC**
Santa Ana, California

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000).................................................2, 7, 21

*In re Metro. Life Ins. Co. Sales Practices Litig.*,
  1999 U.S. Dist. LEXIS 22688 (W.D. Pa. Dec. 28, 1999) ................................. 10

*In re Microstrategy, Inc. Sec. Litig.*,
  172 F. Supp. 2d 178 (E.D. Va. 2001) ............................................... 14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) .................................................9, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 69299 (N.D. Cal. 2013) ...........................................8

*In re Trans Union Corp. Privacy Litig.*,
  211 F.R.D. 328 (N.D. Ill. 2002).................................................21

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...............................................2

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices
  Litig.*,
  2011 U.S. Dist. LEXIS 55351 (N.D. Cal. 2011) ...........................................9

*In re World.com, Inc. Sec. Litig.*,
  388 F.Supp. 2d 319 (S.D.N.Y. 2005).................................................14

*J2 Global Communs., Inc. v. Blue Jay, Inc.*,
  2009 U.S. Dist. LEXIS 111609 (N.D. Cal. 2009) ........................................ 19

*Jenson v. Cont'l Fin. Corp.*,
  591 F.2d 477 (8th Cir. 1979) .....................................................9

*Jiffy Lube International, Inc. Text Spam Litigation*,
  No. 11-MD-2261-JM (S.D. Cal. 2013).................................................20

*Jones v. Dominion Res. Servs., Inc.*,
  601 F. Supp. 2d 756 (S.D. W. Va. 2009).................................................14

*Jones v. GN Netcom, Inc*,
  654 F.3d 935 (9th Cir. Cal. 2011).................................................7

Kazerouni Law Group, APC
Santa Ana, California

*Langille v. EMC Corporation, Inc.*,
  No. 07-CV-0651 (S.D. Cal. 2008) .................................................. 16

*Lemieux v. Global Credit and Collection Corp.*,
  No. 08-CV-01012-IEG (S.D. Cal) ................................................... 24

*Liguori v. Wells Fargo & Co. et al.*,
  No. 08-CV-00479 (E.D. Penn.) ....................................................... 29

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ....................................................... 21

*Lo v. Oxnard European Motors, LLC.*,
  2012 WL 1932283 (S.D. Cal. 2012) ............................................... 20

*Maher v Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ......................................................... 13

*Mayfield v. Barr*,
  985 F.2d 1090 (D.C. Cir. 1993) ....................................................... 9

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
  671 F. Supp. 819 (D. Mass. 1987) ................................................... 7

*Miller v Republic National Life Ins Co.*,
  559 F.2d 426 (5th Cir. 1977) ......................................................... 13

*O'Keefe v. Mercedes-Benz United States, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003) ....................................................... 6

*Parker v. Time Warner Entm't Co., LP*,
  331 F.3d 13  (2d Cir. 2003) ........................................................... 21

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................. 7, 9, 26

*Rudgayzer & Gratt v. Cape Canaveral Tour and Travel, Inc.*,
  22 A.D.3d 148 (2005) ................................................................... 23

*Rudgayzer & Gratt v. LRS Communications, Inc.*,
  3 Misc.3d 159 (2003). .................................................................. 23

*Sarabri v. Weltman, Weinberg & Reis Co.*,
    No. 10-CV-01777-AJB-NLS (S.D. Cal 2013)................................................24

*Scholes v Stone, McGuire & Benjamin,*
    839 F. Supp. 1314 (ND Ill. 1993) ....................................................13

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990). ....................................................26

*Spark v. MBNA Corp.*,
    289 F. Supp. 2d 510 (D. Del. 2003)....................................................4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................15

*Steiner v. Am. Broad. Co.*,
    248 Fed. Appx. 780 (9th Cir. 2007)....................................................15

*TBK Partners, Ltd. V. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982)....................................................2

*Texas v. American Blastfax, Inc.*,
    164 F. Supp. 2d 892 (W.D. Tex. 2001)....................................................20

*The Officers for Justice v. Civil Serv. Comm'n of the City and County of San
    Francisco,*
    688 F.2d 615 (9th Cir. 1982) ...................................................3, 7, 21, 22

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993)....................................................4

*UAW v. Gen. Motors Corp.*,
    No. 05-CV-73991-DT,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006)....................................................9

*Villegas v. J.P. Morgan Chase & Co.*,
    U.S. Dist. LEXIS 166704 (N.D. Cal. 2012) ....................................................14

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................15

*///*

**Kazerouni Law Group, APC**
Santa Ana, California

**Kazerouni Law Group, APC**
Santa Ana, California

*Vollmer v. Selden*
        350 F.3d 656 (7th Cir. 2003) ............................................................... 4

*Wal-Mart Stores, Inc. v. Visa USA, Inc.,*
        396 F.3d 96 (2d Cir. 2005)................................................................. 2

*White v. Experian Information Solutions, Inc.,*
        2011 WL 2972054 (C.D. Cal. 2011)................................................ 22

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) .............................................................. 18

**Rules**

Fed. R. Civ. P. 23 ................................................................... passim

Fed. R. Civ. P. 23(a) .................................................................... 1

Fed. R. Civ. P. 23(e) .................................................................. 13

Fed. R. Civ. P. 23(e)(1) ............................................................... 14

Fed. R. Civ. P. 23(e)(1)(C) ............................................................. 7

Fed. R. Civ. P. 23(e)(5) ................................................................. 9

Fed. R. Civ. P. 23(b)(3) ............................................................... 14

Fed. R. Civ. P. 23(c)(2)(B) ............................................................ 14

Fed. R. Civ. P. 23(a) .................................................................. 25

**Treatises**

*Manual for Compl. Litig.*,
        Fourth, § 30.42 (2004).......................................................... 4, 22

**Other**

Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action*
        *Litigation: A Pocket Guide for Judges,* Federal Judicial Center (2005) ......... 5

Kazerouni Law Group, APC
Santa Ana, California

1

## I.   INTRODUCTION

This class action settlement was overwhelmingly approved by the Class Members. Out of 3,922,606 Class Members who received direct mail notice, only seven persons filed objections. There were 4,337,960 Class Members in total. Only 45 persons opted out of the Settlement. Neither the U.S. Attorney General nor a single state attorney general objected. Those are powerful indicia that the settlement is fair, reasonable, and adequate and deserves final approval.

The seven objectors raise issues regarding the following seven categories: (1) Notice of Settlement; (2) Attorneys' Fees; (3) Monetary and Non-Monetary Compensation to Class Members; (4) Requirements of Fed. R. Civ. P. 23(a); (5) *cy pres*; (6) Conflict of Interest; and (7) the Claims Filing Procedure; however, all of these objections are meritless. Given the nature this Settlement and the positive response of the Class, this Settlement should be finally approved as fair and adequate. For the reasons stated herein, the Court should overrule the objections and approve the Settlement.

## II.   RESPONSE OF THE SETTLEMENT CLASS

Notice to the Class Members was provided by several means, including direct mail notice in the form of a postcard-type notice, national publication in the *USA Today*, and disseminated using special internet advertising procedures. *See* Declaration of Lisa Mullins In Support of Final Approval, ¶¶ 4-7. Out of all of the 3,922,606 Class Members who received direct mail notice, and all other Class Members, only 45 opted out and seven filed objections. *See* Supplemental Declaration of Lisa Mullins In Support of Final Approval, ¶ 8. Those extremely small numbers plainly establish the settlement is "adequate":

> [A] certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. *If only a small number of objections are received, that fact can be*

*viewed as indicative of the adequacy of the settlement.*

*In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (quotations omitted, emphasis added), aff'd, 396 F.3d 96 (2d Cir. 2005); *accord, In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (low number of objections supporting finding that settlement was fair); *see also Wal-Mart Stores, Inc. v. Visa USA, Inc.,* 396 F.3d 96, 118 (2d Cir. 2005) (18 objections out of 5 million class members is evidence of "overwhelming [ ] approval"); *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 803-04 (3d Cir. 1975) (approving class settlement even though more than 20% of class objected); settlement where objectors represented fewer than 4% of class).[1] Thus, the fact that there were objections from only seven persons, which represents 0.000001613 percent of the total Class Members, confirms the adequacy of the Settlement here.

