SCOTT J. HYMAN (State Bar No. 148709)
sjh@severson.com
ERIC J. TROUTMAN (State Bar No. 229263)
ejt@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants
WELLS FARGO BANK, N.A. and THE
FEDERAL HOME LOAN MORTGAGE
CORPORATION, a/k/a FREDDIE MAC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO MALTA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE FEDERAL HOME LOAN MORTGAGE CORPORATION a/k/a FREDDIE MAC, and WELLS FARGO HOME MORTGAGE, INC.,<br><br>Defendant. | Case No. 3:10-cv-01290-BEN-NLS<br>Assigned to: Hon. Roger T. Benitez<br>Referred to: Mag. Judge Nita L. Stormes<br><br>**- *CLASS ACTION* –**<br><br>**WELLS FARGO'S RESPONSE TO OBJECTION OF GORDON MORGAN**<br><br>Date:      June 19, 2013<br>Time:     9:00 a.m.<br>Ctrm.:    4B<br><br>Action Filed:   June 16, 2010 |

# I.
# INTRODUCTION

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") submits the following response to the objection filed by attorney Timothy Hannigan on behalf of class member Gordon Morgan ("Objector").

Specifically, Wells Fargo wishes to address the argument that the settlement is inadequate based upon a comparison of the settlement fund against the potential recovery by class members.[1] Objector compares the total value of the settlement fund ($17.1 million), less projected expenses and attorneys' fees to be awarded by the Court, against the "potential fines" which might be awarded either in a certified class action or a series of individual lawsuits. Objector pegs the latter number at $2.25 billion. He calculates this amount by taking the total number of Wells Fargo customers called on their cell phones and multiplying that number by the statutory penalty of $500 recoverable under section 227(c)(5)(B) of the TCPA.

Wells Fargo agrees that it is this Court's right and obligation to determine the adequacy of the proposed settlement, and that is appropriate to weigh the settlement against the potential recovery if plaintiffs were to prevail at trial. However, Objector's analysis is both overly simplistic and factually incorrect.

# II.
# THE POTENTIAL RECOVERY BY CLASS MEMBERS IS NOT $2.25 BILLION

First, as a factual matter, Objector simply misapprehends what the class might recover if it were to prevail at trial.

It is true that Wells Fargo has identified a universe of approximately 4.5 million customers whose cellular phone numbers were called using an autodialer.

---

[1] Morgan asserts various other objections which are being addressed by plaintiffs/class representatives in a separate filing.

1 However, the potential recovery by members of the class cannot be calculated by
2 simply multiplying the number of class members by the amount of the statutory
3 penalty.
4      The reason for this is that the TCPA does not prohibit all autodialed calls to
5 cell phones but, rather, only those made without express consent.  The class includes
6 many, many Wells Fargo customers who gave such consent, at the time they entered
7 into the credit relationship with Wells Fargo, in response to campaigns Wells Fargo
8 conducted to obtain consent, on Wells Fargo's website, in the course of
9 communications with Wells Fargo personnel, and otherwise.  As explained in the
10 parties' preliminary approval briefing, a sampling of class member accounts was
11 conducted as part of their settlement negotiations.  That sampling revealed that a
12 great majority of class members provided the requisite consent to Wells Fargo, and
13 that evidence of this consent can be found in the available account records.
14      Determining consent or absence of consent with respect to class members
15 would require individualized evidence.  It is the need for such individual evidence
16 on the crucial factual issue in the case, consent, which has caused courts around the
17 country to deny class certification in TCPA cases in the context of an opposed
18 motion.  *See, e.g.*, *Gene and Gene LLC v. Biopay, LLC*, 541 F.3d 318 (5th Cir.
19 2008); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668 (D. Wyo.
20 2011); *Hicks v. Client Servs., Inc.*, No. 07-61822, 2008 WL 5479111, at *7 (S.D.
21 Fla. Dec. 11, 2008); *Levitt v. Fax.com*, No. WMN–05–949, 2007 WL 3169078, at
22 *3 (D. Md. May 25, 2007); *Kenro, Inc. v. FaxDaily, Inc.*, 962 F. Supp. 1162, 1169
23 (S.D. Ind. 1997); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229,
24 236-238 (S.D. Ill. 2011)  (finding that TCPA class action would simply be
25 "unmanageable" given issues of individual consent); *see also Fricko, Inc. v. Novia*
26 *BRS Enterprises, Inc.*, No. 10–10626, 2011 WL 3329480 (E.D. Mich. Aug. 3, 2011)
27 (similar).
28      Objector's supposition that the class would recover more than $2 billion if

these claims were tried is simply incorrect. The precise amount of the potential recovery is unknown, and unknowable—at least without conducting a full-scale trial as to the consent provided by each class member. But all of the available information indicates that the potential recovery is certainly much less than what Objector supposes, and is very likely a small fraction of that amount.

