**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

**ALBERTO MALTA, Individually and On Behalf of All Others Similarly Situated,**

**Plaintiff,**

**vs.**

**THE FEDERAL HOME LOAN MORTGAGE CORPORATION a/k/a FREDDIE MAC; WELLS FARGO HOME MORTGAGE,**

**Defendants.**

**Case No.:** 10-cv-01290-BEN-NLS

**PLAINTIFF'S MOTION FOR A SECOND DISTRIBUTION OR, ALTERNATIVELY, CY PRES DISTRIBUTION FROM THE RESIDUAL SETTLEMENT FUND**

**Date:** February 21, 2017
**Time:** 10:30 a.m.
**Ctrm:** 5A
**Judge:** Hon. Roger T. Benitez

**[Filed concurrently with Declaration of Lisa Mullins and Declaration of Jennifer M. Urban]**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## I. INTRODUCTION

Plaintiff ALBERTO MALTA ("Plaintiff") submits this motion to respectfully request the Court issue either: (1) a second distribution of the residual balance of the approved settlement fund; or, (2) a *cy pres* distribution of the same to the Samuelson Law, Technology & Public Policy Clinic ("SLC"). Plaintiff makes this request as a result of checks that were not cashed after the initial distribution.

On June 21, 2013, the Court approved the terms of the Settlement Agreement in its Final Judgment and Order of Dismissal with Prejudice ("Final Order"), Dkt. No. 91, and a modified order on June 28, 2013, Dkt. No. 96. Pursuant to the terms of the Settlement Agreement (Dkt. No. 38-3) and the Court's Final Order, each claimant was issued a settlement check. However, not all settlement checks were cashed, resulting in a balance of $438,823.55 remaining in the settlement fund. Declaration of Lisa Mullins ("Mullins Decl."), ¶ 5, filed herewith. Accordingly, Plaintiff proposes a second distribution of the remaining funds to the Class or, in the alternative, a *cy pres* distribution.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This action was filed on June 16, 2010, for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). Dkt. No. 1. Plaintiffs Alberto Malta and Danny Allen, Jr. filed a First Amended Complaint on May 21, 2013 (Dkt. No. 59), alleging, on behalf of themselves and a putative class, that defendant The Federal Home Loan Mortgage Corporation and Wells Fargo Home Mortgage (the "Defendants") sent automated text messages to non-customer's cellular telephones using an automated telephone dialing system without prior express consent. *Id.* at ¶¶ 6-46. An Answer was filed on August 10, 2010. Dkt. No. 8.

On February 5, 2013, the Court preliminarily approved the Parties' class action Settlement Agreement. Dkt. No. 48.

On June 21, 2013, the Court issued its Final Order Approving Class Action Settlement. Dkt. No. 91. On June 28, 2013, the Court issued an order entitled Modification to Final Judgment and Order of Dismissal with Prejudice ("Modified Final Order"). Dkt. No. 96.

Pursuant to this Court's Final Order and Modified Final Order, the claims administrator, ILYM Group, Inc. ("ILYM"), issued each of the 120,700 claimants a settlement check. Mullins Decl., ¶ 4. Of the 120,700 checks issued for each claimant, 115,144 checks were cashed, meaning that 5,556 checks were not cashed, leaving a balance of $438,832.55 in the settlement fund as of March 7, 2016, which includes accrued interest. *Id.* at ¶¶ 4-5. ILYM estimates that it will costs approximately $85,000 to complete a second distribution of the settlement fund, which leaves an estimated $353,823.55 remaining for a second distribution to claiming class members. *Id.* at ¶ 6.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## III. THE COURT SHOULD ISSUE A SECOND DISTRIBUTION OR, IN THE ALTERNATIVE, A *CY PRES* DISTRIBUTION FROM THE REMAINDER OF THE SETTLEMENT FUND

The Court retains its traditional equitable powers in determining the method in which to distribute settlement funds. *Powell v. Georgia-Pacific Corp.*, 843 F. Supp. 491, 495 (W.D. Ark. January 31, 1995); *see also Beecher v. Able*, 575 F.2d 1010 1016 (2d Cir. 1978); *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1396, 1402 (E.D. N.Y. 1985). As such, Plaintiff requests that this Court order a second distribution of the unclaimed settlement fund or, in the alternative, a *cy pres* distribution.

### A. SECOND DISTRIBUTION IS WARRANTED

Plaintiff requests the Court redistribute the remaining balance of approximately $438,832.55 in the settlement fund (after administration costs of an estimated $85,000) to the Class members who filed a timely and valid claim and cashed their settlement check, as part of a second distribution. According to

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

ILYM, the approximate cost of completing a second distribution is estimated at $85,000. Mullins Decl., ¶ 6.

