FILED

17 AUG -1 PM 3:21

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: AjS        DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO MALTA, individually and on behalf of all other similarly situated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE FEDERAL HOME LOAN MORTGAGE CORPORATION, also known as Freddie Mac, et al.,<br><br>Defendants. | Case No.: 3:10-cv-01290-BEN-NLS<br><br>**ORDER GRANTING SECOND DISTRIBUTION OF SETTLEMENT FUND** |

Before this Court is Lead Plaintiff Alberto Malta's Motion for Second Distribution or, Alternatively, *Cy Pres* Distribution from the Residual Settlement Fund. (Docket No. 132.) The motion is unopposed. (Docket No. 134.) The Court finds the motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, Lead Plaintiff's Motion is **GRANTED in part**.

### BACKGROUND

This action was filed on June 16, 2010 for violations of the Telephone Consumer Protection Act ("TCPA"). (Docket No. 1.) On May 21, 2013, Co-Lead Plaintiffs Alberto Malta and Danny Allen, Jr. filed a First Amended Complaint on behalf of themselves and a putative class alleging Defendants sent automated text messages to non-customer's

1

cellular telephones using an automated dialing system without first obtaining the non-customer's express consent in violation of the TCPA. (Docket No. 59.)

On February 5, 2013, the Court granted preliminary approval of the Class Action Settlement Agreement ("Agreement").[1] (Docket No. 48.) On June 21, 2013, the Court entered an Order and Final Judgment of Dismissal with Prejudice ("Final Judgment Order"), which, *inter alia*, approved the Agreement, directed the parties to consummate the Settlement in accordance with the terms of the Agreement, and retained jurisdiction over the litigation for all matters relating to the consummation of the Agreement. (Docket No. 91.) On June 28, 2013, the Court granted Class Counsel's Ex Parte Request to Modify the Final Judgment Order ("Modification Order"). (Docket No. 96.) The Modification Order modified the numbers of approved late claims, requests for exclusion, and amount paid per claim.

On January 4, 2017, Lead Plaintiff Alberto Malta filed an unopposed Motion for Second Distribution or, Alternatively, *Cy Pres* Distribution from the Residual Settlement Fund ("Pl.'s Redistrib. Mot."). (Docket Nos. 132, 134.) Plaintiff's motion indicates that, pursuant to the Court's Final Judgment and Modification Orders, the Claims Administrator has issued each of the 120,700 claimants a settlement check. However, 5,556 claimants did not cash their checks, leaving a balance of $438,832.55 including accrued interest in the Settlement Fund as of March 7, 2016.

Plaintiff's motion requests a second distribution of the remaining balance in the Settlement Fund. ILYM Group, Inc., the Claims Administrator, estimates that it will cost approximately $85,000 to complete a second distribution of the Settlement Fund, which leaves approximately $353,823.55 for redistribution to claiming Class Members. (Pl.'s Redistrib. Mot at 2; Declaration of Lisa Mullins ("Mulins Decl.") ¶¶ 5-6.) If the Claims

---

[1] Capitalized terms not otherwise defined herein have the meanings assigned to them in the Agreement (Docket No. 38-3) or the Court's Final Judgment Order dated June 21, 2013. (Docket No. 91.)

2

Administrator issues redistribution checks to only those Class Members who cashed the initial settlement checks, each individual will receive a check for approximately $3.07. (Pl.'s Redistrib. Mot at 2.) If the Claims Administrator issues redistribution checks to all Class Members who submitted a valid claim regardless of whether they cashed the initial settlement check, each individual will receive a check for approximately $2.93. (*Id.*; Mulins Decl. ¶ 6.)

Although Defendants filed a Statement of Non-Opposition, they noted that "the parties' settlement agreement does not provide for a second distribution to settlement class members." (Docket No. 134 at 2.) Section 11.02 of the Agreement provides:

> <u>Mailing of Settlement Check</u>: Settlement checks shall be sent to Qualified Class Members by the Claims Administrator via U.S. mail no later than thirty (30) days after the Effective Date. If any settlement checks are returned, the Claims Administrator shall attempt to obtain a new mailing address for that Settlement Class Member by taking the steps described in Sections 9.01. If, after a second mailing, the settlement check is again returned, no further efforts need be taken by the Claims Administrator to resend the check. The Claims Administrator shall advise Class Counsel and counsel for Defendants of the names of the claimants whose checks are returned by the postal service as soon as practicable. Each settlement check will be negotiable for one hundred eighty (180) days after it is issued. Any funds not paid out as the result of uncashed settlement checks shall be paid out as a *cy pres* award, to a recipient agreed to by the Parties and approved by the Court, as set forth in Section 8.05(f).[2]

