UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO MALTA, individually and on behalf of all other similarly situated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE FEDERAL HOME LOAN MORTGAGE CORPORATION, also known as Freddie Mac, et al.,<br><br>Defendants. | Case No.: 3:10-cv-01290-BEN-NLS<br><br>**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR CY PRES DISTRIBUTION**<br>**[Doc. 142]** |

Before this Court is Lead Plaintiff Alberto Malta's Unopposed Motion for a *Cy Pres* Distribution from the Residual Settlement Fund. [Doc. 142.] For the reasons set forth below, Lead Plaintiff's Motion is **GRANTED**.

## BACKGROUND

Plaintiff filed this action on June 16, 2010 for violations of the Telephone Consumer Protection Act ("TCPA"). [Doc. 1.] On May 21, 2013, Co-Lead Plaintiffs Alberto Malta and Danny Allen, Jr. filed a First Amended Complaint on behalf of themselves and a putative class, alleging Defendants violated the TCPA by sending automated text messages to non-customers' cellular telephones using an automated dialing system without first obtaining the non-customers' express consent. [Doc. 59.]

On February 5, 2013, the Court granted preliminary approval of the parties' Class Action Settlement Agreement ("Agreement").[1] [Doc. 48.] On June 21, 2013, the Court issued its Final Order Approving Class Action Settlement. [Doc. 91.] On June 28, 2013, the Court issued an order to modify the final judgment. [Doc. 96.] Pursuant to the Court's Final Order and Modified Final Order, the claims administrator, ILYM Group, Inc., issued settlement checks to each of the 120,700 claimants. Of those checks, 115,144 were cashed, leaving 5,556 checks uncashed and a remaining settlement fund balance of $438,832.55. ILYM estimated it would cost approximately $85,000 to complete a second distribution of the settlement fund.

On July 31, 2017, the Court ordered a second distribution to be made by ILYM with a February 28, 2018 deadline to cash the second settlement checks. As of April 3, 2018, 56,469 checks remained uncashed from the second distribution, leaving a remaining Qualified Settlement Fund of $156,634.38. [Doc. 142, p. 3.] The Court's July 31, 2017 Order provided, "If unclaimed funds remain in the Settlement Fund after the second distribution, either party may move the Court [for] a *cy pres* distribution in accordance with the Agreement." [Doc. 140, p. 5.] Plaintiff now moves the Court for approval of a *cy pres* distribution to Samuelson Law, Technology & Public Policy Clinic at the University of California, Berkeley School of Law. [Doc. 142.]

**DISCUSSION**

In his unopposed motion, Plaintiff contends (1) that a *cy pres* award is more appropriate than a third distribution and (2) that the proposed *cy pres* recipient satisfies the Ninth Circuit's factors in *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011). The Court agrees.

---

[1] Capitalized terms not otherwise defined herein have the meanings assigned to them in the Agreement [Doc. 38-3] or the Court's Final Judgment Order dated June 21, 2013 [Doc. 91].

### 1. Appropriateness of a *Cy Pres* Award

"*Cy pres* provides a mechanism for distributing unclaimed funds to the next best class of beneficiaries." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 760 (9th Cir. 2018). A *cy pres* distribution "is most useful when individual stakes are small, and the administrative costs of a second round of distributions to class members might exceed the amount that ends up in class members' pockets." *Holtzman v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013). Here, subtracting only an estimated $85,000 in administration costs from the current remaining fund of $156,634.38 would leave only $71,634.38 to be distributed through a third distribution to 115,144 settlement class members who cashed their initial settlement checks. Thus, each individual check would receive approximately $0.62, making the third distribution *de minimis*. *See Lane v. Facegbook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) ("[D]irect monetary payments to the class . . . would be infeasible given that each class member's direct recovery would be *de minimis*."). Accordingly, a *cy pres* distribution is more appropriate than a third distribution of the unclaimed settlement funds.

### 2. Appropriateness of the Proposed *Cy Pres* Beneficiary

Having determined a *cy pres* distribution is warranted, the Court next considers whether the proposed *cy pres* beneficiary, Samuelson Law, Technology & Public Policy Clinic ("SLC"), is an appropriate one. To make this finding, the Court must consider three factors:

(1) the nature of the plaintiff's lawsuit;

(2) the objectives of the underlying statute; and

(3) the interests of the silent class members, including their geographic diversity.

*Nachsin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011). Plaintiff proposes SLC as a *cy pres* recipient, with the award to be used for "hands-on training to law students through real-world work, with live clients, on cutting-edge policy issues in support of the public's interest in technology and policy." [Doc. 142, p. 7.] SLC has engaged in a variety of

projects to help consumers understand legal issues related to their privacy and how to control third-party access to their personal lives. The law clinic was also the first in the country to provide public interest representation and research on privacy and related consumer issues.

The Court applies the factors and finds SLC is an appropriate *cy pres* recipient. As to the first factor, this lawsuit was brought to obtain statutory damages for alleged violations of the TCPA on behalf of the plaintiffs and absent class members whose telephones received unsolicited text messages in violation of federal consumer privacy law. Thus, providing a *cy pres* award to SLC to foster the protection of consumer privacy interests aligns with the nature of this TCPA lawsuit.

Regarding the statutory objective factor, the TCPA is designed to protect consumers' privacy rights with respect to their telephones. *See, e.g., Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 951 (9th Cir. 2012) ("We agree with Meyer that PRA's violation of the TCPA violated his right to privacy, an interest the TCPA intended to protect."). Here, because the award would be used specifically to protect and promote consumer privacy by training law students to proactively address privacy issues in emerging technology, this factor is satisfied. Indeed, courts have approved SLC as a *cy pres* recipient in other consumer rights cases involving privacy issues. *See, e.g., Marsh v. Zaazoom Solutions, LLC*, 2012 WL 6522749 (N.D. Cal. Sep. 25, 2014); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 250 (E.D.N.Y. 2009).

Finally, as to the third factor, the proposed *cy pres* award would directly support SLC's projects and research, and permit SLC faculty, staff, and students to undertake privacy work beneficial to American consumers and residents, thereby serving the interests of settlement class members. Although the geographic distribution of the settlement class members is broad, so too is the reach of SLC's efforts. Specifically, SLC works to promote and preserve privacy rights by training law students who will become members of the legal community, not only in California, but also throughout the country. For example, former SLC students and teaching fellows are currently employed in positions nationwide related

4

to protecting individual privacy rights, including in the public, private, and academic sectors.

## CONCLUSION

For the previous reasons, Plaintiff's motion, [Doc. 142], is **GRANTED**. The Court directs ILYM Group, Inc., the Settlement Administrator, to distribute the remaining balance of the Qualified Settlement Fund as a *cy pres* award to Samuelson Law, Technology & Public Policy Clinic at the University of California, Berkeley School of Law.

**IT IS SO ORDERED.**

DATED: March 25, 2019

_____
HON. ROGER T. BENITEZ
United States District Court Judge