## III.   THE SEVEN OBJECTIONS ARE MERITLESS AND THEREFORE SHOULD BE OVERRULED

Only three of the seven objections were filed with the Court by June 5, 2013 as required by the Order Granting Preliminary Approval, p. 16, ¶ 12, and all three were filed on the last day to submit a claim. These include the objection by Jada Longchamp (including her husband Harard Longchamp), received on June 5, 2013 (Exhibit A), the objection by Julius Dunmore, received June 5, 2013 (Exhibit B), and the objection by Gordon Morgan, received on June 5, 2013 (Exhibit C). The other four objections were mailed to Class Counsel after the deadline to file an objection had already passed, which deadline was June 5, 2013. These include the objection by Thomas V. Krajenta, received on June 6, 2013

---

[1] Courts frequently approve settlements where the percentage of objections is many times greater than in this case. *See, e.g., TBK Partners, Ltd. V. W. Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of approximately 56% of class); *Cotton v. Hinton*, 559 F.2d 1326,1333 (5th Cir. 1977) (approving settlement over objections of counsel purporting to represent almost 50% of class).

Kazerouni Law Group, APC
Santa Ana, California

(Exhibit D), the objection by Jarod Weatherford, received on June 6, 2013 (Exhibit E), the objection by Patricia K. Thomas, received on June 10, 2013 (Exhibit F), and the purported objection by Tonya Barron, received on June 10, 2013 (Exhibit G). All of these objections are baseless and the majority did not follow the proper procedures and were untimely. The seven objections are attached Exhibits A through E to the Declaration of Abbas Kazerounian.[2]

This Court must evaluate the fairness of a settlement as a whole, rather than assessing its individual components. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). General dissatisfaction with the outcome of a case, without factual or legal substantiation, should carry little weight in assessing the fairness and adequacy of the settlement. *See In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) (declining to address objections that are non-specific and unsupported by evidence or authority). Also, an unsupported objection to the merits of this action is not a sufficient ground to withhold any recovery to the remainder of class members. *In re Enron Corp.*, 586 F. Supp. 2d at 804.

Distribution and fee issues are not among the factors utilized to arrive at the determination to approve a settlement as an appropriate end to class litigation. Instead, "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice v. San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The factors to be balanced by this Court include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a

---

[2] All Exhibits referenced herein are attached to the Declaration of Abbas Kazerounian, filed concurrently.

Kazerouni Law Group, APC
Santa Ana, California

governmental participant; and the reaction of the class members to the proposed settlement.

*Id*. at 625 (internal citations omitted); *accord, Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

**A.   Gordon B. Morgan and Julius Dunmore Are Serial Objectors Whose Meritless Objections Should Be Overruled and Viewed As An Attempt To Extract Payment To Withdraw Their Objections**

Class Counsel recognize that at times, objectors provide genuine assistance to the parties and the court in identifying weaknesses in a proposed settlement. At other times, however, "serial" or "professional" objectors file objections merely to extract payments from parties or counsel in litigation as additional compensation to avoid years of delay associated with unmeritorious settlement objections:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. FleetBoston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *3-*4 (D. Mass. Aug. 22, 2006).[3]

---

[3] Objectors and professional objector counsel often surface because they can profit by doing so. *See, e.g.*, *Barnes v. Fleetboston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *3 (D. Mass. Aug. 22, 2006) ("Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements."); *Spark v. MBNA Corp.*, 289 F. Supp. 2d 510, 514 (D. Del. 2003) (stating that groundless objection by serial objector counsel "appears to be nothing more than an attempt to receive attorneys' fees").

Kazerouni Law Group, APC
Santa Ana, California

Kazerouni Law Group, APC
Santa Ana, California

Judges are cautioned to "[w]atch out…for canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests." *Managing Class Action Litigation: A Pocket Guide for Judges*, by Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, p. 11 (2005), accessed on June 11, 2013 from the public website accessible at www.fjc.gov/public/pdf.nsf/lookup/classgde.pdf/$file/classgde.pdf (internal quotations omitted).

In this case, both Gordon B. Morgan and Julius Dunmore filed their objection on the last day to file an objection (June 5, 2013), suggesting that they wished to provide Class Counsel with as little time as possible to respond to such objections.[4] Plaintiffs request an <u>evidentiary hearing</u> regarding the objections filed by Morgan and Dunmore, as their objections indicate an intent not to assist this Court in improving the result for the class, but to hijack the case to obtain a payment by preserving their ability to file a meritless appeal. In *Hydroxycut Marketing and Sales Practices Litig.*, Case No. 09-MD-2087-BTM (S.D. Cal. April 23, 2013), the court ordered an evidentiary hearing for two objectors represented by serial objector Darrel Palmer. *Id*. at p. 17:22-24, pp. 28-29, 33-34. A copy of the hearing transcript in that case is attached as Exhibit H.

---

Objector counsel can negotiate for payment of a fee as part of their clients' agreement to withdraw their objections, regardless of the merits of those objections. *See, e.g., Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003) (noting that objectors may "intervene and cause expensive delay in the hope of getting paid to go away"); *Manual For Complex Litigation*, ("An objection, even of little merit, can be costly and significantly delay implementation of a class settlement."

[4] Seeking a payoff in exchange for dropping a meritless objection is improper conduct as explained by Chief Justice Moskowitz in *Hydroxycut. See Hydroxycut Marketing and Sales Practices Litig.*, No. 09-MD-2087-BTM (S.D. Cal. April 23, 2013) ("I think based on what he said, if he took any money and I found out about it, I think I would be obligated, if he didn't get court approval, to refer it to the U.S. Attorney's Office for criminal investigation.") *Id*. at p. 23, lns. 2-6.

### 1. Gordon B. Morgan Is A Serial Objector and His Objection Should Be Overruled

Objector Gordon B. Morgan is no stranger to filing baseless objections to class action settlements. *See Dennings v. Clearwire Corp.*, 2013 U.S. Dist. LEXIS 34274, 3 (W.D. Wash. Mar. 11, 2013) ("Plaintiffs eventually deposed Mr. Morgan … and learned that Mr. Morgan had no personal objection to the settlement" and did not "read the settlement agreement or [his] own objection[] to it…"). The objection and deposition transcript in that case are attached as Exhibits I and J. *See also* Objection by Gordon Morgan *Adams v. AllianceOne Receivables Management, Inc.*, Case No. 08-CV-0248-JAH (WVG), attached as Exhibit K is the objection in that case, which was overruled by Judge Houston, *see* Final Approval Order, Exhibit L. Objector Morgan is a serial objector, which some courts refer to as a "professional objector."[5] In *Adams*, Morgan objected to a similar TCPA class action settlement only to have his appeal dismissed after extracting a settlement.[6] This is Morgan's intent here, and thus his objection should be heavily scrutinized by this Court.