### III.

### THE ADEQUACY OF A SETTLEMENT IS NOT DETERMINED BY SIMPLY COMPARING SETTLEMENT AMOUNT AGAINST POTENTIAL RECOVERY

Just as importantly, Objector is mistaken in suggesting that this Court's task in assessing the adequacy of the settlement is simply to compare the settlement amount with the amount of the potential recovery (however it might be computed). The analysis is not so simple.

Litigation involves risk. The risks in this case, from the perspective of class members, are substantial. As explained in the papers submitted by the parties in support of their motion for preliminary approval, Wells Fargo has long had a robust program of obtaining express consent from customers to receive autodialed calls on their cell phones.[2] Evidence of Wells Fargo's practices and individual class members' consent would be admitted at trial, and would certainly result in no recovery by a substantial majority of class members. Further, there is a grave risk, from the class's perspective, that class certification would be denied altogether, resulting in no recovery whatsoever by any class member.

---

[2] Objector suggests, without explanation, that Wells Fargo began "flouting" the TCPA in 2006. Objection, 3:27-28. The claim is untrue. Wells Fargo has long been aware of this statute and taken aggressive steps to remain in compliance with it, even as the statutory requirements have been the subject of judicial decisions and declaratory rulings. Thus, Wells Fargo's history of taking measures to comply with the TCPA stands in contrast to that of other businesses which allegedly were unaware of the statutory requirements or took inadequate steps to remain in compliance with them.

All of these risks were taken into consideration by the parties in agreeing to the settlement presently before the Court.  Class counsel have extensive experience in litigating TCPA cases and were obviously aware of the risk that the class could recover little or nothing, whether by virtue of denial of class certification or on the merits.  From the perspective of Wells Fargo, it took into consideration its business practice of obtaining consent, the individual evidence which would be necessary to adjudicate the issue of consent at trial, the many decisions denying class certification in TCPA cases, and the strong showing Wells Fargo would be able to make regarding the merits of plaintiffs' claims if the matter were not settled.

Wells Fargo is confident that this Court likewise took into consideration these risk factors in granting preliminary approval to the settlement.  Indeed, before granting preliminary approval the Court requested additional information regarding the amount of potential recovery, which was provided in plaintiffs' supplemental brief filed on December 14, 2012 [DE #45].

As explained by plaintiffs in that brief, potential recovery must be discounted by risk in determining the adequacy of a class settlement.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("Appellants offer nothing more than speculation about what damages 'might have been' won had they prevailed at trial. This court has aptly held that 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators . . . .  Thus, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'") (citation omitted); *cf. Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 629 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.") (citation omitted).

The Ninth Circuit has repeatedly rejected objections—such as this one—which ignore the risks of litigation or are premised on a simplistic comparison of *potential* recovery against dollars actually offered in settlement:

> As an initial matter, we reject Objectors' argument insofar as it stands for the proposition that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award. While a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation . . . it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action. Not only would such a requirement be onerous, it would often be impossible—statutory or liquidated damages aside, the amount of damages a given plaintiff (or class of plaintiffs) has suffered is a question of fact that must be proved at trial. Even as to statutory damages, questions of fact pertaining to which class members have claims under the various causes of action would affect the amount of recovery at trial, thus making any prediction about that recovery speculative and contingent.

*Lane v. Facebook, Inc.,* 696 F.3d 811 (9th Cir. 2012) (emphasis added); *see also Rodriguez v. West Publishing Corp.* 563 F.3d 948, 965 (9th Cir. 2009) ("We are not persuaded otherwise by Objectors' further submission that the court should have specifically weighed the merits of the class's case against the settlement amount and quantified the expected value of fully litigating the matter . . . . We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . and have never prescribed a particular formula by which that outcome must be tested.") (citations omitted).

For these reasons, the Court should measure the adequacy of the settlement against the significant risk factors described above, and should confirm its preliminary conclusion that the amount being offered in settlement is fair, reasonable and adequate for members of the class.

1  DATED:  June 14, 2013	SEVERSON & WERSON
   	A Professional Corporation

   	By:  ___*s/ Eric J. Troutman*___
   	         Eric J. Troutman

   	Attorneys for Defendants
   	WELLS FARGO BANK, N.A. and THE FEDERAL HOME LOAN MORTGAGE CORPORATION, a/k/a FREDDIE MAC