Plaintiff proposes to send a check as part of a second distribution to the claiming Class Members who previously cashed their checks, representing 115,144 Class Members. Mullins Decl., ¶ 4. After deducting estimated costs of an estimated $85,000 for a second distribution, it is estimated that each of the 115,144 claiming Class Members who actually cashed their previous settlement check will receive a second check in the amount of approximately $3.07, or $2.93 if the second distribution is made to all Class Members who submitted a valid claim regardless of whether they cashed the initial settlement check. *Id.* at ¶ 4-6. Although such individual check amount for a second distribution is small, it is not insignificant.

Additionally, the Court should order a second distribution because such a method of redistribution of the unclaimed settlement fund is equitable. The Plaintiffs brought this action to vindicate the rights of those similarly situated for Defendant's alleged violation of the Class members' privacy rights protected by the TCPA. Out of the 4,337,960 class members who were sent notice of the settlement (Dkt. No. 60-1, 9:25-28), only 55 Class members opted out (Dkt. No. 96). As such, the Class members strongly supported the settlement and the distribution of funds. Moreover, 120,700 Class Members timely filed a claim and received their settlement checks. Mullins Decl., ¶ 3. This means that those class members who did not file a claim had no interest in receiving their share from the settlement fund. Therefore, it is equitable to redistribute the remainder of the settlement fund to those Class Members who previously filed timely claims and actually cashed their settlement checks from the initial distribution. It is unlikely that Class Members who did not cash their check will cash a check in the amount of approximately $3.00 from a second distribution.

For the reasons stated above, Plaintiff requests this Court issue a second

distribution from the residual settlement fund to the Class members who cashed their previous settlement checks (115,144 class members), or in the alternative, to all 120,700 Class Members who filed a timely and valid claim regardless of whether they cashed the initial settlement check. In the event this Court issues a second distribution and any uncashed checks remain thereafter, this Court should order the remainder to be distributed to the *cy pres* recipient proposed herein. Such an order would promote judicial economy by eliminating the need for further motions to address any residual funds that may result from the second distribution, as explained below.

### B. *CY PRES* DISTRIBUTION IN THE EVENT OF UNCASHED CHECKS FROM A SECOND DISTRIBUTION

Section 11.02 of the Settlement Agreement states, in pertinent part, "Any funds not paid out as the result of uncashed settlement checks shall be paid out as a cy pres award, to a recipient agreed to by the Parties and approved by the Court, as set forth in Section 8.05 (f)." Having made every reasonable effort to ensure that settlement funds were distributed to the Class members, and consistent with the terms of the approved Settlement Agreement, Plaintiff now requests that the remaining unclaimed funds from a second distribution be provided to the proposed *cy pres* recipient, the Samuelson Law Clinic, an experiential clinic at the University of California, Berkeley School of Law, located in Berkeley, California. *See* Section 8.05(f) of Settlement Agreement. The award would be specified for use by SLC to provide hands-on training to law students through real-world work, with live clients, on cutting-edge policy issues in support of the public's interest in technology law and policy. Declaration of Jennifer Urban ("Urban Decl."), ¶¶ 4, 7, 8, filed herewith.

#### 1. **<u>Legal standard</u>**

The doctrine of *cy pres* allows a court to distribute unclaimed portions of a class action settlement fund to the "next best" class of beneficiaries. *See Six*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307-1308 (9th Cir. 1990). The Ninth Circuit directs courts to consider the following factors in determining whether awards to the proposed *cy pres* beneficiary, or beneficiaries, are appropriate: (1) the nature of the plaintiff's lawsuit; (2) the objectives of the underlying statutes; and, (3) the interests of the silent class members, including their geographic diversity. *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1040 (9th Cir. 2011).

**2. <u>Guidance from past cases</u>**

While the Court has discretion in determining the above factors, a review of relevant Ninth Circuit precedent reveals when *cy pres* recipients fail to satisfy those standards.

**i. *Six Mexican Workers***

In *Six Mexican Workers v. Arizona Citrus Growers*, a class of undocumented Mexican farm workers sued various companies for violations of the Farm Labor Contractor Registration Act. *Six Mexican Workers,* 904 F.2d at 1303. The district court found the defendants liable for $1.8 million in statutory damages, which was later reduced by the Ninth Circuit to $850,000. *Id.* at 1303-04, 1310. The district court also identified the Inter-American Fund, which provided humanitarian aid in Mexico, as the *cy pres* recipient of any unclaimed funds. *Id.* at 1304.

On review, the Ninth Circuit held that the *cy pres* distribution was not appropriate because there was "no reasonable certainty" that any class member would benefit from it, even though the money would go "to areas where the class members may live." *Id.* at 1308. The Ninth Circuit Court also recognized the lack of relation between the choice of charity and the class claims. In its analysis, the Court reasoned that while the purpose of the statute was to compensate victims of unscrupulous employers and the deter future violations, the Inter-American Fund was "not an organization with a substantial record of service nor [was] it limited in its choice of projects," and any distribution would therefore have required court

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

supervision "to ensure that the funds [were] distributed in accordance with the goals of the remedy." *Id.* at 1309. Ultimately, the Court reversed the *cy pres* distribution because "the district court's application [of the cy pres doctrine] was inadequate to serve the goals of the statute and protection the interests of the silent class members." *Id.* at 1312.