---

[2] Section 8.05(f) provides:
> [F]inally, on the Final Distribution Date, which is the earlier of (i) the date as of which all the checks for Settlement Awards have been cashed or (ii) 210 days after the date on which the last check for a Settlement Award was issued, the Claims Administrator shall pay any amount remaining in the Settlement Fund Account from uncashed settlement checks to one or more *cy pres* recipients which are agreed upon by the Parties and approved by the Court. (Docket No. 38.3 at 14.)

3

(Docket No. 38-3 at 18.) Nevertheless, as will be explained below, the Court concludes granting Plaintiff's request for a second distribution of the Settlement Fund is the most appropriate disposition of the remaining funds at this time.

## DISCUSSION

"It is not uncommon in consumer class actions to have funds remaining after payment of all identifiable claims." *Diamond Chem. Co. v. Akzo Nobel Chemicals B.V.*, 517 F. Supp. 2d 212, 217 (D.D.C. 2007) (quoting *In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1393 (N.D. Ga. 2001); *see also Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). Various courts who have considered the question of how to appropriately distribute such funds have determined that "neither the class members nor the settling defendants have any legal right to unclaimed or excess funds." *Id.* (quoting *Powell v. Georgia–Pacific Corp.*, 843 F. Supp. 491, 495 (W.D. Ark. 1994), *aff'd*, 119 F.3d 703 (8th Cir. 1997)); *see also Motorsports Merch.*, 160 F. Supp. 2d at 1393; *Wilson v. Southwest Airlines, Inc.*, 880 F.2d 807, 811–12 (5th Cir. 1989); *In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1254 (7th Cir. 1984), *cert. dismissed*, 471 U.S. 1113, 106 S.Ct. 11 (1985).

Neither Lead Plaintiff nor Defendants contend they retain any legal claim to the remaining Settlement Fund. Nor are they entitled to it pursuant to the terms of the Agreement. Therefore, the Court "must apply equitable principles in considering the appropriate distribution of the [r]emaining Settlement Fund." *Id.* (citing *Motorsports Merch.*, 160 F. Supp.2 d at 1393); *see also Powell*, 843 F. Supp. at 495 (until settlement funds are completely distributed, the court retains its traditional equity powers) (citing *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978)).

The Court has reviewed Plaintiff's Motion and corresponding memorandum of points and authorities, the Declarations of Lisa Mullins and Jennifer M. Urban in support of Plaintiff's Motion, all other exhibits and papers submitted in support thereof, and Defendant's Statement of Non-Opposition, and determines that good cause exists for a second distribution of the Settlement Fund to the Class Members who cashed the initial

4

settlement checks. First, although the Agreement provides for *cy pres* distribution of unclaimed funds from the first distribution of the Settlement Fund, it is not clear from the Agreement that a *cy pres* distribution of this size was contemplated.[3] In contrast, it is clear to the Court that the Settlement Fund was intended to compensate Class Members whose claims were timely filed and approved by this Court. Second, although each payment to individual Class Members in a second distribution will be small, it is not non-distributable, insignificant, or *de minimis*. *See In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1132 (N.D. Cal. 2015) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (*Cy pres* payments may be approved when actual funds are "non-distributable," or "where the proof of individual claims would be burdensome or distribution of damages costly.") (internal citation and quotation marks omitted). Third, the Court agrees with Plaintiff's assertion that it is unlikely that Class Members who did not cash the initial check for $84.78 will cash a check for less than $4.00.

Therefore, the Court directs the Claims Administrator to pay each of the Class Members who cashed the initial settlement checks an equal share of the remaining Settlement Fund, after its own fees of no more than $85,000.00 are paid. If unclaimed funds remain in the Settlement Fund after the second distribution, either party may move the Court for a *cy pres* distribution in accordance with the Agreement.

This Court retains jurisdiction to consider any further applications concerning the administration of the Agreement, and such other and further relief as this Court deems appropriate.

**IT IS SO ORDERED.**

DATED: July 3/, 2017

HON. ROGER T. BENITEZ
United States District Court Judge

---

[3] Indeed, Lead Plaintiff's request for a second distribution of the remaining funds and Defendants non-opposition to a second distribution supports the Court's determination.