Additionally, Objector Morgan states that he "incorporates by reference all other objections to the extent not inconsistent with this objection" (Exhibit C, p. 1, lns. 8-9) without any indication that Morgan has reviewed the other two objections filed with the Court and regardless of whether those other objections have merit. Such attempt to incorporate objections by reference further supports the lack of merit to Morgan's objection and demonstrates Morgan's "throw in the

---

[5] A judge has observed that "[f]ederal courts are increasingly weary of professional objectors." *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 295, fn. 26 (E.D. Pa. 2003).

[6] In *Adams*, Morgan testified that he did not even know what he was objecting to and had left it to his attorney to handle the paperwork. *See* Exhibit J, p. 13:5-20:7. In that case, the same counsel represented Morgan, signed Morgan's name to the objection and appeal, and then filed those documents falsely with the court in pro per. *Id.*

kitchen sink" modus operandi as shown by other objections by Morgan.

Objector Morgan states that Plaintiffs reference a Ninth Circuit decision in their Motion for Final Approval indicating that a settlement reached after "arm's length negotiation" is "presumptively fair" (Exhibit C, p. 2, lns. 19-21), yet Morgan fails to acknowledge the above-quoted language was actually from *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987). The Ninth Circuit case cited by Plaintiffs, *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) was correctly quoted in Plaintiffs' brief as indicating that courts should defer to the "private consensual decision of the [settling] parties." In *Rodriguez*, *supra*, at 965, the Ninth Circuit quoted itself in *Officers for Justice*, 688 F.2d at 625 when stating:

> agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

Objector Morgan characterizes Plaintiffs' request for final approval as requiring nothing more than arm's length negotiation before a class action settlement may be approved (*see* Exhibit C p. 2:23-3:1), but this is simply not true. Plaintiff's Motion for Final Approval clearly explains the requirements for final approval on pages 14 through 15 of their Memorandum. *See* Dkt. No. 60-1. Plaintiffs recognized that "'The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate.' Fed. R. Civ. P. 23(e)(1)(C)." *Id*. at 14:12-14. The cases cited by Plaintiffs are in line with *Bluetooth*, which recognized that: The district court's approval order must show not only that "it has explored [the *Churchill*] factors comprehensively, but also that the settlement is not [ ] the product of collusion among the negotiating parties." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. Cal. 2011)

Kazerouni Law Group, APC
Santa Ana, California

(quoting *In re Mego Fin. Corp.*, 213 F.3d at 458) (internal quotations omitted). The Court has already found that there is no appearance of collusion between the parties in the Order Granting Preliminary Approval. *See* Order Granting Preliminary Approval, p. 12, Section E. In fact, the settlement was negotiated with the help of two well-respected retired judges.

The specific objections raised by Objector Morgan are addressed in detail below, and all are meritless.

### 2. Julius Dunmore Is A Serial Objector and His Objection Should Be Overruled

Objector Julius Dunmore is also no stranger to filing baseless objections to class action settlements. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 69299, *34 (N.D. Cal. May 14, 2013). Dunmore's objection in that case is attached as Exhibit M. Like Morgan in this case, Dunmore states that he "adopts all other meritorious and timely filed objections that are not inconsistent with these objections" (Exhibit B, p. 5, ¶ 11), without any indication that Dunmore had reviewed the other two objections filed with the Court. Such attempt to incorporate objections by reference further supports the lack of merit to Morgan's own objection.

The specific objections raised by Objector Dunmore are addressed in detail below, and all are meritless.

### B. The Objections By Tonya Barron Should Be Treated As A Request For Exclusion Rather Than An Actual Objection

Objector Barron states in her purported objection, "I, Tonya Barron am a class action member and want to participate in the class action lawsuit. My reason for objection is that I do not wish to give up my legal rights at this time." (Exhibit G, p. 1).

While Objector Barron expresses an interest in remaining in the lawsuit, she also expresses a clear interest in not giving up her legal rights, which means that

Kazerouni Law Group, APC
Santa Ana, California

she desires to retain the right to sue at a later date. Barron cannot have it both ways, she must either remain in the lawsuit or exclude herself – Barron cannot receive a settlement payment without agreeing to the Release. Thus, by expressly excluding herself from the class, Barron removed any standing she may have had to object to the class settlement.[7]

In any event, this purported objection should be overruled if treated as an objection because it provides no objection to the fairness and adequacy of the settlement, and therefore, this purported objection should be overruled.

## C.   The Objections Regarding Notice To Class Members Should Be Overruled

It is for an objector either to demand more specificity or to complain that a notice that contains too much specificity is too complex.[8]  In fact, there is "a wide

---

[7] *See* Fed. R. Civ. P. 23(e)(5) (providing "any class member may object" to a proposed settlement); *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993) (holding "[t]hose who are not class members, because they are outside the definition of the class or have opted out" lack standing to object to class settlement); *Jenson v. Cont'l Fin. Corp.*, 591 F.2d 477, 482 n.7 (8th Cir. 1979) ("Opt-outs . . . are not members of the class and hence are not entitled to the protection of Rule 23(e)."); *Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *26 (N.D. Cal. Jan. 26, 2007) (holding that a class member who submitted objections to the settlement and also opted out "is no longer a class member, he has no standing to object"); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, No. 5:09-md-02015, 2011 U.S. Dist. LEXIS 55351, at *13 n. 3 (N.D. Cal. May 17, 2011) ("Class members who opt out lack standing to object to a settlement.").

[8] There is an almost infinite array of facts or other matters that, arguably, might be included in a notice. *See, e.g.*, *Rodriguez*, 563 F.3d at 962 (noting that objectors demanded that the content of objections be included in notice); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993) (objectors complained that notice should have included various items); *In re Prudential*, 962 F. Supp. at 528–33 (noting that objectors cited a dozen different items that allegedly should have been included in notice); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) ("A summary, by its nature, cannot discuss every term of the [settlement] agreement.").

---

Kazerouni Law Group, APC
Santa Ana, California

range of possible notices, … each of which would strike an appropriate balance between inclusiveness and brevity." The form and content of the notice is within the discretion of the trial court and must be approved by the court before it is issued.[9]  Thus, objections to notice that has already been approved by this Court in its discretion is not an appropriate basis for objecting to final approval of the class action settlement. It is not practicable or even desirable to include every detail about the class action in the notice to Class Members, as the purpose of the notice is to apprise Class Members of the nature of the proposed settlement and provide a reasonable opportunity to be heard, which was achieved in the case here.

Objector Patricia K. Thomas objects to the settlement on the basis of the allegedly "poor design and legibility of the claim form," which Thomas claims is "confusing and hard to read". (Exhibit F, p. 1). Objector Thomas posits that the claim form will "undoubtably … lessen class participation." *Id*.

Thomas' Objection should be overruled because first of all, most of claims were filed not by the optional claim form procedure but instead through a toll-free telephone number or through an on-line procedure that only required the claimant to enter their Claim Identification number. If a person desired to use the "old-fashioned" method of submitting a claim by mail, and downloaded a claim form, they would find the claim form is simple, clear, and only required basic information such as name, address, and Claim ID (if a postcard notice was received), which basic information was needed in order to verify entitlement to a settlement payment. *See* Exhibit N. Additionally, there were several methods of submitting a claim, including via a toll-free telephone number. *See* Exhibit N. In fact, over

---

[9] *In re Prudential*, 962 F. Supp. at 528; *see In re Metro. Life Ins. Co. Sales Practices Litig.*, 1999 U.S. Dist. LEXIS 22688, at *52 (W.D. Pa. Dec. 28, 1999) (noting that some objectors demanded more detail while others argued notice was already too complex "demonstrated that the Class Notice Package strikes a proper balance and provides sufficient information in as clear and concise a manner as possible given the nature of the proposed settlement").