**ii. *Nachshin***

The Ninth Circuit came to a similar conclusion in *Nachshin v. AOL, LLC*, 663 F.3d 1034, (9th Cir. 2011). In that case, AOL was accused of violating a number of statutes, including California's Unfair Competition Law and Consumers Legal Remedies Act, by wrongfully inserting commercial footers to the plaintiffs' outgoing emails. *Nachshin* , 663 F.3d at 1036. Realizing that the damages would be small and distribution to the class expensive, AOL agreed to make substantial donations to three charities: the Legal Aid Foundation of Los Angeles, the Federal Judicial Center Foundation, and the Los Angeles and Santa Monica chapters of the Boys and Girls Club of America. *Id.* at 1037.

The *Nachshin* Court held that the *cy pres* distribution "fail[ed] to target the plaintiff class, because it d[id] not account for the broad geographic distribution of the class." *Id.* at 1040. The class included over 66 million AOL users across the country, but two-thirds of the donations were slated for Los Angeles charities. Further, although the donation to the Federal Judicial Center Foundation "at least conceivably benefit[ed] a national organization," the Foundation "ha[d] no apparent relation to the objectives of the underlying statutes, and it [wa]s not clear how this organization would benefit the plaintiff class." *Id.* The Court held that the district court abused its discretion in approving the *cy pres* distribution to charities that had no relation to the class or to the underlying claims.

Unlike in *Six Mexican Workers* and *Nachshin*, SLC, the *cy pres* recipient proposed by Plaintiff, here, meets the standard used by the Ninth Circuit in determining an appropriate beneficiary of unclaimed class action settlement funds,

as explained below.

**3. <u>Samuelson Law Clinic is an appropriate *cy pres* recipient</u>**

The Court should approve SLC as a *cy pres* recipient, with the award to be specified for use by SLC to provide hands-on training to law students through real-world work, with live clients, on cutting-edge policy issues in support of the public's interest in technology law and policy. Urban Decl., ¶¶ 4, 7, 8. The clinic has engaged in a variety of projects to help consumers understand legal issues related to their privacy and how to control third-party access to their personal lives. *Id.* at ¶ 10. The clinic was also the first law school clinic in the country to provide public interest representation and research on privacy and related consumer issues. *Id.* at ¶ 2.

***i. Nature of lawsuit***

The lawsuit was brought to obtain statutory damages for alleged violations of the TCPA, on behalf of the Plaintiffs and the absent class members whose telephones were sent unsolicited text messages in alleged violation of federal law protecting consumer privacy. Providing a *cy pres* award to SLC to foster the protection of consumer privacy interests is in line with the nature of the TCPA lawsuit. *Id.* at ¶ 3.

***ii. Objective of the statute***

The TCPA is designed to protect the right to privacy of consumer in regards to their telephones. "We agree with Meyer that PRA's violation of the TCPA violated his right to privacy, an interest the TCPA intended to protect." *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 951 (9th Cir. Cal. 2012) (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. Cal. 2009)).

SLC is an appropriate *cy pres* recipient here, as the award would be used specifically for the purpose of protecting or promoting consumer privacy by training law students to proactively address privacy issues from emerging technology. Urban Decl., ¶¶ 4, 8. SLC has been approved as a *cy pres* recipient in

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

different consumer rights cases involving privacy issues. See *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 250 (E.D.N.Y. 2009); *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 550 (Cal. App. 1st Dist. 2009); *Marsh v. Zaazoom Solutions*, LLC, 2014 U.S. Dist. LEXIS 135863, *5, 8 (N.D. Cal. Sept. 25, 2014).

**iii. *Interest of silent class members***

A *cy pres* award would directly support SLC's projects and research, and permit SLC faculty, staff, and students to undertake privacy work that benefits American consumers and residents, thereby serving the interests of the Class. Urban Decl., at ¶¶ 3-4. Although the geographic distribution of the Class may be broad, so too is the reach of SLC's efforts to promote and preserve privacy rights through the training of law students who will become members of the legal community, not only in California but throughout the country. See *id.*; see also n.1 thereto. Former SLC students and teaching fellows are currently employed in public interest, private sector, and academic positions nationwide related to protecting individual's privacy rights in accord with the objectives of the underlying TCPA statute, here. *Id.*

Therefore, Plaintiff requests the Court grant the joint motion and find that SLC is an appropriate *cy pres* recipient.

## IV. CONCLUSION

In sum, Plaintiffs respectfully requests that this Court approve a second distribution or, in the alternative, a *cy pres* distribution of the unclaimed settlement funds. If the Court orders a *cy pres* distribution, Plaintiff respectfully requests that the Court name Samuelson Law Clinic as the recipient of the award.

Date: January 4, 2017

**KAZEROUNI LAW GROUP, APC**

By: _/s Abbas Kazerounian_____
ABBAS KAZEROUNIAN
ATTORNEYS FOR PLAINTIFF