Kazerouni Law Group, APC
Santa Ana, California

53,156 Class Members submitted claims via toll-free telephone number, which is approximately 44% of the Class Members who filed timely and valid claims. *See* Supplemental Declaration of Lisa Mullins in Support of Final Approval, Dkt. No. 76, ¶ 4. 120,547 Class Members filed timely and valid claims. *Id.*

Objector Thomas does not specify why he believes the claim form is poorly designed, probably because the claim form was adequately designed in all respects. Objector Thomas' apparent personal preference for a particular design for the claim form is not a valid basis for objecting to final approval of this class action settlement. Further, the assertion by Thomas that the claim form is not legible is without merit, as thousands of Class Members found the claim form to be legible, and the Court has already approved the claim form in this case. *See* Order Granting Preliminary Approval, ¶ 6. Thomas is the only claimant out of millions of Class Members who objected to the claim form.

The Thomas objection was not filed with the Court as required by the Court's Order Granting Preliminary Approval, Dkt. 48, ¶ 12. This objection was also untimely, having been received by Class Counsel by mail on June 10, 2013, which was five days past the deadline to filed an objection, and therefore should be overruled on this basis alone.

Morgan's objections with regard to notice are clearly without merit as he objects to lack of disclosure of certain items, including the number of class members, the notice procedures, amount of returned mail, and failing to disclose the amount of costs of claims administration and notice (Dkt. No. 128-7). However, the declarations filed in support of final approval and for attorneys' fees and costs do in fact disclose all of the items Morgan claims are missing, which declarations were available on the settlement website, and from the Court, and are easily reviewable. The Settlement Agreement, which was also made available on the settlement website, indicates the number of class members as well. Morgan objects to the placement of the long-form notice on the settlement website as

being found under the tab for "FAQs" rather than "Important Documents" (Exhibit C, p. 7, lns. 4-12). Morgan cannot dispute that the long-from notice was indeed on the settlement website and easily accessible under the FAQs tab. Morgan's personal preference for how to display the long-form notice is simply not a good faith basis for an objection.

There is simply no merit to the argument by Morgan that "[i]t is unrealistic to expect lay persons to read through complex legal documents to identify and assess the reasonableness of settlement term"[10] (Exhibit C, p. 7, lns. 15-16). The direct mail notice, *see* Exhibit N, included the link to the settlement website where Class Members could find important court documents, the long-form notice, and contact information for the claims administrator (*see* http://www2.wellsfargotcpasettlement.com/).

Dunmore's objections to the long-form notice to Class members are also meritless, especially since this Court has already reviewed and approved the long-form notice. *See* Order Granting Preliminary Approval, p. 15-16. Dunmore first objects that the long-form notice does not comport with due process, yet provides absolutely no explanation. *See* Exhibit B, p. 2, ¶ 1. This belies the baselessness of Dunmore's objections and sheds light on his real intent to extract a settlement from Class Counsel.

Second, Dunmore objects that the long-form notice does not indicate the number of Class Members. *See id.* at Exhibit B, p. 3, ¶ 3. Dunmore argues that Class Members are unable to determine whether the settlement is "Fair, Adequate or Reasonable" (*id.* at p. 3, ¶ 4) without such information in the long-form notice. However, Objector Dunmore fails to acknowledge that the number of Class Members was made available to the Class Members in several ways, including the Settlement Agreement (§ 7.01), the Order Granting Preliminary Approval (p. 14-

---

[10] This language by Morgan further supports the canned nature of his objection.

Kazerouni Law Group, APC
Santa Ana, California

Kazerouni Law Group, APC
Santa Ana, California

15), Plaintiffs' Motion for Attorneys' Fees, Costs of Litigation and Incentive Payments (Dkt. No. 56-1, n. 13), and Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 60-1, p. 17, ln. 3 and Section VII). All of the documents were made available on the settlement website. *See* http://www2.wellsfargotcpasettlement.com/.

Even Dunmore himself recognizes that there cannot be a high degree of precision in estimating the amount of the settlement payment to each Class Member. *See* Exhibit B, p. 3, ¶ 4. In fact, given the size of the Class, 4,337,960, it is impossible to accurately state the monetary award to each Class Member until after the claims have been submitted. Nevertheless, Plaintiffs did estimate in their Motion for Preliminary Approval that the response rate based upon similar TCPA class actions would be less than 5% (*see* Order Granting Preliminary Approval, p. 6, n. 3). This information was made available to Dunmore and the public on the settlement website as early as February of 2013 when the Order was issued.[11]

Dunmore cites no case law for his claim that the number of class members must be stated in a long-form notice in order to be constitutionally adequate to provide Class Members with notice and an opportunity to be heard. A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).[12] The notice provided in this

[11] The Court's Order Granting Preliminary Approval was issued on February 5, 2013 (Dkt. No. 48).

[12] Under FRCP 23(e), courts require parties to settlement agreements to notify the public of the "claims asserted therein," which includes the "nature of the pending action." *See Maher v Zapata Corp*, 714 F.2d 436, 451 & n26 (5th Cir. 1983); *Scholes v Stone, McGuire & Benjamin*, 839 F. Supp. 1314, 1320 (ND Ill. 1993). "Notice in a class suit must present a fair recital of the subject matter and of the proposed terms…" *Miller v Republic National Life Ins Co*, 559 F.2d 426, 429 (5th Cir. 1977). Plaintiffs' long-form notice in this action meets these requirements.

case was the <u>best practicable notice</u> in this type of case, as nearly all of the Class Members received a direct mail notice directing them to the settlement website.[13]

Significantly, the long-form notice in other major TCPA class action settlements (e.g., *Arthur v. Sallie Mae, Inc.*, Case No. 10-CV-00198-JLR) did not include the number of class members. The *Arthur* settlement was approved and that *Connor* v. *JPMorgan Chase Bank*, Case No. 10-CV-1284-DMS (BGS) settlement has been preliminarily approved as fair and adequate. *See* Exhibits O and P, respectively. It seems that Objector Dunmore is objecting to the settlement solely for the purpose of holding up the settlement for personal financial gain rather than the best interest of the Class Members.

Therefore, the objections to Notice to the Class should be overruled.

### D.   The Objections Regarding Attorneys' Fees Should Be Overruled

Encouraging objections to class counsel fees runs counter to the settled policy of using generous fee awards to incentivize class counsel to bring risky litigation in the public interest. *See, e.g., In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 193 (3d Cir. 2005) (recognizing the need for fee structures negotiated under PSLRA to "provid[e] counsel with incentives to perform excellent work").[14]

---

[13] "For any class certified under Rule 23(b)(3), the court must [22] direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 166704, 21-22 (N.D. Cal. Nov. 20, 2012) (quoting Fed. R. Civ. P. 23(c)(2)(B); 23(e)(1)).

[14] *See also Florin v. Nationsbank of Ga.*, 60 F.3d 1245, 1247 (7th Cir. 1995) ("[T]he court must also be careful to sustain the incentive for attorneys to continue to represent such clients on an 'inescapably contingent' basis." (quoting *Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992))); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 765 (S.D. W. Va. 2009) (recognizing public policy in favor of sufficient fees to ensure that competent counsel will take on " 'the often risky and arduous task of representing a class' " (quoting *In re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 178, 188 (E.D. Va. 2001)); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005); *In re Domestic Air Transp. Antitrust Litig.*, 148

Kazerouni Law Group, APC
Santa Ana, California

Kazerouni Law Group, APC
Santa Ana, California

1    Although Objector Morgan complains that the attorneys' fees and costs are

2    disproportionate to the relief provided to the class, the requested fees are below

3    the 25 percent benchmark in the Ninth Circuit (22.5% in this case). *See Staton v.*

4    *Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Vizcaino v. Microsoft Corp.*, 290

5    F.3d 1043, 1047 (9th Cir. 2002). Morgan is incorrect is stating that "Attorneys'

6    fees should be based on the actual work done, the number of hours worked and the

7    outcome of that settlement" (Exhibit C, p. 3, lns. 9-10), since the standard in

8    common fund cases such as this one is the 25% benchmark set by the Ninth Circuit.

9    *See Staton*, *supra*, at 968.

10    Moreover, attorneys fees based on the lodestar figure in the Ninth Circuit

11    frequently permit a multiplier as a cross-check. The District Court uses a

12    multiplier as a cross-check on the lodestar, and a multiplier in this case is within

13    the average of similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

14    1050-51 and n.6 (9th Cir. 2002); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780,

15    783 (9th Cir. 2007) (25% fee reasonable where multiplier was 6.85); *Craft v.*

16    *County of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008)

17    (awarding 25% fee, plus costs, where multiplier was 5.2).

18    Objector Morgan merely asserts that "Class counsels' proposed award is

19    grossly disproportionate to the funds being distributed to the class members" and

20    "[t]he proposed award of attorneys' fees is excessive under a percentage of

21    recovery or lodestar analysis" (Exhibit C, p. 3, lns. 11-13).   Morgan provides

22    absolutely no basis for such assertion regarding the amount of attorneys' fees.[15]

23    ─────────────────────────────

24    F.R.D. 297, 306 (N.D. Ga. 1993) (discussing "the financial incentive necessary to
induce experienced and well-qualified counsel to take on complex and time-

25    consuming cases for the benefit of the public and for which they may never be paid
or even reimbursed for considerable out-of-pocket expenses").

26    [15] This is the same canned objection used by Morgan in the *Adams v. AllianceOne*

27    case where he extracted a settlement in exchange for dismissing his appeal.
Morgan's intent is the same in this case. Morgan also objects to the payment of

28    administrative expenses being paid form the Settlement Fund (Exhibit C, p. 3, lns.

Kazerouni Law Group, APC
Santa Ana, California

Morgan does not present evidence or argument that the number of hours worked on the case is too high for this type of action, or that Class Counsels' effort and the risks taken on in this case require the Court to award less than the 22.5% of the Settlement Fund, which is already lower than the requested 25% benchmark.[16] Thus, this unsupported objection to the amount of attorneys' fees requested based upon Morgan's personal opinion is not a sufficient ground to withhold final approval of class action settlement.[17]

Dunmore objects to the requested attorneys' fees as "excessive" and "unreasonable" (Exhibit B, p. 5, ¶ 10) despite the excellent result obtained by Class Counsel in this settlement, and the fact that the benchmark in the Ninth Circuit is 25% and Class Counsel only seek 22.5% of the Settlement Fund. Other courts in the Southern District have awarded 25% of the Settlement Fund as attorneys' fees or higher. *See Gutierrez v. Barclays Group*, No. 10-CV-01012-DMS-BGS (S.D. Cal. March 12, 2012) (Judge Sabraw awarded attorneys' fees in a TCPA class action in the amount of $1,580,000, representing the 25% benchmark); *see also Langille v. EMC Corporation, Inc.*, No. 07-CV-0651 (S.D. Cal. July 9, 2008) (Judge Huff awarded 25% percent of settlement fund); *see also Graham et al. v. Overland Solutions, Inc.*, No. 10-CV-00672-BEN-BLM (S.D. Cal. Jan. 30, 2013) (Judge Benitez awarded 30% in attorney's fees); *Adams v. AllianceOne Receivables Management, Inc.*, Case No. 08-CV-0248- JAH-WVG (S.D. Cal. Sept. 28, 2012)

---

4-5), yet Morgan provides absolutely no basis for this objection, which unfounded and meritless objection should be overruled. Claims administration expenses are often paid from the settlement fund in similar class actions. *See* Exhibit O, p. 2; and Exhibit P, p. 1.

[16] Class Counsel unilaterally reduced the requested attorneys' fees from 25% (*see* Settlement Agreement, § 6.01) to 22.5% (*see* Plaintiffs' Motion for Attorneys' Fees, Costs of Litigation and Incentive Payments, Dkt. 56-1, p. 1, lns. 6-10), thus allowing for an additional $427,500 to go to the Class Members.

[17] *See In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) (declining to address objections that are non-specific and unsupported by evidence or authority).

Kazerouni Law Group, APC
Santa Ana, California

(Judge Houston awarded 30% in attorneys' fees). As Dunmore's objection to the attorneys' fees is based on his baseless objections regarding notice and monetary compensation to the Class, Dunmore's objection to the requested attorneys' fees is also meritless, contrary to Ninth Circuit authority, and should be overruled.

Thus, the objections to the requested attorneys' fees should be overruled.

### E.   The Objections Regarding Monetary and Non-Monetary Compensation Should Be Overruled

#### 1.   <u>Monetary Compensation</u>

All settlements are a compromise, and the $17,100,000 Settlement Fund here is certainly fair, reasonable and adequate. All Class Members would unquestionably want to recover more money for their claims; that is only human nature. But this Settlement Fund of $17,100,000 was negotiated at arms-length after more than two years of litigation, and mediated with experienced counsel over mediation sessions presided by the Justice Weiner (Ret.) and Justice Papas (Ret.). It should be remembered that this is the second largest monetary settlement ever obtained in a TCPA action, second only to the *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413, *4 (W.D. Wash. Sept. 17, 2012), which provided for a $24,150,000 settlement fund.

Objector Thomas V. Krajenta asserts that the settlement is inadequate, yet provides absolutely no argument for the inadequacy of the settlement, and does not indicate what aspect of the settlement is inadequate. Such unfounded objection is not a valid basis for denying final approval of class action settlement, since general dissatisfaction with the outcome of a case, without factual or legal substantiation, should carry little weight in assessing the fairness and adequacy of the settlement. *See In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) (declining to address objections that are non-specific and unsupported by evidence or authority). Also, an unsupported objection to the merits of this action is not a sufficient ground to withhold any

Kazerouni Law Group, APC
Santa Ana, California

recovery to the remainder of class members. *In re Enron Corp.*, 586 F. Supp. 2d at 804. Also, this objection was not filed with the Court as required by the Court's Order Granting Preliminary Approval, ¶ 12, and therefore should be overruled on this ground alone.

Objector Jada Longchamp (including her husband Herard Longchamp) objects on the grounds that the settlement payments do not compensate them for what they characterize as "automated harassment calls by Wells Fargo…" (Exhibit A, ¶ 2).  The Longchamps may believe that the settlement does not compensate them for "years of harassment," but this class action settlement is not a harassment case – this case is about automated telephone calls that allegedly violated the TCPA, regardless of whether they constitute harassment. Indeed, the relevant section of the TCPA is content-neutral and applies regardless of the purpose of the call, unless it is for an emergency purpose (*see* 47 U.S.C. § 227(b)(1)(A)(iii)).

The Longchamps ask the Court to "reconsider the very small amount originally offered in the settlement," but apparently based their opinion of the amount of settlement on their personal interactions with Wells Fargo, including those outside of the allegations in this case which seem to implicate other collection or foreclosure issues. The Longchamps appear upset with Wells Fargo for not "working with [them] after [they] lost one income" and their "payments still remain[ed] the same as when [they] had two incomes." *Id*. These unrelated experiences with Wells Fargo are not a valid basis to object to the adequacy of the settlement in this case, especially since this is the second largest approved monetary TCPA settlement in the nation known to Class Counsel, to date. The largest settlement was in *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413, *4 (W.D. Wash. Sept. 17, 2012), which provided for a $24,150,000 settlement fund, where the individual payment to class members in that case was actually smaller than in this case, only around $20.00 (*see* Exhibit Q, p. 9, ln. 21).

The individual recover of approximately $85 by each Class Member in this case is more than three times the individual recovery in *Sallie Mae*.

If the Longchamps truly believe that the settlement payment of close to $85 dollars for only having to take a quick moment to submit a claim for does not make up for what they call years of harassment calls, then the Longchamps could have requested exclusion to bring their own lawsuit, but they did not do so.

Objector Morgan objects to the monetary award to Class Members on the basis that "it is inconceivable that the Defendant was unaware of" the TCPA when it made the calls at issue in this action, and should therefore have settled for treble damages of $1,500 per call. *See* Exhibit C, pp. 3:28-4:3. Such objection is unrealistic and misunderstand the TCPA as well as the facts and risks associated with this case. It is entirely possible that Defendant could have been aware of the TCPA and still not have "intentionally" violated the TCPA by making calls to Class Members. What constitutes sufficient "intent" for treble damages under the TCPA is undecided by the case law.[18]

Even if Wells Fargo has intentionally violated the TCPA on every single call to Class Members, which is unlikely given the fact that the sampling procedure regarding evidence of prior express consent revealed Wells Fargo's intent obtain prior express consent to make at least some of the calls, no defendant would settle a class action lawsuit for the maximum statutory damages. Settlement entails a degree of compromise between the parties. Thus, it is unrealistic for Wells Fargo to have settled for $2.25 billion dollars as Objector Morgan would

---

[18] *See J2 Global Communs., Inc. v. Blue Jay, Inc.*, 2009 U.S. Dist. LEXIS 111609, 19-20 (N.D. Cal. Aug. 4, 2009) ("[T]here appears to be a split in authority as to what predicate conduct is required before a treble damages aware may be issued. Some courts have held that a defendant must have sent the unsolicited communication knowing or having reason to know that such conduct was a violation of the law (*i.e.*, the TCPA) before treble damages may be awarded. Other courts have held that a defendant need only have willfully or knowingly sent the unsolicited communication -- *i.e.*, knowledge of the law is not necessary.").

have liked (*see* Exhibit C, p. 4, lns. 12-15), especially since a court has found that the TCPA does not require $500 per violation, but that the court may award "up to" $500 per call, and awarded 7 cents per violation as equitable for a fax case, given the amount of paper and ink used for each fax. *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892, 900-901 (W.D. Tex. 2001). A similar argument for $500 per claim was recently rejected by Judge Miller as unconvincing in *Jiffy Lube International, Inc. Text Spam Litig.*, Case No. 11-MD-2261-JM (JMA), p. 10, ¶ 25 (S.D. Cal. Feb. 20, 2013).

Morgan also questions the judgment of this Court when asking in an apparently sarcastic tone: "[a]nd the Court considers approving Wells Fargo's offer of $17.1 million to avoid an exponentially higher punitive amount as sufficient to curb future violations of federal law?" As recognized by this Court at the preliminary approval stage, "the settlement that each class member will receive is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainy of continued litigation…" Order Granting Preliminary Approval, p. 11:16-18. Plaintiffs explained in their Fee Brief how this settlement is likely to deter future misconduct by Wells Fargo, benefit compliant competitive businesses and Class Members, as well as benefit society at large. *See* Dkt. No. 56, Sections II and III.[19] This settlement is an excellent settlement and the second largest approved monetary TCPA settlement in the nation known to Class Counsel to date, second only to the *Arthur, et al. v. Sallie Mae, Inc.*, settlement of $24,150,000 (No. 10-CV-0198-JLR (W.D. Wash)).

Morgan's argument that the Class Members would be better off filing their own lawsuits fails to consider that the TCPA does not provide for the recovery of attorneys' fees and that it would likely be extremely difficult to find an attorney to

---

[19] *See Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012) ("regardless of the number of settlement class members who file claims, Defendants submit the same amount into the settlement fund. Thus, Defendants are sufficiently deterred from future (alleged) TCPA violations...").

Kazerouni Law Group, APC
Santa Ana, California

Kazerouni Law Group, APC
Santa Ana, California

represent a single Class Member on an individual basis for a maximum recovery of $500 for a violation. Additionally, this belief is not shared by the Class Members, as only 45 Class Members opted out of the settlement.

In cases where Class Members received multiple calls, those Class Members had the opportunity to opt-out and file their own lawsuit. It is telling in this lawsuit that only 45 Class Members actually opted out of the settlement. It is important to note that courts often view statutory damages claims with alarm because of the overwhelming liability exposure they can create when consolidated in a class action. *See, e.g., Parker v. Time Warner Entm't Co., LP*, 331 F.3d 13, 22 (2d Cir. 2003); *see also In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-51 (N.D. Ill. 2002), appeal dismissed, 346 F.3d 734 (7th Cir. 2003) (declining to certify a class on the ground that the available statutory damages would be "grossly disproportionate" to any actual harm suffered by the plaintiffs).

Respectfully, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery [does] not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555, at *29 (C.D. Cal. June 10, 2005).

Objections regarding the sufficiency of the Settlement Fund "offer nothing more than speculation about what damages, might have been won had they prevailed at trial." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). The amount of the settlement results from reasonable compromise among the parties, and is well in line with other TCPA settlements approved by other courts.

There is a strong judicial policy in favor of settlement in the class action

Kazerouni Law Group, APC
Santa Ana, California

context. *Fulford v. Logitech, Inc.*, No. 08-CV-02041 MMC, 2010 U.S. Dist. LEXIS 29042, at *5 (citing *Manual for Compl. Litig.*, Fourth, § 30.42 (2004) ("[T]he interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.") The very nature of a settlement is compromise in the interest of expeditious and cost-effective conclusion of the litigation. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1291 (9th Cir. 1992), ("[I]t is the very uncertainty in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.") (quotations and citations omitted).

Furthermore, Plaintiffs' case involved many risks, which could have resulted in recovering nothing. *See, e.g., White v. Experian Information Solutions, Inc.,* No. SACV-05-1070 DOC (MLGx), 2011 WL 2972054, at *8 (C.D. Cal. July 15, 2011) ("Courts . . . should tread cautiously when comparing the amount of a settlement to speculative figures regarding what damages, might have been won had [plaintiffs] prevailed at trial"). If billions had been obtained at trial, Plaintiffs would have faced the "ruinous liability" arguments. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) ("[w]e reserve judgment as to whether a showing of, ruinous liability would warrant denial of class certification" in an action brought under a federal consumer statute).

In any event, what should not happen here is that this Court review the merits of the case based upon an objection challenging its sufficiency. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits."). Indeed, "[c]ourts have split on class certification in TCPA cases, increasing the risk of maintaining the class action through trial." *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413, *4 (W.D. Wash. Sept. 17, 2012).

In fact, in this case, the parties conducted a sampling for evidence of prior

Kazerouni Law Group, APC
Santa Ana, California

express consent and discovered that Wells Fargo did have evidence of prior express consent to make some of the calls to Class Members. *See generally* Order Granting Preliminary Approval, p. 8, lns. 19-24. Therefore, at least some of the Class Members who filed timely and valid claims would not be able to prevail in an individual lawsuit because Wells Fargo would likely be able to establish the defense of prior express consent.

Class Members will receive approximately 17% of their $500 in statutory damages by merely filing a claim form, which represents a windfall to the Class Members, as they did not have to seek and obtain legal representation, file a complaint in court, engage in any discovery or take on the risk of losing their claim or incurring costs of litigation. Plaintiffs note that as of May 1, 2013, the filing fee in federal court is now $400, and when added to the cost of service of process, the individual consumer would be lucky to break even on a successful individual TCPA action. In fact, the Class Members living in the state of New York are receiving a monetary award even though New York does not permit TCPA class action to proceed in its jurisdiction. *See Rudgayzer & Gratt v. Cape Canaveral Tour and Travel, Inc.*, 22 A.D.3d 148 (2005); *Rudgayzer & Gratt v. LRS Communications, Inc.*, 3 Misc.3d 159 (2003).

Objector Dunmore objects to the monetary aspect of the settlement as being inadequate based upon his proposed mathematical formula for determining the value of a class action (*see* Exhibit B, p. 3, ¶ 5); however, such formula is inherently flawed and does not demonstrate that the class action is anything but fair and adequate. First, it presumes that none of the Class Members gave prior express consent to be called on their cell phones by Wells Fargo, which Class Counsel know is not the case after conducting sampling on the issue. Second, such formula ignores the real risks of litigation, as explained in Plaintiff's Fee Brief (Dkt. No. 56), such that there is not necessarily a 50/50 change of prevailing at trial as Dunmore presumes. Both Class Counsel and Wells Fargo are aware of the

Kazerouni Law Group, APC
Santa Ana, California

1  risks of trial, and have opted to settle this action after mediation sessions before

2  Justice Weiner (Ret.) and Justice Papas (Ret.). *See* Settlement Agreement, § 1.04.

3  These risks were evaluated by the parties as well as two retired judges to arrive at

4  a settlement value.

5      Dunmore also argues, without basis, that the settlement is release driven

6  rather than damages driven. *See* Exhibit B, p. 3, ¶ 6. However, as explained above,

7  it is simply not practicable to obtain a "[$]2.168 billion dollar" settlement in this

8  case (*id*.). This settlement is a compromise between the parties' positions, and an

9  excellent settlement in terms of the size of the Settlement Fund and the individual

10  monetary award to Class Members. *See Adams v. AllianceOne*, Case No. 08-CV-

11  0248-JAH (S.D. Cal.) ($40 per claim); *Sarabi v. Weltman, Weinberg & Reis Co.,*

12  *LLP*, No. 10-CV-1777 AJB NLS (S.D. Cal.) ($48.67 per claim); *Lemieux v. Global*

13  *Credit and collection Corp.*, No. 08-CV-01012-IEG (S.D. Cal.) ($70 per claim).

14      Therefore, those objections to the amount of settlement and amount per

15  claim should be overruled.

16        **2.   Non-Monetary Compensation**

17      Objector Morgan objects to the non-monetary aspect of the settlement as

18  "illusory" (Exhibit C, p. 6, lns. 17). Morgan is simply incorrect that the settlement

19  "does not benefit the class of people injured by Wells Fargo's previous violations

20  of the law" (*id*. at p. 6, lns. 17-18), since the new procedures adopted by Wells

21  Fargo do benefit Class Members by helping to prevent continued autodialed

22  and/or prerecorded calls without prior express consent.[20] Thus, Wells Fargo's new

23  procedures, adopted in large part during the course of this action, do benefit Class

24  Members. These procedures also benefit individuals who are not a part of the

25  _____

26  [20] Wells Fargo's new procedures will ensure compliance with the TCPA by eliminating calls made to cellular telephone numbers unless the account-holder's

27  servicing record is systematically coded to reflect the borrowers prior express consent to receive autodialed, artificial and/or prerecorded voice calls on their cell

28  phone. *See* Agr., § 5.04; Order Granting Preliminary Approval, pp. 10:25-11:2.

Class receive or may receive autodialed and/or prerecorded calls from Wells Fargo by helping to eliminate such calls without prior express consent. Therefore, Morgan's argument is contradictory, as he admits later on that the new procedures "affect[] non-class members and class-members equally" (*id*. at p. 6, lns. 18-19), which means that the new procedures do in fact benefit Class Members according to Morgan's own argument.

Objector Morgan appears fixated on the idea that "[p]rospective injunctive relief does not compensate members for past injuries" (*id*. at p. 6, lns. 22-23), but even if that were true, the Class Members who filed timely and valid claims will receive monetary compensation as explained above. They will also benefit from the new procedures adopted by Wells Fargo, which is an added bonus that is not required for final approval of this class action settlement.

## F.   The Objections Regarding The Requirements of Fed. R. Civ. P. 23(a) Should Be Overruled

In the "Introduction" section of Morgan's objection, Morgan objects broadly to "commonality, predominance, superiority and adequacy of class counsel and class representatives under Rule 23" (Exhibit C, p. 1, lns. 5-9), yet Morgan fails to address the requirements of Fed. R. Civ. P. 23 in his objection, which leads Class Counsel to believe that this objection is a canned objection slightly modified to suit Morgan's purposes for this case. This Court has already appropriately preliminarily approved the class action settlement, and based upon Plaintiffs' detailed analysis of the Rule 23 requirement in their Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 38), Morgan's objections to the Rule 23 requirement is wholly unfounded. Therefore, Morgan's objection to the requirements under Rule 23 should be overruled.

## G.   The Objections Regarding *Cy Pres* Should Be Overruled

Objector Morgan argues that "Class counsel impermissibly favors *cy pres* over class members" (Exhibit C, p. 5:4-5:10). However, there is no basis for this

Kazerouni Law Group, APC
Santa Ana, California

Kazerouni Law Group, APC
Santa Ana, California

1  claim, as this settlement is not a *cy pres* settlement. Under the settlement, monies

2  will only be given to a *cy pres* recipient if, after a pro rata distribution to class

3  members – where every possible dollar in the Settlement Fund is distributed to

4  class members – a certain amount of money remains in the settlement fund solely

5  because of uncashed settlement checks.

6      This provision was meant only to provide some finality to the settlement

7  process; and the alternatives to a *cy pres* recipient would be a second round of

8  distribution to class members; the money escheats to the state; or the money

9  reverts to defendant. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904

10  F.2d 1301, 1307 (9th Cir. 1990). The issue of *cy pres* distribution, however, is

11  premature until it is determined that there are unclaimed funds. *Rodriguez v. West*

12  *Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (finding *cy pres* distribution

13  "becomes ripe only if entire settlement fund is not distributed to class members"

14  and declining to determine propriety of *cy pres* at that time).

15      Objector Morgan calls for a second round of distribution to the Class

16  Members, but this would simply not be economically feasible in this case, given

17  the small amount of money that would likely be available (most likely less than

18  $10,000 or approximately 117 settlement checks), and the cost of distribution to

19  120,547 Class Members who filed valid claims. Morgan's position would actually

20  lower the amount that each Class Members would receive by unnecessarily

21  increasing claims administration costs in order to distribute what would likely be a

22  negligible amount of uncashed settlement checks. Even the case law cited by

23  Morgan cuts against his position, such as the Third Circuit decision articulating

24  that "direct distributions to the class are preferred over *cy pres* distributions,"

25  Exhibit C, p. 5, lns. 11-12 (quoting *In re Baby Products Antitrust Litig.*, 708 F.3d

26  163, 173 (3d Cir. 2013)), as direct distributions are to be made to the Class

27  Members, save the few, if any, uncashed settlement checks. Also, Morgan

28  acknowledges that his objection is premature when stating, "[t]t remains to be

seen whether it will be economically feasible to further distribute settlement funds to the class members" (Exhibit C, p. 5, lns. 22-23).

It is reasonable to assume that Class Members who took the time to file a timely claim will put forth the effort to cash their settlement check. Escheating to the state (or federal government) provides no nexus to the claims and objectives of this litigation. And reversion to Wells Fargo is not an option that benefits any class member. Plaintiffs have made the most economically sensible choice here, in choosing to use a *cy pres* recipient to be agreed upon by the parties and approved by the Court when and if the need arises. Thus, Plaintiffs are not favoring a *cy pres* recipient over the Class Members, quite the contrary.

Objector Morgan also objects that the possible contingent *cy pres* recipient has not yet been identified. *See* Exhibit C, p. 5:24-6-10. However, Morgan has provided absolutely no case law or even secondary authority for the proposition that a possible contingent *cy pres* recipient, such as in this case, must be identified in the notice to class members. The *cy pres* recipient, if any, must be approved by this Court if there are uncashed checks. Class Counsel will address this issue with the Court when and if the need arises.

The *cy pres* provision does not affect the Class Members, which means that there was no need for a possible contingent *cy pres* recipient to be identified in the notice to the Class Members, especially since it would be impossible to obtain a consensus from the Class Members as to a possible appropriate *cy pres* recipient and because a possible *cy pres* payment will not effect their recovery. The Objectors have provided no case law to support a contrary conclusion. In fact, it is the Court that stands as a fiduciary and has the responsibility to approve an appropriate *cy pres* recipient (which is a legal issue) if one becomes necessary in this case. This Court will decide whether there is a sufficient nexus to Class Members or the harms to the Class Members. This Court will provide the necessary assurance that the *cy pres* recipient, if any, will be appropriate.

Kazerouni Law Group, APC
Santa Ana, California

Moreover, Morgan's argument that the "true value of the common fund" cannot be determined without identification of a possible contingent *cy pres* recipient is baseless and misses the mark, as there will only be *cy pres* if there are uncashed checks. The monetary value of the settlement has already been determined – there is a Settlement Fund of $17,100,000. Each Class Member who filed a valid claim will receive a portion of the Settlement Fund, and for those Class Members who, for whatever reason do not cash their settlement checks on time, they have essentially given up their right to those funds due to their own inaction.

Should the need to select a *cy pres* recipient arise, Class Counsel will propose a *cy pres* recipient to be approved by the Court, but at this time anticipates selecting the National Consumer Law Center ("NCLC"), *see* http://www.nclc.org/.[21] The NCLC has even produced a treatise concerning the TCPA. *See* http://shop.consumerlaw.org/fdl.aspx. NLCL is a frequent recipient of *cy pres* awards, as their "work covers a broad range of issues, including consumer protection, unfair and deceptive acts and practices, privacy rights, civil rights, and employment." *See* http://www.nclc.org/about-us/about-us.html.

Therefore, the objections regarding *cy pres* should be overruled.

## H.   The Objections Regarding Conflict of Interest Should Be Overruled

Objector Morgan objects to the adequacy of Class Counsel in what he called "indicia of self-dealing" in this case. *See* Exhibit C, p. 3, lns. 14-15. However, Objector Morgan provides no evidence or even argument to support such false claim. Objector Morgan knows that there is no indicia of self-dealing in this case, as evidenced by his implied acknowledgment of arms' length negotiations between the parties and overseen by two retired judges and the Court (*see* Exhibit C, p. 2, lns. 19-25) and the fact that the Court have already found the

---

[21] Class Counsel reserve the right to select a different *cy pres* recipient at a later date by ex parte motion.

Kazerouni Law Group, APC
Santa Ana, California

adequacy of Class Counsel and that there is no evidence of self-dealing (*see* Order Granting Preliminary Approval, p. 5, lns. 1-21). Therefore, this objection is clearly without merit and should be overruled.

## I.   The Objections Regarding The Claims Filing Procedure Should Be Overruled

Objector Jarod Weatherford's sole objection to settlement is that Class Members were required to submit a claim form in order to receive a monetary payment from the Settlement Fund.  Objector Weatherford states that he "object[s] to the part of the Settlement that states "I Jarod Weatherford or any other Class Member must submit a Settlement Claim to the Settlement Administrator to request a share of the Settlement Fund." (Exhibit E). It seems that Objector Weatherford believes that he is entitled to a monetary award of approximately $85 without fulfilling his basic obligation to receive it, which entails submitting a claim form that takes about a minute to submit online and close to the same amount of time to call the toll-free telephone number and provide the required information.

Objector Weatherford indicates in his objection letter that it is somehow proper to submit a free drafted letter to count as both a claim and an objection "as done in *Liguori and Hofman v. Wells Fargo & Co., Wells Fargo Bank, N.A., North Star Mortgage Guaranty Reinsurance Co.*",[22] which Objector Weatherford asserts "were notified and paid by doing nothing." *See* Exhibit E. Although the *Liguori* case was structured so as to provide monetary payment without the need to submit a claim form (*see* http://wellsfargopmisettlement.com/q_a.php), the class action in this case includes Class Members whose name and address information was not in Wells Fargo's database (i.e., the Unidentified Numbers), which meant that payment could not be sent to them without necessary information made available to the Claims Administrator for those Class Members. Also, without verifying the address

---

[22] It appears that Objector Weatherford is referring to *Liguori v. Wells Fargo & Co. et al.*, Case No. 08-CV-00479 (E.D. Penn.)

of the Class Members, which is done through the claims submission process, payments would not necessarily reach the intended recipient if they were sent out without a procedure for filing a claim form. Objector Weatherford could have easily submitted a timely claim form; however, it seems as though this settlement was an afterthought for Weatherford, since his objection was not filed with the Court, which is clear grounds for overruling the objection.

Strangely, rather than submit a proper and timely claim form by one of the several methods available in this settlement, Objector Weatherford drafted a letter to act as both his claim and objection. This procedure is improper, as submitting a letter to Class Counsel was not one of the methods to submit a claim. Submitting the letter to Class Counsel without filing the objection with the Court was also improper. It was also untimely, having been received by Class Counsel on June 6, 2013, which was a day after the deadline. Thus, the Objection by Jarod Weatherford is meritless and should be overruled.

## IV.   CONCLUSION

After more than two years of litigation, Defendants have agreed to make available $17,100,000 to settle the claims of the Class Members in what is the second largest approved monetary TCPA settlement in the nation, to date. The objectors present no grounds for why this settlement is not adequate, fair and reasonable. Respectfully, Plaintiffs request that this Court overrule all of the objections and grant final approval.

Respectfully submitted,

Dated:  June 13, 2013         **Kazerouni Law Group, APC**

By: _/s/Abbas Kazerounian_____
Abbas Kazerounian

///

///

Kazerouni Law Group, APC
Santa Ana, California

Dated:  June 13, 2013                    **Hyde & Swigart**

                                        By:_/s/Joshua Swigart_____
                                            Joshua B. Swigart

Dated:  June 13, 2013                    **Law Offices of Douglas J. Campion, APC**

                                        By: _/s/ Douglas J. Campion___
                                            Douglas J. Campion

                                        Douglas J. Campion, Esq. (SBN: 75381)
                                        doug@djcampion.com
                                        409 Camino Del Rio South, Suite 303
                                        San Diego, CA 92108-3507
                                        Telephone: (619) 299-2091
                                        Facsimile: (619) 858-0034

**Kazerouni Law Group, APC**
Santa Ana, California